**2014-1232**

In The

# United States Court of Appeals

For The Federal Circuit

## VIRTUALAGILITY, INC.,

*Plaintiff – Appellee*,

v.

## SALESFORCE.COM, INC., DELL, INC., DR. PEPPER SNAPPLE GROUP, INC., KIMBERLY-CLARK CORPORATION, NBCUNIVERSAL, INC., LIVINGSOCIAL, INC., FEDEX CORPORATION, BMC SOFTWARE, INC., BANK OF AMERICA CORPORATION, BANK OF AMERICA NATIONAL ASSOCIATION, MERRILL LYNCH & CO., INC., MERRILL LYNCH, PIERCE, FENNER & SMITH INCORPORATED, FEDEX CORPORATE SERVICES, INC.,

*Defendants – Appellants.*

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS IN
IN NO. 2:13-CV-00011-JRG, JUDGE J. RODNEY GILSTRAP.**

———————

## BRIEF OF APPELLANTS

———————

Larry L. Shatzer, III
WILSON, SONSINI,
  GOODRICH & ROSATI, PC
1700 K Street, N.W., 5th Floor
Washington, DC 20006
(202) 937-8800

*Counsel for Appellants
  salesforce.com, inc., et al.*

Darryl J. Adams
BAKER BOTTS LLP - AUSTIN
98 San Jacinto Boulevard, Suite 1500
Austin, Texas 78701
(512) 322-2500

*Counsel for Appellant
  Kimberly-Clark Corporation*

Jose C. Villarreal
WILSON, SONSINI,
  GOODRICH & ROSATI, PC
900 South Capital of Texas Highway
Las Cimas IV, Fifth Floor
Austin, Texas 78746
(512) 338-5400

*Counsel for Appellants
  salesforce.com, inc., et al.*

## CERTIFICATE OF INTEREST

Counsel for the Appellants certifies the following:

1.     The full name of every party represented by the undersigned counsel in this case is:  salesforce.com, inc., Dell, Inc., Dr Pepper Snapple Group, Inc., NBCUniversal, Inc., LivingSocial, Inc., FedEx Corporation, FedEx Corporate Services, Inc., BMC Software, Inc., Bank of America Corporation, Bank of America, National Association, Merrill Lynch & Co., Inc., Merrill Lynch, Pierce, Fenner & Smith Incorporated, and Kimberly-Clark Corporation (collectively referred to as "Defendants" or "Appellants").

2.     There are no other real parties in interest represented by the undersigned.

3.     Other than the following exceptions, the Appellants have no parent company, and no publicly held corporation owns 10% or more of any Appellant's stock.  The exceptions are as follows:

- BMC Software, Inc. is a wholly-owned subsidiary of BMC Software Finance, Inc.  BMC Software Finance, Inc. is a wholly-owned subsidiary of Boxer Parent Company Inc. Boxer Parent Company Inc. is a closely-held, non-publicly traded corporation which is owned by affiliates of Bain Capital Partners, LLC, Golden Gate Capital Private Equity, Inc., Insight Venture Partners, L.P.,

Westhorpe Investment Pte, Ltd and Elliot Associates, L.P.

- Dell, Inc. is a privately held corporation and its direct parent company is Denali Intermediate Inc. There is no publicly held corporation owning 10% or more of Denali Intermediate Inc.'s stock.

- Bank of America, National Association is a wholly-owned subsidiary of BANA Holding Corporation, which is a wholly-owned subsidiary of BAC North America Holding Company, which is a wholly-owned subsidiary of NB Holdings Corporation, which is a wholly-owned subsidiary of the publicly-held Bank of America Corporation ("BAC"). BAC is publicly held and traded on the New York Stock Exchange (symbol "BAC"). BAC has no parent company, and no publicly held corporation owns 10% or more of BAC stock.

- Merrill Lynch, Pierce, Fenner & Smith Incorporated is a wholly-owned subsidiary of NB Holdings Corporation. Merrill Lynch & Co., Inc. was previously a wholly-owned direct subsidiary of Bank of America Corporation. On October 1, 2013, Merrill Lynch & Co., Inc. merged into and was survived by Bank of America Corporation.

- FedEx Corporation is a publicly held corporation (NYSE: FDX), and no parent corporation or publicly held corporation owns 10% or more of FedEx Corporation's stock. FedEx Corporate Services, Inc. is a wholly owned subsidiary of FedEx Corporation.

- Through its directly or indirectly wholly owned subsidiary Amazon.com NV Investment Holdings LLC, Amazon.com, Inc. owns over 10% of LivingSocial, Inc.'s stock on a voting basis and over 10% of LivingSocial, Inc.'s stock on a fully-diluted basis. Amazon.com, Inc. is a publicly traded corporation (NASDAQ: AMZN).

- Comcast Corporation (NASDAQ: CMCSA) is a parent corporation to NBCUniversal, Inc. and owns 10% or more of NBCUniversal, Inc.'s stock.

4.     The names of the law firms and the partners and associates that have appeared for the Appellants in the District Court or are expected to appear for Defendants/Appellants in this Court are:

Jose C. Villarreal
Brian D. Range
Joel C. Boehm
Wilson Sonsini Goodrich & Rosati, P.C.
900 South Capital of Texas Highway
Las Cimas IV, Fifth Floor
Austin, TX 78746

Larry L. Shatzer
Wilson Sonsini Goodrich & Rosati, P.C.
1700 K Street, NW
Fifth Floor
Washington, DC 20006

appearing on behalf of salesforce.com, inc., Dell, Inc. Dr Pepper Snapple Group, Inc., NBCUniversal, Inc., LivingSocial, Inc., FedEx Corporation, FedEx Corporate Services, Inc., BMC Software, Inc., Bank of America Corporation, Bank of America, National Association, Merrill Lynch & Co., Inc., and Merrill Lynch, Pierce, Fenner & Smith Incorporated

Darryl J. Adams
Kevin Meek
Baker Botts LLP
98 San Jacinto Blvd., Suite 1500
Austin, TX 78701

appearing on behalf of Kimberly-Clark Corporation

Melissa R. Smith
Harry Lee Gillam, Jr.
GILLAM & SMITH LLP
303 S. Washington Ave.
Marshall, TX 75670
Telephone: (903) 934-8450
Facsimile: (903) 934-9257

appearing on behalf of all Defendants-Appellants in the District Court.

January 31, 2014                    /s/ Jose C. Villarreal
                                    Jose C. Villarreal
                                    WILSON SONSINI GOODRICH & ROSATI, P.C.
                                    *Counsel for Defendants-Appellants
                                    salesforce.com, inc.; Dell, Inc.; Dr Pepper
                                    Snapple Group, Inc.; NBCUniversal, Inc.;
                                    LivingSocial, Inc.; FedEx Corp.; FedEx
                                    Corporate Services, Inc.; BMC Software, Inc.;
                                    Bank of America Corporation; Bank of
                                    America, National Association; Merrill Lynch
                                    & Co., Inc.; and Merrill Lynch, Pierce, Fenner
                                    & Smith Incorporated.*

                                    /s/ Darryl J. Adams
                                    Darryl J. Adams
                                    BAKER BOTTS LLP
                                    *Counsel for Defendant-Appellant
                                    Kimberly-Clark Corporation*

# TABLE OF CONTENTS

<u>Page</u>

CERTIFICATE OF INTEREST ........................................................ i

TABLE OF CONTENTS ............................................................. vi

TABLE OF AUTHORITIES ......................................................... viii

STATEMENT OF RELATED CASES .............................................. xiii

STATEMENT OF JURISDICTION ................................................. 1

STATEMENT OF THE ISSUES ................................................... 1

STATEMENT OF THE CASE ...................................................... 2

    A.    Procedural Background ................................................ 2

        1.    VirtualAgility's Patent Litigation Against Salesforce And Its Customers ................................................ 2

        2.    CBM Review Of The '413 Patent Is Well Under Way At The Patent Office ............................................. 3

        3.    Appellants Filed Their May 29, 2013 Motion To Stay When Litigation Was At Its Infancy ......................... 4

        4.    The Court Entered A Scheduling Order And Proceeded With The Case While The Motion For Stay Was Pending .......................................................... 5

        5.    The District Court Denied The Motion To Stay On January 9, 2014 ................................................... 5

        6.    Litigation Remains At A Fairly Early Stage, But Claim Construction Proceedings Are Now Imminent ......................... 6

    B.    The Bases For Invalidity In The CBM Review Petition ................... 7

SUMMARY OF ARGUMENT ............................................................ 8

ARGUMENT .................................................................................. 13

    STANDARD OF REVIEW ..................................................... 13

    THE REQUESTED RELIEF SHOULD BE GRANTED .......................... 15

        I.    CONGRESS HAS STRONGLY ENCOURAGED STAY OF LITIGATION PENDING CBM REVIEW ......... 15

        II.    PURSUANT TO AIA § 18(b), THIS COURT SHOULD ORDER A STAY OF LITIGATION ................. 18

            A.    A Stay Should Issue Because CBM Review Will Simplify And Eliminate Issues For Trial ................... 18

            B.    The Early Stage Of Litigation Favors A Stay ........... 25

            C.    A Stay Will Not Unduly Prejudice VirtualAgility Or Present A Clear Tactical Advantage To Appellants ........................................... 27

            D.    Stay Of Litigation Will Reduce The Burden Of Litigation On The Parties And The Court ................. 36

            E.    Courts Outside The Eastern District of Texas Have Granted Stays Pursuant To AIA § 18(b) In Circumstances That Are Similar Or Even Less Favorable To A Stay .................................................. 39

CONCLUSION AND STATEMENT OF RELIEF SOUGHT ............................ 49

ADDENDUM

CERTIFICATE OF FILING AND SERVICE

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Ameranth, Inc. v. Pizza Hut, Inc.*,
  Case No. 3:11-cv-1810-DMS,
  Dkt. No. 549 (S.D. Cal. Nov. 26, 2013) ..................................................... 44

*Anascape, Ltd. v. Microsoft Corp.*,
  475 F. Supp. 2d 612 (E.D. Tex. 2007) ...................................................... 20

*BarTex Research, LLC v. FedEx Corp.*,
  611 F. Supp. 2d 647 (E.D. Tex. 2009) ................................................. 30, 36

*Benefit Funding Sys. LLC v. Advance Am., Cash Advance Centers, Inc.*,
  No. 1:12-cv-801-LPS, 2013 WL 3296230 (D. Del. Jun. 28, 2013) .......... 39

*Blue Calypso, Inc. v. Groupon, Inc.*,
  No. 6:12-cv-486-MHS, Dkt. No. 86 (E.D. Tex. Jul. 19, 2013)................. 39

*CheckFree Corp. v. Metavante Corp.*,
  3:12-cv-015-MMH, Dkt. No. 210 (Aug. 13, 2013).................................. 39

*Chicago Board Options Exchange, Inc. v. Int'l Sec. Exchange, LLC*,
  No. 2:13-cv-1339-JMF, Dkt. No. 89 (S.D.N.Y. Nov. 1, 2013) ............... 41

*Convergence Techs. (USA), LLC v. Microloops Corp.*,
  No. 5:10-cv-02051-EJD,
  2012 WL 1232187 (N.D. Cal. Apr. 12, 2012) ......................................... 30

*Credit Acceptance Corp. v. Westlake Svcs., LLC*,
  No. 2:13-cv-1523-SJO, Dkt. No. 67 (C.D. Cal. Dec. 30, 2013) ............... 45

*CVI/Beta Ventures, Inc. v. Tura LP*,
  112 F.3d 1146 (Fed. Cir. 1997) ................................................................ 21

*Datatreasury Corp.v. Wells Fargo & Co.*,
  490 F. Supp. 2d 749 (E.D. Tex. 2006) ...................................................... 20

*Duco, Inc. v. Aker Solution US, Inc.*,
    No. H-11-2858, 2012 WL 2847469 (S.D. Tex. July 10, 2012) ...............29

*eBay Inc. v. MercExchange, L.L.C.*,
    547 U.S. 388 (2006) ...............................................................................31

*EMG Tech., LLC v. Apple, Inc.*,
    No. 6:09-CV-367,
    2010 U.S. Dist. LEXIS 144656 (E.D. Tex. Nov. 15, 2010).....................36

*EZShield, Inc. v. Harland Clarke Corp.*,
    Case No. 1:13-cv-001-MJG, Dkt. No. 47 (D. Md. Sep. 3, 2013) ........47-48

*Function Media, L.L.C. v. Google Inc.*,
    708 F.3d 1310 (Fed. Cir. 2013) .................................................................3

*Gould v. Control Laser Corp.*,
    705 F.2d 1340 (Fed. Cir. 1983) ...............................................................20

*In re EMC Corp.*,
    677 F.3d 1351 (Fed. Cir. 2012) ...............................................................14

*In re EMC*,
    Misc. No. 142, 2013 WL 324154 (Fed. Cir. Jan. 29, 2013).....................26

*Inogen, Inc. v. Inova Labs, Inc.*,
    SACV No. 11-1692-JST (ANx),
    2012 WL 4748803 (C.D. Cal. Mar. 20, 2012) .........................................31

*Intertainer, Inc. v. Hulu, LLC*,
    No. 2:13-cv-05499, Dkt. No. 29 (C.D. Cal. Jan 24, 2014) ......................47

*Landmark Tech., LLC v. iRobot Corp.*,
    No. 6:13-cv-00411-JDL, Dkt. No. 47 (E.D. Tex. Jan. 24, 2014)..............47

*Magna Donnelly Corp. v. Pilkington N. Am., Inc.*,
    No. 4:06-cv-126, 2007 WL 772891 (W.D. Mich. Mar. 12, 2007)............25

*Market-Alerts Pty. Ltd. v. Bloomberg Finance L.P.*,
    922 F. Supp. 2d 486 (D. Del. 2013) ........................................12, 28, 37, 40

*Photoflex Products, Inc. v. Circa 3 LLC*,
No. C 04-03715 JSW,
2006 WL 1440363 (N.D. Cal. May 24, 2006) .......................................... 30

*Pi-Net Int'l Inc. v. Citizens Fin. Group, Inc.*,
Case No. 1:12-cv-355-RGA,
2013 WL 6094223 (D. Del. Jun. 21, 2013) ................................................ 40

*Polaris Indus., Inc. v. BRP U.S. Inc.*,
No. 12-01405 ADM/SER,
2012 WL 5331227 (D. Minn. Oct. 29, 2012) ............................................. 31

*Progressive Cas. Ins. Co. v. Safeco Ins. Co. of Illinois*,
2013 WL 1662952 (N.D. Ohio Apr. 17, 2013) .................................... 37, 41

*Research In Motion Ltd. v. Visto Corp.*,
545 F. Supp. 2d 1011 (N.D. Cal. 2008) .................................................... 29

*Sightsound Techs., LLC. v. Apple, Inc.*,
No. 11-1292,
2013 WL 2457284 (W.D. Pa. June 6, 2013) .................... 12-13, 24, 37, 42

*SightSound Techs., LLC. v. Apple., Inc.*,
No. 2:11-cv-01292-DWA,
2013 WL 2457284 (W.D. Pa. June 6, 2013) .............................................. 17

*Soverain Software LLC v. Amazon.com, Inc.*,
356 F. Supp. 2d 660 (E.D. Tex. 2005) ................................................ 17, 36

*Unwired Planet LLC v. Google Inc.*,
No. 3:12-cv-00504-MMD-VPC,
Dkt. No. 233 (D. Nev. Jan. 24, 2014) ....................................................... 46

*Versata Software, Inc. v. Volusion, Inc.*,
No. A-12-CA-893-SS,
2013 WL 6912688 (W.D. Tex. June 20, 2013) .................................... 37, 42

*Zillow, Inc. v. Trulia, Inc.*,
No. C12-1549-JLR,
2013 WL 5530573 (W.D. Wash. Oct. 7, 2013) ................................*passim*

## <u>STATUTES</u>

28 U.S.C. § 1331 ........................................................................................... 1

28 U.S.C. § 1338 ......................................................................................... 19

28 U.S.C. § 1338(a) ....................................................................................... 1

35 U.S.C. § 101 .................................................................................... *passim*

35 U.S.C. § 102 ........................................................................................... 22

35 U.S.C. § 252 ........................................................................................... 21

35 U.S.C. § 282(b) ...................................................................................... 16

35 U.S.C. § 307(b) ...................................................................................... 21

35 U.S.C. § 321 ....................................................................................... 1, 3

35 U.S.C. § 321(b) ...................................................................................... 16

35 U.S.C. § 324(a) ...................................................................................... 23

35 U.S.C. § 326(a)(11) .............................................................................. 4, 28

## <u>RULE</u>

Fed. R. Evid. 201 ........................................................................................ 34

## <u>REGULATION</u>

37 C.F.R. § 42.300(c) ............................................................................... 4, 28

## OTHER AUTHORITIES

157 Cong. Rec. S1053 (daily ed. Mar. 1, 2011) ..................................9, 15, 17, 30

157 Cong. Rec. S1363 (daily ed. Mar. 8, 2011) .............................................9, 17

157 Cong. Rec. S1364 (daily ed. Mar. 8, 2011) ...........................................*passim*

157 Cong. Rec. S1367 (daily ed. Mar. 8, 2011) ...................................................15

157 Cong. Rec. S1379 (daily ed. Mar. 8, 2011) ...................................................17

77 Fed. Reg. 48,756, 48,757 (Aug. 14, 2012) .....................................................35

AIA § 18 ........................................................................................................3, 26

AIA § 18(a) .............................................................................................................9

AIA § 18(a)(1)(B) ..........................................................................................26, 48

AIA § 18(a)(1)(D) .....................................................................................9, 18, 19

AIA § 18(b), Pub. L. No. 112-29, 125 Stat. 284, 331 (2011)......................*passim*

AIA § 18(b)(1)(B)..................................................................................................25

AIA § 18(b)(2) ...............................................................................................*passim*

AIA § 18(d)(1) ......................................................................................................16

H.R. REP. NO. 112-98 (2011)..................................................................................9

Microsoft Corp. Annual Report (10-K) at 6 (July 30, 2013), *Available at* http://www.sec.gov/Archives/edgar/data/789019/000119312513310206/d 527745d10k.htm ...............................................................................................34

Oracle Corp. Annual Report (10-K) at 13 (June 26, 2013), *Available at* http://www.sec.gov/Archives/edgar/data/1341439/000119312513272832/ d531515d10k.htm ...............................................................................................34

## <u>STATEMENT OF RELATED CASES</u>

Pursuant to Federal Circuit Rule 47.5, counsel for Appellants state the following:

No other appeal in or from the same civil action or proceeding in the lower court or body was previously before this Court or another appellate court.

The title and number of cases known to counsel to be pending in this or any other court that will directly affect or be directly affected by this court's decision in the pending appeal is: *Virtual Agility, Inc. v. salesforce.com, inc., Dell, Inc. Dr. Pepper Snapple Group, Inc., Kimberly-Clark Corporation, NBCUniversal, Inc., LivingSocial, Inc., FedEx Corporation, FedEx Corporate Services, Inc., BMC Software, Inc., Bank of America Corporation, Bank of America, National Association, Merrill Lynch & Co., Inc., Merrill Lynch, Pierce, and Fenner & Smith Incorporated, and Kimberly-Clark Corporation*, Case No. 2:13-cv-00011-JRG, pending in the United States District Court for the Eastern District of Texas, Marshall Division.

## STATEMENT OF JURISDICTION

This is a patent case, arising under the patent laws of the United States, Title 35 of the United States Code. The District Court has subject matter jurisdiction based on 28 U.S.C. §§ 1331 and 1338(a). Appellate jurisdiction in this Court arises from the statute permitting interlocutory appeals from orders pertaining to motions to stay pursuant to Section 18(b) of the Leahy-Smith America Invents Act. 35 U.S.C. § 321; AIA § 18(b)(2), Pub. L. No. 112-29, 125 Stat. 284, 331 (2011) ("A party may take an immediate interlocutory appeal from a district court's decision under paragraph (1) [motion for stay]. The United States Court of Appeals for the Federal Circuit shall review the district court's decision to ensure consistent application of established precedent, and such review may be de novo.").

## STATEMENT OF THE ISSUES

Based on *de novo* review, should this Court order a stay pursuant to AIA § 18(b) where: (1) CBM Review will streamline or eliminate issues for litigation; (2) Appellants requested CBM Review and a stay at the earliest possible stage of litigation; (3) no undue prejudice or tactical advantage will result from a stay; and (4) a stay will eliminate the parties' burden of dual-track litigation and reduce or eliminate burdens on the District Court.

# STATEMENT OF THE CASE

### A.    Procedural Background

#### 1.    VirtualAgility's Patent Litigation Against Salesforce And Its Customers

VirtualAgility, Inc. ("VirtualAgility") filed its initial complaint asserting U.S. Patent No. 8,095,413 ("the '413 Patent") on January 4, 2013 and amended its complaint on January 30, 2013 to add additional defendants.  *See* J.A. 0097 *et seq.* (amended complaint).   Although this case has many defendants, the litigation is truly about salesforce.com, inc. ("Salesforce") and VirtualAgility's patent; VirtualAgility's only accusation against the remaining Salesforce customer defendants is for direct and/or indirect infringement based on making, using, selling, licensing, or importing Salesforce products.  J.A. 0105–0114 (*Id.* at ¶¶ 34–47, 49–50, 52–53).   Appellants filed a Partial Motion to Dismiss for Failure to State a Claim on April 5, 2013 and filed a Motion to Transfer Venue on April 22, 2013.   *See* J.A. 0085, J.A. 0086 (Docket Report at Dkt. Nos. 34, 49).[1]

---

[1]    The District Court has not ruled on these motions.  In particular, absent a stay (albeit for unrelated reasons), Defendants' asserted right to a transfer is also increasingly undermined as the case progresses.  Defendants reserve all rights to seek any relief with respect to the pending motion to transfer filed at the outset of the litigation.

## 2. CBM Review Of The '413 Patent Is Well Under Way At The Patent Office

On May 24, 2013, Salesforce filed a petition for post-grant review of the '413 Patent under the Transitional Program for Covered Business Method Patents pursuant to 35 U.S.C. § 321 and Section 18 of the Leahy-Smith America Invents Act ("CBM Review"). J.A. 0145-0225 (Salesforce petition). On November 19, 2013, the Patent Trial and Appeal Board ("PTAB") determined that all claims of the '413 Patent "are, more likely than not, directed to patent-ineligible subject matter under § 101" (J.A. 0580, PTAB decision at 29) and that "Petitioner has shown that claims 1-21 [all claims] are, more likely than not, anticipated by Ito [U.S. Patent No. 5,761,674]" (J.A. 0589, *id.* at 38). On January 22, 2014, VirtualAgility informed the PTAB that it intended to amend claims of the '413 Patent. PTAB No. CBM2013-00024, Paper 24, p. 2 (Jan. 23, 2014) (PTAB Order on Conduct of Proceedings).[2] VirtualAgility filed a

---

[2] VirtualAgility waited nearly nine months after Defendants filed the motion to stay to indicate it would seek to amend the '413 Patent's claims. As such, the PTAB's record of VirtualAgility indicating its intent is not in the record for appeal. However, this record is an agency document, and the Court may take judicial notice of it. *Cf. Function Media*, *L.L.C. v. Google Inc.*, 708 F.3d 1310, 1316 (Fed. Cir. 2013) ("It is proper to take judicial notice of a decision from another court or agency at any stage of the proceeding, even if it was not available to the lower court.") (citation omitted).

contingent motion to amend its claims on January 28, 2014. PTAB No. CBM2013-00024, Paper 26.

The PTAB set an expedited schedule with final trial set for July 16, 2014. J.A. 0603 (PTAB scheduling order). Thus, the CBM Review process will occur on a very fast track as compared to traditional *ex parte* or *inter partes* reexamination, and must be completed no later than November 19, 2014 by statute. *See* 37 C.F.R. § 42.300(c); *see also* 35 U.S.C. § 326(a)(11).

### 3. Appellants Filed Their May 29, 2013 Motion To Stay When Litigation Was At Its Infancy

Appellants filed their Motion to Stay Proceedings Pursuant to Section 18(b) of the America Invents Act on May 29, 2013, just five days after Salesforce filed the CBM Review petition. J.A. 0120 (Motion to Stay). All briefing was complete by July 11, 2013. J.A. 0535 (Plaintiff's Surreply). At the time of Appellants' Motion to Stay, the District Court had not ruled on Appellants' April 5, 2013 Partial Motion to Dismiss for Failure to State a Claim or Defendants' April 22, 2013 Motion to Transfer Venue. At the time Defendants' filed the Motion to Stay, the District Court had also not set any scheduling conference, status conference, or trial date. No discovery had occurred.

### 4. The Court Entered A Scheduling Order And Proceeded With The Case While The Motion For Stay Was Pending

While not addressing Appellants' motion to stay for over seven months, the District Court has pressed forward with other deadlines. The District Court held a scheduling conference on August 8, 2013. It set a claim construction hearing for April 2, 2014,[3] and jury selection for November 3, 2014. *See* J.A. 0090 (Docket Report at 8/8/2013 Docket Entry). Based on the dates the District Court provided, the District Court required the parties to submit a joint proposed schedule, which it entered. *See* J.A. 0543–0546 (Docket Control Order).

### 5. The District Court Denied The Motion To Stay On January 9, 2014

The District Court issued its ruling denying the requested stay on January 9, 2014. J.A. 0001. Appellants filed their notice of interlocutory appeal the next day. J.A. 0609.

The denial comes after Appellants' November 19, 2013 notice informing the District Court that the PTAB "ordered a covered business method review and instituted trial proceedings for claims 1-21 of the '413 patent regarding whether claims 1-21 are anticipated by U.S. Patent No. 5,761,674 and are drawn

---

[3]     The District Court recently changed this date to April 3, 2014. *See* Case No. 2:13-cv-011-JRG, Jan. 24, 2014 Notice of Hearing (E.D. Tex.)

to non-statutory subject matter under 35 U.S.C. § 101." J.A. 0547. Appellants attached the PTAB decision. J.A. 0551 *et seq*. (*Id.* at Exs. A and B.)

The denial also comes after Appellants filed a notice of request for an expedited hearing on Appellants' motion to stay on November 26, 2013. J.A. 0605. The District Court decided the stay motion without a hearing.

### 6. Litigation Remains At A Fairly Early Stage, But Claim Construction Proceedings Are Now Imminent

The parties have now exchanged discovery including voluminous exchange of documents and third party depositions. VirtualAgility, for example, provided voluminous infringement contentions asserting all twenty-one claims of the '413 Patent against Appellants. Meanwhile, Appellants have spent significant effort in their defense. Many depositions by both sides are expected in the imminent future. Nearly all effort and expense of district court litigation could have been saved by a stay pending CBM Review at the time Appellants filed their motion, and much could have been saved at the time the District Court denied Appellants' motion. A stay now will still save significant expense. Meanwhile, dates including the April 3, 2014 date for the claim construction hearing can only be changed by the District Court finding "good cause," and Appellants will increasingly expend significant time and effort in the claim construction process according to the District Court's patent local rules and schedule. J.A. 0543–0545 (Docket Control Order).

**B.** **The Bases For Invalidity In The CBM Review Petition**

The PTAB decision instituting trial suggests that, for two reasons, every claim of the '413 Patent will be cancelled during the CBM review process. First, the PTAB provided a lengthy explanation of why it is more likely than not that each claim of the '413 Patent is directed to patent-ineligible subject matter under 35 U.S.C. § 101. J.A. 0573–0580. In particular, the PTAB identified the abstract idea at the heart of the challenged claims as "a model to aid in processing management information by organizing and making the information readily accessible by the collaborators of the project." J.A. 0576. The PTAB determined the claims' processor and storage device was routine and did not meaningfully limit the claims and observed that the claims were not limited to any particular industry, business, or type of collaborative activity. J.A. 0578–0580. Thus, the PTAB concluded "the challenged claims are, more likely than not, directed to patent-ineligible subject matter." J.A. 0580.

Second, the PTAB compared claims 1–21 to U.S. Patent No. 5,761,674 ("Ito") and concluded Ito more likely than not anticipates each of these claims. J.A. 0580-0583. VirtualAgility presented arguments as to why Ito does not teach all elements of the challenged claims, but the PTAB disposed of each of these arguments and concluded "claims 1-21 are, more likely than not, anticipated by Ito." J.A. 0585–0589.

# SUMMARY OF ARGUMENT

The instant interlocutory appeal provides this Court its first opportunity to interpret Section 18(b) of the America Invents Act[4] and thereby set a uniform standard for when the district courts should stay litigation pending Covered Business Method Review.

Appellants seek to stay the underlying patent litigation of this matter pending CBM Review in order to avoid a waste of both judicial and private resources—resources that will be squandered in conducting discovery, construing claims, making expert disclosures, and preparing to try an infringement suit based on patent claims that the Patent Trial and Appeals Board has assessed as "more likely than not" invalid and that, at least in the alternative, Appellee intends to amend. Appellants sought the same result in the District Court where they moved to stay the underlying litigation pending CBM Review pursuant to statute—Section 18(b) of the America Invents Act. But unlike nearly every (if not every) other district court to consider a similar motion, the District Court for the Eastern District of Texas ("the District Court") denied Appellants' request. The District Court's decision left in place a court schedule that requires a full claim-construction hearing at the same time as ongoing

---

[4]     Pub. L. No. 112-29, 125 Stat. 284, 331 (2011) ("AIA § 18(b)").

PTAB proceedings and threatens to produce an agency decision on the eve of—
or during—the District Court's trial.

Congress left no doubt about its intention to avoid parallel proceedings in
creating the CBM Review process. Recognizing that the dot-com bubble of the
late 1990s through early 2000s led to "poor business-method patents" and costly
litigation, the legislature designed an agency review process to "provide a
cheaper, faster alternative to district court litigation over the validity of business-
method patents." J.A. 0142, H.R. REP. NO. 112-98, at 54 (2011); J.A. 0253, 157
Cong. Rec. S1363 (daily ed. Mar. 8, 2011) (statement of Sen. Schumer). The
result was the Transitional Program for Covered Business Method Patents
("CBM Review"), which allows the PTAB to assess business-method patents.
*See* AIA § 18(a).

To forestall costly parallel litigation of the same issues and claims in
federal courts, Congress included two additional features. First, it prohibited
litigants from asserting in court any defenses they raised before the PTAB. AIA
§ 18(a)(1)(D). Second, Congress also enacted a statutory stay provision,
specifying a four-factor test that embodies a low threshold for stays. AIA
§ 18(b). Under this framework, Congress envisioned, "it is ***nearly impossible*** to
imagine a scenario in which a district court would not issue a stay" during the
pendency of a CBM Review. J.A. 0918, 157 Cong. Rec. S1053 (daily ed. Mar.

1, 2011) (statement of Sen. Schumer) (emphasis added). Indeed, "[a]bsent some *exceptional circumstance*, the institution of a business-methods proceeding—which requires a high up-front showing and will be completed in a relatively short period of time—should serve as a substitute for litigation, and result in a stay of co-pending district court litigation." J.A. 0254, 157 Cong. Rec. S1364 (statement of Sen. Schumer) (emphasis added).

As a final measure, Congress instituted an unusual level of review in this Court. Not only does the AIA permit an immediate interlocutory appeal from a district court's denial of a stay, it also authorizes *de novo* review "to ensure consistent application of established precedent." AIA § 18(b)(2). A decision here will provide the beginning of that precedent.

The facts of this case provide the opportunity to establish strong precedent that will further Congress's goals in instituting the CBM Review program. In this case, all four AIA § 18(b) factors heavily favor reversal of the District Court's decision and favor issuance of a stay:

**"(A) whether a stay, or the denial thereof, will simplify the issues in question and streamline the trial"**: CBM Review occurring first will simplify the instant litigation in at least three ways. First, regardless of ultimate outcome, issues will be simplified because the 35 U.S.C. § 101 issues and U.S. Patent No. 5,761,674 (the "Ito prior art") raised in CBM Review will no longer be at issue

in the District Court. Second, the CBM Review proceedings may result in VirtualAgility amending its claims—an outcome VirtualAgility currently seeks at least as an alternative—or making valuable statements that will simplify the District Court's job of claim construction. Third, the CBM Review may end the entire case by invalidating the patent—and the PTAB has already determined it is "more likely than not" that the '413 Patent's claims are invalid under 35 U.S.C. § 101 and are anticipated by the Ito prior art. This factor heavily favors a stay.

**"(B) whether discovery is complete and whether a trial date has been set"**: Appellants filed their motion to stay prior to the case management conference, prior to *any* discovery, and prior to any trial date being set. This factor heavily favors a stay.

**"(C) whether a stay, or the denial thereof, would unduly prejudice the nonmoving party or present a clear tactical advantage for the moving party"**: Examination of the record shows there is no undue prejudice or tactical advantage here. Rather, the CBM Review decision will issue by November 2014, so a long stay is not required; neither VirtualAgility nor the District Court can identify any actual harm due to alleged fading memories or unavailable evidence; and delay, in itself, does not equate to undue prejudice, particularly where there is insufficient evidence to show that VirtualAgility could

realistically obtain an injunction if successful in District Court. Thus, this factor favors a stay.

**(D) "whether a stay, or the denial thereof, will reduce the burden of litigation on the parties and on the court"**: Congress included this fourth factor "to ease the movant's task of demonstrating the need for a stay." *Market-Alerts Pty. Ltd. v. Bloomberg Finance L.P.*, 922 F. Supp. 2d 486, 489–90 (D. Del. 2013) (citing Senator Schumer as indicating "the intent of the fourth stay factor was to 'place[] a very heavy thumb on the scale in favor of a stay being granted'" (citations omitted)). Here, this factor serves this purpose in spades. A stay will eliminate the parties' burden of simultaneous PTAB and district court litigation, will reduce the District Court's burden by allowing the PTAB to first determine whether, in light of 35 U.S.C. § 101 and the Ito prior art, the '413 Patent claims as presently written should exist at all, will eliminate the risk of the parties' litigating claims that become moot due to VirtualAgility's amendment, and will reduce the burden on Salesforce's customers who will avoid the need to provide burdensome district court discovery while PTAB evaluates validity. This factor heavily favors a stay.

Courts around the country have routinely granted stays under AIA § 18(b). *See*, *e.g.*, *Market-Alerts Pty. Ltd.*, 922 F. Supp. 2d at 497 (granting stay); *Sightsound Techs., LLC. v. Apple, Inc.*, No. 11-1292, 2013 WL 2457284,

at *4 (W.D. Pa. June 6, 2013) (same); *Zillow, Inc. v. Trulia, Inc.*, No. C12-1549-JLR, 2013 WL 5530573, at *8 (W.D. Wash. Oct. 7, 2013) (same).  If Congress's intent in enacting CBM Review is to be effective, one district court should not be an outlier that singularly follows an erroneous application of Section 18(b). Indeed, Congress specifically provided for interlocutory appeal and *de novo* review to avoid such outliers.  *See* AIA § 18(b)(2); *see also* Standard of Review section immediately *infra* (quoting legislative history).

Furthermore, affirmance of the District Court's decision would send a signal that almost any CBM Review could result in burdensome dual-track litigation, and litigants will be discouraged from utilizing the procedure for fear of the burdens of simultaneous litigation.  Thus, both a common sense *de novo* evaluation of the four AIA § 18(b) stay factors and adherence to Congress's intent that district courts stay litigation pending the PTAB's CBM Review procedure urges reversal of the District Court's decision and a stay of litigation.

## ARGUMENT

## STANDARD OF REVIEW

To ensure proper and prompt application of the CBM Review stay provision of AIA § 18(b), Congress enacted AIA § 18(b)(2):

> (2) REVIEW.—A party may take an immediate interlocutory appeal from a district court's decision under paragraph (1). The United States Court of Appeals for the Federal Circuit shall review the district court's decision to

ensure consistent application of established precedent, and such review may be de novo.

Pub. L. No. 112-29, 125 Stat. 284, 331 (2011). Thus, this Court is conferred exclusive authority to review immediately a district court's decision on a motion to stay pursuant to AIA § 18(b). Jurisdiction is proper in this Court because this appeal requires interpretation and application of Section 18(b) of the America Invents Act. *Cf. In re EMC Corp.*, 677 F.3d 1351, 1354 (Fed. Cir. 2012) (granting writ of mandamus to remedy district court's failure to apply the proper standard of severance and joinder under the AIA and stating, "[a]pplication of our law is particularly appropriate since . . . Congress has recently adopted a special statute governing joinder in patent cases.").

Importantly, the statute is clear that "*de novo* review" is proper and that this Court is entrusted with "ensur[ing] consistent application of established precedent…." AIA § 18(b)(2). In enacting AIA § 18(b), Senator Schumer explained:

> It is expected that the Federal Circuit will review the district court's decision regarding a stay *de novo*, unless there are unique circumstances militating against a *de novo* review, such as subsequent requests for an interlocutory appeal in the same case. A *de novo* review is central to the purpose of the interlocutory appeal provision in the Schumer-Kyl amendment, which is to ensure consistent application of standards and precedents across the country and to avoid one particular court with a favorable bench becoming the preferred venue of business method patent plaintiffs.

J.A. 0254, 157 Cong. Rec. S1364 (daily ed. Mar. 8, 2011) (statement of Sen. Schumer).

While this Court routinely reviews issues of law *de novo*, AIA § 18(b)(2)'s emphasis on "consistent application" of the statute encourages full *de novo* review where factual evidence and conclusions of law are reviewed fully and independently. To the extent there is any question concerning the scope of *de novo* review expressly provided by statute, Appellants maintain that their arguments herein and the results that follow apply equally if deference is afforded to the District Court's preliminary conclusion of fact.

## THE REQUESTED RELIEF SHOULD BE GRANTED

## I.    CONGRESS HAS STRONGLY ENCOURAGED STAY OF LITIGATION PENDING CBM REVIEW

Congress recognized that during the dot-com boom, the Patent Office issued a large number of business method patents, "many or possibly all of which are no longer valid." J.A. 0257, 157 Cong. Rec. S1367 (daily ed. Mar. 8, 2011). Accordingly, Congress enacted the CBM Review procedure to provide defendants an opportunity to challenge promptly and efficiently patents that should not have issued in the first place. J.A. 0227, *id.* at S1053. Under the newly-enacted CBM Review procedure, a party that has been sued for infringement may file a petition requesting PTAB to consider the validity of an

already-issued "covered business method patent."[5]  Under this program, "[a]

petitioner in a post-grant review may request to cancel as unpatentable 1 or more

claims of a patent on any ground that could be raised under paragraph (2) or (3)

of section 282(b) (relating to invalidity of the patent or any claim)."  35 U.S.C

§ 321(b).  CBM Review is a comprehensive procedure permitting document

discovery and depositions and cannot be stayed.  *See generally* J.A. 0230–0248

(Federal Register providing CBM Review procedures).

An accused infringer pursuing CBM Review may seek a stay of litigation

while review is pending.  AIA § 18(b).  The statute sets forth four criteria the

Court should consider in deciding whether to enter a stay:

REQUEST FOR STAY.--

(1)  IN GENERAL.—If a party seeks a stay of a civil action alleging
infringement of a patent . . . relating to a transitional proceeding for that
patent, the court shall decide whether to enter a stay based on—

(A)  whether a stay, or the denial thereof, will simplify the issues in
question and streamline the trial;

(B)  whether discovery is complete and whether a trial date has been set;

---

[5]     "Covered business method patent" is defined in the AIA as "a patent that
claims a method or corresponding apparatus for performing data processing or
other operations used in the practice, administration, or management of a
financial product or service, except that the term does not include patents for
technological inventions."  AIA § 18(d)(1).  PTAB held that the '413 Patent is
such a patent.  J.A. 0560.

(C)  whether a stay, or the denial thereof, would unduly prejudice the nonmoving party or present a clear tactical advantage for the moving party; and

(D)  whether a stay, or the denial thereof, will reduce the burden of litigation on the parties and on the court.

*Id.*  This is a different and substantially lower standard than the one followed by some district courts in determining a stay pending a traditional reexamination. *See.*, *e.g.*, *Soverain Software LLC v. Amazon.com, Inc.*, 356 F. Supp. 2d 660, 662 (E.D. Tex. 2005) (setting forth a standard that does not consider "whether a stay, or denial thereof, will reduce the burden of litigation on the parties and on the court").

Congress designed the four-factor test to "place[] a ***very heavy thumb*** on the scale in favor of a stay."  J.A. 0253, 157 Cong. Rec. S1363 (daily ed. Mar. 8, 2011) (statement of Sen. Schumer) (emphasis added); *see also* J.A. 0269, *id.* at S1379 (statement of Sen. Kyl) (noting the "congressional policy strongly favoring stays when proceedings are instituted under . . . section [18]").  "Since the entire purpose of the transitional [CBM] program at the PTO is to reduce the burden of litigation, it is nearly impossible to imagine a scenario in which a district court would not issue a stay."  *SightSound Techs., LLC. v. Apple., Inc.*, No. 2:11-cv-01292-DWA, 2013 WL 2457284, at *1 (W.D. Pa. June 6, 2013) (quoting 157 Cong. Rec. S1053).  Thus, denial of a stay would require "an extraordinary and extremely rare set of circumstances not contemplated in any

of the existing case law related to stays pending reexamination." J.A. 0254, 157 Cong. Rec. S1364 (daily ed. Mar. 8, 2011) (statement of Sen. Schumer). "Absent some *exceptional circumstance*, the institution of a business-methods proceeding—which requires a high up-front showing and will be completed in a relatively short period of time—should serve as a substitute for litigation, and result in a stay of co-pending district court litigation." *Id.* (emphasis added).

## II. PURSUANT TO AIA § 18(b), THIS COURT SHOULD ORDER A STAY OF LITIGATION

As explained below, all four AIA § 18(b) factors favor a stay pending CBM Review here. There is no "exceptional circumstance" to counterbalance the "heavy thumb" that AIA § 18(b) places in favor of a stay. Thus, this Court should enter an order directing the District Court to stay this litigation.

### A. A Stay Should Issue Because CBM Review Will Simplify And Eliminate Issues For Trial

Courts have long recognized that staying litigation pending patent reexamination streamlines issues, and CBM Review is no different. Here, there are at least two ways in which CBM Review will simplify the issues.

First, AIA § 18 estops the petitioner from later raising invalidity grounds raised by the petitioner for CBM Review. AIA § 18(a)(1)(D) ("The petitioner . . . may not assert, either in a civil action arising in whole or in part under

section 1338 of title 28, United States Code . . . that the claim is invalid on any ground that the petitioner raised during that transitional proceeding."). Also, if a stay is granted pending CBM Review, ***all other Appellants will agree to this same scope of statutory estoppel under AIA § 18(a)(1)(D)***. Appellants informed the District Court of this contingent agreement. J.A. 0132 (Motion to stay at p. 8). As such, CBM Review here will eliminate any need for the District Court to address the Ito prior art reference and the Section 101 issues raised by Salesforce's petition. Thus, even in the unlikely event VirtualAgility's patent escapes CBM Review without amendment, the issues before the District Court will still be simplified if a stay is granted.[6]

Second, regardless of the outcome, the CBM Review proceedings may affect the scope of the claims of the patent-in-suit. VirtualAgility seeks to amend its claims during the process, which may eliminate infringement arguments or, again, give rise to intervening rights. The patent owner may also make statements during the CBM Review proceedings that shed light on the proper construction of the claims.

---

[6]     Indeed, if a stay is not granted, the efficiencies would be eliminated. Appellants other than Salesforce will raise Section 101 issues and the Ito prior art in the District Court as they are not parties to the CBM proceeding, and their offer to not raise these defenses in the District Court was contingent on a stay being granted.

Third, CBM Review, much like reexamination, is likely to eliminate completely the District Court's need to consider the '413 Patent claims that are canceled or amended. *Cf. Gould v. Control Laser Corp.*, 705 F.2d 1340, 1342 (Fed. Cir. 1983) (stating that "[the] purpose of the reexamination procedure is to eliminate trial of that issue (when the claim is canceled) or to facilitate trial of that issue by providing the district court with the expert view of the PTO (when a claim survives the reexamination proceeding)"). "Courts need not expend unnecessary judicial resources by attempting to resolve claims which may be amended, eliminated or lucidly narrowed by the patent reexamination process and the expertise of its officers." *Anascape, Ltd. v. Microsoft Corp.*, 475 F. Supp. 2d 612, 615 (E.D. Tex. 2007); *see also Datatreasury Corp.v. Wells Fargo & Co.*, 490 F. Supp. 2d 749, 755 (E.D. Tex. 2006) (noting that "[a]mended claims also have the potential for simplifying the issues that need to be litigated" and that "[n]arrowing claims would commensurately simplify the issues at trial").

The high likelihood of simplification of issues via a traditional *inter partes* reexamination—a patent cancellation procedure analogous to CBM Review—is instructive. Historically, *inter partes* reexamination results in a 42% chance that the patentee cancels or disclaims all claims of the patent and a 47% chance that the patentee amends claims. J.A. 0272. Thus, there is only an

11% chance that patent claims emerge unscathed from *inter partes* reexamination. Even then, the new prosecution history created during reexamination could alter the meaning of claim terms. *CVI/Beta Ventures, Inc. v. Tura LP*, 112 F.3d 1146, 1158 (Fed. Cir. 1997) (stating that "through statements made during prosecution or reexamination an applicant . . . may commit to a particular meaning for a patent term, which meaning is then binding in litigation"). In other words, in nearly any scenario, reexamination affects the substantive meaning of patent claims, and it would be inefficient for the parties and the Court to move forward with litigation only to have the patent claims at issue invalidated, canceled, or changed.[7]

Here, the new CBM Review procedure has an even greater chance of affecting the scope of the patent in comparison to the *inter partes* reexamination procedure. The CBM Review procedure is robust; as the CBM Review advances to final oral argument on July 16, 2014, the parties have ample opportunity to present full and robust consideration of all validity issues raised. For example, the CBM Review process permits live testimony and other discovery. J.A. 0237–0238, J.A. 00243 (Federal Register). As with

---

[7] Moreover, if VirtualAgility is required to amend its claims in order to overcome the reasons for cancellation, the amendments may give rise to intervening rights, mooting its allegations against Defendants. *See* 35 U.S.C. §§ 252 & 307(b).

reexamination, CBM Review may result in any or all of the claims being canceled or, if the PTAB permits, amendment of one or more claims by the patentee. J.A. 0241. Indeed, the PTAB has already determined it is more likely than not that all claims of the '413 Patent are unpatentable under 35 U.S.C. §§ 101 and 102. *See* Statement of the Case, Section B, *supra*. Also, VirtualAgility has already filed a motion to amend its claims. PTAB No. CBM2013-00024, Paper 26 (Jan. 28, 2014). Thus, there is a high likelihood that CBM Review will simplify issues by eliminating the District Court's need to consider claims that are modified or invalidated during the CBM Review process.[8]

The District Court makes at least three critical errors in holding this factor is neutral or weighs slightly against a stay. J.A. 0010, District Court Op. at 10. First, the District Court second-guessed the PTAB's conclusions by stating it is "not persuaded the Ito patent, by itself, would invalidate all or a substantial number of asserted claims of the '413 Patent." J.A. 0006, *id.* at 6. The PTAB, however, found it is "more likely than not" Ito is an invalidating reference. The District Court reached its conclusion by relying only on the "thoroughness of the

---

[8]     VirtualAgility's requested amendment is "in the alternative," *i.e.*, only if the PTAB invalidates the original claims. This uncertainty over whether the parties are litigating claims that are likely to be withdrawn will be removed by granting the stay.

PTO's prior examination of the '413 Patent." *Id.* Such reasoning is a non-sequitur, however, because the Patent Office was never aware of the Ito reference during initial examination.[9] Further, unlike the PTAB, the District Court reached its conclusion without addressing the parties' briefing and expert declarations filed at the PTAB. Indeed, the District Court's conclusion is merely a preliminary opinion, whereas the PTAB's decision indicates the '413 Patent claims are more likely than not invalid pursuant to statute. *See* 35 U.S.C. § 324(a).

Second, the District Court, once again, second-guesses the PTAB and provides three pages of Section 101 analysis and concludes that the Court is "not persuaded that the PTAB will likely cancel all claims of the '413 patent under § 101." J.A. 0009, *id.* at 9. This conclusion (a) directly conflicts with the PTAB's own finding that it *is* likely to cancel all the claims and (b) misses the point. The question is not whether the District Court agrees with Appellants' Section 101 arguments, but whether the District Court need consider them at all. And if the stay is granted, the District Court does not have to do *any* analysis of Section 101 issues raised in CBM Review. The District Court's statement that Section 101 is a "complex and unsettled area of law" (J.A. 0007, *id.* at 7) and

---

[9]     This is confirmed by the fact that the Ito prior art does not appear on the face of the patent-in-suit. *See* J.A. 0019–0020.

inclination to analyze Section 101 for several pages (including, for example, providing a *sua sponte* assessment of the prosecution history of the patent at issue in a different and unrelated CBM Review, CBM2012-00001, *see* J.A. 0007–0010, *id.* at 7–10), confirms that the CBM Review's elimination of Section 101 issues will simplify the litigation.

Third, the District Court asserts simplification weighs against a stay because some invalidity issues will remain for the District Court after CBM Review (based on the District Court's implicit assumption the '413 Patent claims will survive the review unchanged). J.A. 0006, *id.* at 6. It is indisputable, however, that at least *some* invalidity issues will be eliminated by the time the CBM Review is complete. Thus, the litigation is simplified. *Cf. SightSound Techs.*, 2013 WL 2457284, at **1–2 (holding that simplification favored stay even where some invalidity issues are not raised in CBM Review); *Zillow, Inc. v. Trulia, Inc.*, No. C12-1549-JLR, 2013 WL 5530573, at *4 (W.D. Wash. Oct. 7 2013) (stating that simplification favored stay where at least specific prior art at issue in CBM Review "would be excluded from consideration in litigation").

Because CBM Review will simplify, streamline, or completely eliminate the District Court litigation, this factor weighs heavily in favor of a stay.

## B.    The Early Stage Of Litigation Favors A Stay

Appellants promptly filed their CBM Review petition (with voluminous expert testimony attached) and moved to stay when litigation was at the earliest possible stage.  At that time, no conferences with the District Court had occurred, no schedules had been set, and the District Court had issued no substantive rulings.  Thus, Appellants sought a stay at the optimal time—before the District Court or parties spent any significant resources to litigate patent claims that may not even exist following CBM Review.  *See* AIA § 18(b)(1)(B).  Indeed, "[i]t would be difficult to conceive of a case in which this factor more strongly favored the issuance of a stay."  *Magna Donnelly Corp. v. Pilkington N. Am., Inc.*, No. 4:06-cv-126, 2007 WL 772891, at *4 (W.D. Mich. Mar. 12, 2007) (granting stay where reexamination was requested and stay was sought before case scheduling deadlines were set).  Thus, this second factor heavily favors a stay.

Although the District Court concluded this factor favors a stay, it nonetheless erred by considering the litigation's status of the case at the time the District Court decided the motion rather than the time Appellants filed the motion to stay (more than seven months prior).  J.A. 0010, District Court Op. at 10.  In particular, the District Court notes a date for jury selection and the discovery deadline and mentions that discovery has taken place.  *Id.*  At the time

Appellants moved to stay, however, there was no schedule and no discovery had occurred.  There are at least two good reasons why the second factor of AIA § 18 should be considered based on the time the motion to stay is filed.  First, the statutory language is most consistent with such an application.  AIA § 18(a)(1)(B) ("If a party seeks a stay . . . the court shall decide whether to enter a stay based on . . . whether discovery is complete and whether a trial date has been set.").  Second, it would make little sense for a motion to stay to be defeated merely because the district court pressed forward with litigation while the motion was pending.  *Cf. In re EMC*, Misc. No. 142, 2013 WL 324154, at \*2 (Fed. Cir. Jan. 29, 2013) (indicating Courts may not consider familiarity with a case gained after a motion to transfer is filed as a factor in evaluating the merits of that transfer motion) (non-precedential).

Moreover, even if this Court is inclined to consider the litigation as it presently stands, the case is nonetheless still at a relatively early stage.  The District Court has issued no substantive rulings.  The District Court's claim construction hearing will not occur until April 3, 2014.  A stay pending CBM Review will at least avoid the burden of expert disclosures, multiple depositions, and other burdensome discovery tasks.[10]  *Cf. Zillow, Inc. v. Trulia, Inc.*, No.

_____

[10]    As of the time of filing this merits brief, Appellants have moved this Court to stay the underlying litigation pending appeal, and for an expedited
(continued...)

C12-1549-JLR, 2013 WL 5530573, at *8 (W.D. Wash. Oct. 7, 2013) (granting stay and noting stage of litigation favored a stay even though a trial date was set, discovery was ongoing, and parties had exchanged claim construction positions "in light of the significant amount of discovery, claim construction analysis, and motion practice that still lies ahead for the parties and the court prior to trial"). By contrast, if no stay is entered, the parties are set for jury selection on November 3, 2014 (a mere two weeks before the last possible day CBM Review will be decided). Such a schedule raises the very real and likely possibility that the PTAB will hand down a decision that significantly alters or eliminates issues in the case *after* the parties and the District Court have already expended all the effort and cost of preparing exhibits, witnesses, and attorneys to try a patent infringement case. Indeed, the PTAB's decision may be rendered after trial has commenced. As such, this factor favors a stay.

### C. A Stay Will Not Unduly Prejudice VirtualAgility Or Present A Clear Tactical Advantage To Appellants

VirtualAgility will not be unduly prejudiced by a stay. In determining whether a plaintiff might be unduly prejudiced by a stay, one court which previously granted a stay pending a CBM review considered "the timing of the

---

(...continued from previous page)

appeal. Dkt. Nos. 13, 14. These motions are pending. If either or both motions are granted, the burden of a claim construction process might also be avoided.

stay request, the timing of the administrative review request, the status of the review proceedings, and the relationship of the parties." *Market-Alerts Pty. Ltd.*, 2013 WL 443973, at *5. In the case at hand, Appellants requested a stay at an extremely early stage (although, as noted, the District Court has set a very aggressive schedule).

In opposing Appellants' motion to stay, VirtualAgility only relied upon (1) the length of the CBM proceeding, (2) speculative harms from faded memories and unavailable evidence, and (3) potential delay in patent enforcement to argue prejudice. As to the first argument, final trial in the CBM Review is set for July 16, 2014, and the PTAB is required to reach a decision within one year of instituting trial. 37 C.F.R. § 42.300(c); *see also* 35 U.S.C. § 326(a)(11). Thus, a CBM Review decision is due no later than November 19, 2014, and the short length of the CBM Review will not create undue prejudice.[11]

As to the second argument, neither VirtualAgility nor the District Court identify any actual risk of fading memories or potentially unavailable evidence

---

[11]    The District Court notes that a stay could last longer if the Board is asked to re-hear argument or if there is an appeal to the Federal Circuit. J.A. 0013, District Court Op. at 13, n.4. The District Court did not consider, however, that by that time, the PTAB will have reached a decision on the validity of the '413 Patent claims. If the PTAB invalidates the '413 Patent claims, it would make little sense for the District Court nonetheless to proceed to trial on those claims even if an appeal by VirtualAgility remains pending.

aside from suggesting that the age of certain witnesses such as Gordon E. Nelson poses a risk of "witness loss." J.A. 0013, District Court Op. at 14. Contrary to the Court's assumption, however, Mr. Nelson was not "the attorney who prosecuted the '413 Patent over the entire course of the twelve-year examination." *Id*. Instead, the '413 Patent's file history shows Mr. Nelson was not given Power of Attorney with respect to the prosecution of the '413 Patent until 2003. Patent Application No. 09/312,740, Power of Attorney filing dated Mar. 28, 2003 (received Apr. 10, 2003).[12] And, thankfully for Mr. Nelson, the record is devoid of evidence that Mr. Nelson, or anyone else of potential relevance, is likely to die during any stay pending CBM Review.[13]

As to the third argument, district courts have routinely held (in the context of stays pending other patent office proceedings) that "delay in having [] claims adjudicated in court, does not, by itself, constitute undue prejudice." *Research In Motion Ltd. v. Visto Corp.*, 545 F. Supp. 2d 1011, 1012 (N.D. Cal. 2008); *see also Duco, Inc. v. Aker Solution US, Inc.*, No. H-11-2858, 2012 WL 2847469, at *3 (S.D. Tex. July 10, 2012) ("delay, by itself, does not equate to prejudice");

---

[12]  This document is not part of the record on appeal, but is part of the public prosecution history for the '413 Patent.

[13]  Subsequent to the District Court's decision, Defendants deposed Mr. Nelson, on January 22, 2014, even further diminishing any possible concern.

*BarTex Research, LLC v. FedEx Corp.*, 611 F. Supp. 2d 647, 650 (E.D. Tex. 2009) (*citing Photoflex Products, Inc. v. Circa 3 LLC*, No. C 04-03715 JSW, 2006 WL 1440363, at *2 (N.D. Cal. May 24, 2006) ("The delay inherent to the reexamination process does not constitute, by itself, undue prejudice."); *Convergence Techs. (USA), LLC v. Microloops Corp.*, No. 5:10-cv-02051-EJD, 2012 WL 1232187, at *2-4 (N.D. Cal. Apr. 12, 2012) (general claim of delay is not enough on its own to be undue prejudice) (citations omitted). Moreover, to the extent delay could be prejudicial, the prejudice is minimized here because the CBM Review will be complete by November 2014.

Indeed, AIA § 18(b) inherently and its legislative history expressly encourage stays of district court litigation. Thus, delay itself cannot amount to prejudice because this would subvert Congress's intent to provide a cheaper and faster means to challenge the validity of business method patents. *See* J.A. 0227, 157 Cong. Rec. S1053 ("it is nearly impossible to imagine a scenario in which a district court would not issue a stay").

VirtualAgility, meanwhile, emphasizes its alleged risk of losing "market share and goodwill," apparently due to possible delay in potentially obtaining a permanent injunction. But the record does not support a conclusion that (1) VirtualAgility has suffered an irreparable injury; (2) remedies available at law, such as monetary damages, are inadequate to compensate for injury; (3) a

remedy in equity is warranted, considering the balance of hardships between VirtualAgility and the thirteen Appellants, a remedy in equity is warranted; and (4) the public interest would not be disserved by a permanent injunction. *See eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006) (explaining requirements for obtaining permanent injunction). Absent a showing that VirtualAgility would be entitled to an injunction if it succeeds on the merits, which VirtualAgility has not made or even argued in opposing the motion to stay, there is no proper showing that any delay could not be compensated for monetarily and no proper showing of undue harm. *Cf. Inogen, Inc. v. Inova Labs, Inc.*, SACV No. 11-1692-JST (ANx), 2012 WL 4748803 (C.D. Cal. Mar. 20, 2012) (granting a motion to stay even when the parties are direct competitors.); *Polaris Indus., Inc. v. BRP U.S. Inc.*, No. 12-01405 ADM/SER, 2012 WL 5331227 (D. Minn. Oct. 29, 2012) (holding conclusory statements about sales are not enough to prove monetary damages would be insufficient).

Furthermore, the record does not support the District Court's conclusion that VirtualAgility and Salesforce directly compete and that VirtualAgility will lose market share and consumer goodwill while CBM Review is pending. In particular:

- The District Court clearly errs when it states VirtualAgility and Salesforce "took part in the same government bid process at least once." J.A. 0012,

*id.* at 12. There is no evidence of this. Rather, VirtualAgility only cites Salesforce as *appearing* in a bid VirtualAgility received. VirtualAgility's declarant did not state that the two entities competed for that or any other bid. J.A. 0316 at ¶ 8. In actuality, the bid listed certain Salesforce products as a benchmark for the requirements to be met. J.A. 0326. Salesforce was listed as the brand, where a bid must identify how the bidder will provide "brand name or equal." J.A. 0322, J.A. 0326. There is no evidence that Salesforce itself had any involvement other than its brand being referenced by the Department of Health and Human Services. *See id*.

- The District Court states VirtualAgility "***could*** lose market share" due to Salesforce. J.A. 0011, District Court Op. at 11 (emphasis added). In making this uncertain conclusion, the District Court fails to recognize that, even if Salesforce did not exist, VirtualAgility admits it "is at a distinct disadvantage when attempting to compete with much larger companies with large sales teams and promotion budgets" and that Salesforce is only "one such company." J.A. 0317–0318. Moreover, there is no evidence or allegation from VirtualAgility that the other "much larger companies" infringe any VirtualAgility patent. Thus, given the

record's scant evidence, there is no basis for assuming an injunction against Salesforce would affect VirtualAgility's market share.

- Likewise, the District Court states VirtualAgility could lose "goodwill" absent an injunction. J.A. 0013, District Court Op. at 13. But neither the District Court nor VirtualAgility have explained why lack of an injunction might somehow taint VirtualAgility's reputation or standing in the marketplace.

- The District Court states Salesforce does not dispute that VirtualAgility's business model fits the description of potential competition in its Annual Report. J.A. 0012, District Court Op. at 12. VirtualAgility, however, has done nothing to demonstrate it has implemented or could implement this business model with any modicum of success. In addition, Defendants have not yet completed discovery to determine whether there is a basis to dispute VirtualAgility's allegations in this regard.

In short, there is nothing more than thin, circumstantial, flawed and conclusory evidence in the record suggesting that VirtualAgility competes with Salesforce in any meaningful sense.

In comparison, ample evidence shows that Salesforce has competitors that are *not* VirtualAgility. For example, Oracle Corporation identifies Salesforce as a competitor, along with companies such as Microsoft Corporation and SAP

AG. *See*, *e.g.*, Oracle Corp. Annual Report (10-K) at 13 (June 26, 2013).[14]

VirtualAgility is not identified among Oracle competitors. *See id.* Likewise,

Microsoft Corporation identifies Salesforce along with Amazon, Google, IBM,

Oracle, and VMware as its competitors in the cloud-based services space. *See*,

*e.g.*, Microsoft Corp. Annual Report (10-K) at 6 (July 30, 2013).[15] Microsoft

Corporation also identifies Salesforce alongside Oracle, SAP, Infor, Sage and

NetSuite as competing with its Microsoft Dynamics product. *Id.* at 7.

VirtualAgility, again, does not appear as a competitor. Appellants further expect

that discovery—if necessary, after the CBM Review—will bear out the flaws in

VirtualAgility's claim to be a direct competitor with Salesforce.

Moreover, even if evidence supported the conclusion that a stay of

litigation will cause VirtualAgility to lose goodwill and market share, this alone

does not establish undue prejudice (and certainly does not establish so much

undue prejudice that the other AIA § 18(b) factors are outweighed). In

---

[14]     *Available at*
http://www.sec.gov/Archives/edgar/data/1341439/000119312513272832/d5315
15d10k.htm. The Court may take judicial notice of such statements pursuant to
Fed. R. Evid. 201. Indeed, the District Court took judicial notice of Salesforce's
annual report in its decision. J.A. 0012, District Court Op. at 12 n.3.

[15]     *Available at*
http://www.sec.gov/Archives/edgar/data/789019/000119312513310206/d52774
5d10k.htm. The Court may take judicial notice of such statements pursuant to
Fed. R. Evid. 201.

particular, if VirtualAgility were so concerned about loss of "market share and goodwill" or was otherwise concerned with swift adjudication, it could have sought a preliminary injunction or sought to expedite the district court action. VirtualAgility did not do so. This indicates a lack of undue prejudice. *See Zillow, Inc.*, 2013 WL 5530573, at *9 (granting stay pending CBM Review even where litigants were "direct competitors" because the patentee did not move for preliminary injunction). Also, VirtualAgility could have sought to mitigate the length of any stay by expediting CBM Review, but it has chosen not to do so. Most glaringly, VirtualAgility waited months to file its response to Salesforce's CBM petition even though responding sooner would have led to a quicker CBM trial.[16]

VirtualAgility's actions speaker louder than its words, and VirtualAgility's decision to *not* expedite district court litigation or CBM Review

---

[16] VirtualAgility waited until August 29, 2013, to file its preliminary response to the Salesforce's petition for covered business method review. VirtualAgility could have responded more quickly in order to shorten the time for the PTAB to determine whether to institute trial. *See* J.A. 0279 (VirtualAgility Opposition at 4, observing that the PTAB must determine whether to institute trial within 3 months of the patent owner's preliminary response) (quoting 77 Fed. Reg. 48,756, 48,757 (Aug. 14, 2012)). Defendants pointed this out in their reply in support of their motion to stay, *see* J.A.0460 at n.6, but VirtualAgility still chose to delay as long as possible.

further suggests that a stay will not prejudice VirtualAgility. Because there is no undue prejudice or tactical advantage here, this factor favors a stay.

### D. Stay Of Litigation Will Reduce The Burden Of Litigation On The Parties And The Court

The fourth factor of Section 18(b), "whether a stay, or the denial thereof, will reduce the burden of litigation on the parties and on the court," is particularly important. When considering motions to stay litigation pending traditional reexamination, many courts, including the District Court for the Eastern District of Texas, generally did not consider this fourth factor. *See Soverain Software LLC*, 356 F. Supp. 2d at 662; *BarTex Research, LLC*, 611 F. Supp. 2d at 650; *EMG Tech., LLC v. Apple, Inc.* No. 6:09-CV-367, 2010 U.S. Dist. LEXIS 144656 (E.D. Tex. Nov. 15, 2010). Congress adopted this fourth factor, noting: "Too many district courts have been content to allow litigation to grind on while a reexamination is being conducted, forcing the parties to fight in two fora at the same time. This is unacceptable, and would be contrary to the fundamental purpose of the Schumer-Kyl amendment to provide a cost-efficient alternative to litigation." J.A. 0254, 157 Cong. Rec. S1364 (daily ed. Mar. 8, 2011) (statement of Sen. Schumer).

Courts around the country have granted such motions and have emphasized this fourth factor. For example, in Delaware, Judge Sleet explained that Congress included this fourth factor, in part, "to ease the movant's task of

demonstrating the need for a stay." *Market-Alerts Pty. Ltd.*, 2013 WL 443973, at *2. Similarly, Judge Pearson in Ohio noted "[t]he fourth factor of the test was enacted to increase the likelihood that a stay would be granted." *Progressive Cas. Ins. Co.*, 2013 WL 1662952, at *8; *see also*, *e.g.*, *SightSound Techs.*, 2013 WL 2457284, at *3 (citing *Progressive Cas. Ins. Co.*) (granting stay and noting courts consider the fourth factor "in light of the suggestion that it was enacted in order to increase the likelihood that a stay would be granted"); *Versata Software, Inc. v. Volusion, Inc.*, No. A-12-CA-893-SS, 2013 WL 6912688, at *4 (W.D. Tex. June 20, 2013) (granting stay where a stay would "unquestionably reduce the burden of litigation on the Court, as well as the parties" because "[a]bsent a stay, the parties would be required to prepare for and conduct a *Markman* hearing in this Court, and then prepare for trial"); *Zillow, Inc.*, 2013 WL 5530573, at *9 (granting stay and noting "the fourth factor was added in order to ease the movant's task in demonstrating the need for a stay"). In contrast, the District Court erred by allotting too little weight to this factor by erroneously conflating it with the first factor ("simplification") and ignoring the key legislative history regarding the particular importance of this factor.

Here, a stay will spare the parties the burden of litigating the validity of the '413 Patent before both the District Court and the PTAB at the same time. Likewise, CBM Review will reduce the District Court's burden by allowing the

PTAB to determine whether, in light of key prior art and the requirement of 35 U.S.C. § 101, the '413 Patent's claims as presently written should exist at all. Also, a stay will spare the District Court the burden of, for example, conducting claim construction with regard to patent claims that may be canceled, amended, or subsequently commented on during the CBM Review process.

Notably, the burden of litigation is particularly heavy here because VirtualAgility has sued Salesforce along with twelve Salesforce customers. In litigation, VirtualAgility has burdened and continues to burden all of these customer defendants with, for example, demands for documents. All of this burden could be spared by a stay of litigation so that the true parties at interest, Salesforce and VirtualAgility, can focus on an issue at the core of this patent dispute—the validity of the '413 Patent.

Finally, while the fourth factor is focused on the parties and the Court, a stay pending CBM Review will also reduce the burden on third parties. For example, the District Court discussed two prior art products Defendants-Appellants have asserted as part of their invalidity defense in the litigation. J.A. 0006, District Court Op. at 6. The third parties that have information about these prior art products, as well as their current or former employees, would benefit from not expending *their* resources, such as by providing testimony pertaining to the prior art products and systems, when the patent claims now at

issue may become moot by virtue of the CBM Review. This provides another benefit of a stay.

Thus, all four statutory factors weigh heavily in favor of a stay, and no "exceptional circumstances" offset the "heavy thumb" Section 18(b) places in favor of a stay. Rather than having the parties and the District Court be burdened with dual-track and duplicative procedures, this Court should direct the District Court to stay the litigation pending CBM Review.

### E. Courts Outside The Eastern District of Texas Have Granted Stays Pursuant To AIA § 18(b) In Circumstances That Are Similar Or Even Less Favorable To A Stay

Until the District Court's ruling in this case, decisions on AIA § 18(b) stays have been largely uniform, particularly when, as here, the PTAB has granted the petition for CBM Review.[17] Indeed, district courts around the country have granted stays even in circumstances where the four factors

---

[17] Three courts including a different court within the Eastern District of Texas previously denied a motion for stay pending CBM Review without prejudice, stating that, *e.g.*, "[i]f the USPTO grants [the] petitions, Defendants may reurge their motions at that time." *Blue Calypso*, *Inc. v. Groupon*, *Inc.*, No. 6:12-cv-486-MHS, Dkt. No. 86, slip op. at 4 (E.D. Tex. Jul. 19, 2013); *see also Benefit Funding Sys. LLC v. Advance Am.*, *Cash Advance Centers*, *Inc.*, No. 1:12-cv-801-LPS, 2013 WL 3296230 (D. Del. Jun. 28, 2013); *CheckFree Corp. v. Metavante Corp.*, 3:12-cv-015-MMH, Dkt. No. 210 (Aug. 13, 2013). In two of these cases, CBM Review was instituted and the movants have recently renewed their motion to stay. *See Benefit Funding Sys. LLC*, No. 1:12-cv-801-LPS, Dkt. No. 78 (Oct. 7, 2013); *CheckFree Corp.*, No. 3:12-cv-015-MMH, Dkt. No. 258 (Dec. 23, 2013).

weighed less heavily in favor of a stay than they do here.  Representative examples follow.[18]

**<u>Delaware</u>**:  Appellants believe the District Court for the District of Delaware granted the nation's first stay pursuant to AIA § 18(b).  *Market-Alerts Pty. Ltd.*, 922 F. Supp. 2d at 497.  There, all four factors favored stay:

- Factor One: simplification favored stay because "at least a reasonable chance" existed that PTAB would invalidate or require amendments.  *Id*. at 493.

- Factor Two: as here, the stage of litigation favored stay because the motion to stay was brought prior to any schedule.  *Id*. at 494.

- Factor Three: the lack of undue prejudice favored stay where there was lack of "dilatory motive" and no proof parties were direct competitors.  *Id.* at 495–96.

- Factor Four: a stay would reduce the burden on the parties and the court, and the court noted its conclusion is "reinforced by the legislative intent underlying this fourth stay factor."  *Id* at 497.[19]

---

[18]    Appellants are not aware of any additional district court opinions on opposed motions for stay pending CBM Review beyond those cited in this brief.

[19]    In another case, the District of Delaware entered a stay before the PTAB decided on the petition.  *Pi-Net Int'l Inc. v. Citizens Fin. Group*, *Inc.*, Case No. 1:12-cv-355-RGA, 2013 WL 6094223, at *1.  (D. Del. Jun. 21, 2013).  The *Pi-Net Int'l* order did not provide the Court's reasoning, presumably in view of the Court having ruled from the bench.  Jun. 21, 2013 Minute Entry.  *See also*
(continued...)

**Ohio**:  The court issued stays in four cases pending CBM review.  *Progressive Cas. Ins. Co.*, 2013 WL 1662952, at *1.

•  Factor One: as here, simplification favored a stay because even if some claims survived "issues would be significantly streamlined." *Id.* at *5.

•  Factor Two: the stage of litigation favored a stay where discovery had commenced but was at an early stage. *Id.* at *5.  Here, Appellants filed for stay at an even earlier time.

•  Factor Three: this factor moderately pointed toward denying a stay where, much different than the present dispute, the Court had previously granted other stays and the parties (Progressive Insurance and Liberty Mutual, State Farm, and Hartford) were plainly active and direct competitors.  *Id.* at *8.  Nonetheless, this factor did not outweigh the others because, as here, plaintiff did not show why money damages would not alleviate any alleged prejudice. *Id.*

•  Factor Four: as here, a stay would relieve the parties and the Court of burdens. *Id* at *8.

---

(...continued from previous page)
*Chicago Board Options Exchange*, *Inc. v. Int'l Sec. Exchange*, *LLC*, No. 2:13-cv-1339-JMF, Dkt. No. 89 (S.D.N.Y. Nov. 1, 2013) (ordering stay following ruling from bench).

**Pennsylvania**:  Even though the motion to stay was filed in a late stage of litigation, "the totality of the circumstances weigh[ed] in favor of a stay." *SightSound Techs.*, 2013 WL 2457284, at *3.

•      Factor One: as here, simplification favored a stay even though prior art differed between proceedings because "[a] stay leaves open the significant potential to simplify the issues for trial, and streamline the trial." *Id*. at *2.

•      Factor Two: unlike here, litigation was at a late stage. *Id.* at *2.  Thus, this factor weighed against a stay. *Id*.

•      Factor Three: lack of undue prejudice favored a stay because "[D]elay alone . . . does not amount to undue prejudice." *Id*.

•      Factor Four: even where substantial resources had already been spent (unlike here where Appellants' stay request was filed at the outset), "there is more to come."  Thus, "[a] stay will reduce the burden of litigation." *Id* at *3.

**Western District of Texas**:  Based on the four factors "and Congress's clear preference in favor of stays," a stay was granted.  *Versata Software, Inc. v. Volusion, Inc.*, No. A-12-CA-893-SS, 2013 WL 6912688, at *4.

•      Factor One: the court noted CBM Review "might resolve the case entirely" and even if only some claims are held invalid, simplification occurs. *Id*. at *2.

- Factor Two: stage of case favored a stay even though discovery had begun because "staying the case now would postpone the parties' *Markman* preparations." *Id.* at *3. Here, Appellants filed for stay at an earlier stage.

- Factor Three: as here, there was no "obvious prejudice" to the patentee or "undue tactical advantage" to be gained. *Id.*

- Factor Four: as here, "a stay [would] unquestionably reduce the burden of litigation on the Court, as well as the parties" and it would be wasteful for the Court to construe claims when the effort might duplicate the PTAB's efforts. *Id.*

**Washington**:  The court held all four factors favored stay. *Zillow, Inc. v. Trulia, Inc.*, No. C12-1549-JLR, 2013 WL 5530573, at *9.

- Factor One: As here, simplification favored stay even where only some of the litigation's prior art was in CBM Review because "some or all of the claims may be cancelled or amended" and the art in the CBM Review would be "excluded from consideration in [] litigation."  *Id.* at *4.

- Factor Two: the stage of litigation favored a stay even though discovery was ongoing and a claim construction hearing was two months away. *Id.* at *5. Here, Appellants filed for stay at a much earlier stage.

- Factor Three: there was no undue prejudice even though the parties were "direct competitors" especially considering that, as here, the plaintiff did not pursue preliminary injunctive relief. *Id.* at *6–7.

- Factor Four: as here, "a stay would relieve [the parties] of litigating in multiple fora" and the court would be relieved of the burden of deciding claim construction and other issues. *Id.* at *8.

**Southern District of California**: Although the PTAB had not yet ruled on the petition, the Court found the balance of factors favored a stay. *Ameranth, Inc. v. Pizza Hut, Inc.*, Case No. 3:11-cv-1810-DMS, Dkt. No. 549 (S.D. Cal. Nov. 26, 2013).

- Factor One: Distinct from the circumstances here, the Court found that because the PTAB had not yet ruled on the petition, this factor weighed against the stay where any simplification of issues was still speculative. *Id.* at p. 2–3.

- Factor Two: Although the first in a group of cases was filed over two years earlier, the Court considered all of them as being in the early stages, favoring stay. *Id.* at 3.

- Factor Three: The absence of evidence of direct competition and dilatory motive favored stay. *Id.* at 4.

- Factor Four: As here, "the parties would be relieved of their current obligation to . . . conduct claim construction discovery,"[20] and "[t]he Court

---

[20] The Court also observed the possibility of avoiding infringement and invalidity contentions. *Id.* at 4. This would have occurred in the instant case if the stay had been granted at the outset.

would also be relieved of its obligation to construe the claims and resolve any other issues that may arise during the course of litigation." *Id.* at 4. Thus, this factor favored of a stay.

**Central District of California**: Although—unlike here—the petition for CBM Review was not filed until well after the case had begun, where the parties had exchanged (*e.g.*) infringement and invalidity contentions prior to the petition for CBM Review, the Court found that the balance of factors favored a stay. *Credit Acceptance Corp. v. Westlake Svcs., LLC*, No. 2:13-cv-1523-SJO, Dkt. No. 67, slip op. at 6, 8 (C.D. Cal. Dec. 30, 2013).

- Factor One: Although the CBM petition had not yet been granted, the possibility of simplifying or clarifying issues—including by any Supreme Court decision on 35 U.S.C. § 101, also relevant here—favored a stay. *Id.* at p. 4-6.

- Factor Two: Unlike here, the petitioner waited until much later in the litigation to file its CBM petition and request for a stay, such that this factor weighed against a stay. *Id.* at 6.

- Factor Three: The Court found that the Plaintiff's seven-year delay in filing suit suggested an absence of prejudice to Plaintiff. *Id.* at 7.

- Factor Four: "A stay will reduce the burden of litigation on the parties and the courts. With a stay, the parties need not litigate simultaneously on multiple fronts. When the case returns to this Court, the issues will likely be

simplified, further reducing the burden of litigation. Moreover, giving the Supreme Court an opportunity to weigh in on the proper test for determining whether a claim is unpatentable as an abstract idea reduces the chances that any decision by this Court on that issue will need to be reconsidered in light of the pending decision." *Id.* at 7. Thus, this factor favored a stay. *Id.* at 8.

**Nevada**: The Court rejected the contention that the issue was not ripe because the PTAB had not yet decided whether to institute CBM Review, and then determined all four factors favored a stay. *Unwired Planet LLC v. Google Inc.*, No. 3:12-cv-00504-MMD-VPC, Dkt. No. 233, slip op. at 9, 12 (D. Nev. Jan. 24, 2014).

• Factor One: Unlike here, there were multiple patents asserted against various different products. Nevertheless, "[i]f any claim is canceled, it will be dismissed from the case, and if any claim is confirmed, the preclusive effects of PTO review will prevent Google from raising certain defenses." *Id.* at 9. Thus, this factor favored a stay, as issued would be simplified. *Id.* at 10.

• Factor Two: "While the parties have already brought several disputes before the Court, the case remains in an early stage." *Id.* at 10. Here, Appellants filed for a stay at an even earlier stage.

• Factor Three: "[W]hile the delay may be inconvenient, no viable threat of prejudice toward Unwired Planet exists should a stay issue." *Id.* at 11.

- Factor Four:  Unlike here, only a subset of asserted patents was implicated by CBM Review.  *Id.* at 11.  Still, "it is unlikely that [simultaneous] adjudication of all claims will be necessarily more efficient."  *Id.*  Thus, "a stay would decrease the burden on both the parties and the Court."  *Id.*

Finally, it bears mention that another Court within the Eastern District of Texas recently granted a stay of litigation pending the PTAB's decision on a CBM Petition.  *Landmark Tech., LLC v. iRobot Corp.*, No. 6:13-cv-00411-JDL, Dkt. No. 47 (E.D. Tex. Jan. 24, 2014).  The *Landmark Tech.* court emphasized the differences between the reexamination procedure the relevant patents had already survived and the CBM Review procedure, and observed that there may be a different outcome in the CBM Review.  *Id.*, slip op. at 9.  The same reasoning applies even more strongly to the original prosecution that the District Court cited in considering CBM Review.  *E.g.*, J.A. 0005, District Court. Op. at 5.  *See also Intertainer, Inc. v. Hulu, LLC*, No. 2:13-cv-05499, Dkt. No. 29 (C.D. Cal. Jan 24, 2014) (granting stay pending PTAB decision on CBM Petition).

The District Court's decision here is the outlier.[21]  But Congress made interlocutory appeal available as a statutory right—and allowed *de novo*

---

[21]  In one unique case, the Defendant and CBM Petitioner opposed a stay, while the Plaintiff and patent-holder actually requested one.  *EZShield*, *Inc. v.* (continued...)

review—precisely to eliminate outliers and to promote uniform application of the statutory standard for granting stays pending CBM Review. *See* AIA § 18(b)(2) (this Court "shall review the district court's decision to ensure consistent application of established precedent"); J.A. 0254, 157 Cong. Rec. S1364 (daily ed. March 8, 2011) (statement of Sen. Schumer) ("A *de novo* review is central to the purpose of the interlocutory appeal provision in the Schumer-Kyl amendment, which is to ensure consistent application of standards and precedents across the country and to avoid one particular court with a favorable bench becoming the preferred venue of business method patent plaintiffs.").

If this Court were to affirm the District Court's denial of a stay here, future litigants would face difficult precedent in lodging their own requests for stay pursuant to AIA § 18(b). CBM Review is only available to those sued for or charged with infringement (AIA § 18(a)(1)(B)), and many such accused infringers would likely choose to forego CBM Review entirely rather than face

---

(...continued from previous page)
*Harland Clarke Corp.*, Case No. 1:13-cv-001-MJG, Dkt. No. 47 (D. Md. Sep. 3, 2013). Finding significant and direct competitive disadvantage between the two parties, *id.*, slip op. at 5, the Court agreed to allow proceedings through claim construction, but with limited and discrete discovery, *id.* at 8.

the risk of simultaneous litigation in multiple fora. Thus, Congress's entire purpose in creating CBM Review would be largely defeated.

The facts of this case leave no reason to depart from Congress's goals in instituting the CBM Review program. Because all four AIA § 18(b) factors favor a stay, the District Court's decision should be reversed and a stay should be granted.

## CONCLUSION AND STATEMENT OF RELIEF SOUGHT

For the foregoing reasons, Appellants respectfully request an order directing the United States District Court for the Eastern District of Texas to stay the underlying district court litigation until resolution of the Patent Trial and Appeal Board's Covered Business Method Review of the patent-in-suit.

Dated:  January 31, 2014

WILSON SONSINI
GOODRICH & ROSATI
Professional Corporation


By: /s/: Jose C. Villarreal
Jose C. Villarreal
jvillarreal@wsgr.com
900 South Capital of Texas
Highway
Las Cimas IV, Fifth Floor
Austin, TX 78746-5546
Telephone:  (512) 338-5400
Facsimile:   (512) 338-5499

Larry L. Shatzer
lshatzer@wsgr.com
1700 K Street, NW
Fifth Floor
Washington, DC 20006
Telephone:  (202) 973-8800
Facsimile:   (202) 973-8899

**ATTORNEYS FOR DEFENDANTS-
APPELLANTS SALESFORCE.COM,
INC.; DELL, INC.; DR PEPPER
SNAPPLE GROUP, INC.;
NBCUNIVERSAL, INC.;
LIVINGSOCIAL, INC.; FEDEX
CORPORATION; FEDEX
CORPORATE SERVICES, INC.; BMC
SOFTWARE, INC.; BANK OF
AMERICA CORPORATION; BANK OF
AMERICA, NATIONAL
ASSOCIATION; MERRILL LYNCH &
CO., INC.; AND MERRILL LYNCH,
PIERCE, FENNER & SMITH
INCORPORATED**

BAKER BOTTS L.L.P.


By: /s/: Darryl J. Adams
    Darryl J. Adams
    darryl.adams@bakerbotts.com
    Kevin J. Meek
    kevin.meek@bakerbotts.com
    98 San Jacinto Blvd., Suite 1500
    Austin, TX 78701
    Telephone:  (512) 322-2500
    Facsimile:   (512) 322-2501

    **ATTORNEYS FOR DEFENDANT-**
    **APPELLANT,**
    **KIMBERLY-CLARK**
    **CORPORATION**

# ADDENDUM

## IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

VIRTUALAGILITY, INC.,          §
                               §
        Plaintiff,             §
                               §
v.                             §     Civil Action No. 2:13-cv-00011-JRG
                               §
SALESFORCE.COM, INC., ET AL    §
                               §
        Defendants.            §
                               §

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants' Joint Motion to Stay Proceedings Pursuant to Section

18(b) of the Leahy-Smith America Invents Act ("AIA").   (Dkt. No. 67.)   Having considered the

parties' written submissions, the Court **DENIES** Defendants' motion.

### I.      Background

The patent at issue relates to processes and tools which provide a common framework for

communicating effectively across diverse groups within an organization and for assessing key

elements of the organization's business.   The patentee, VirtualAgility, Inc. ("VirtualAgility" or

"Plaintiff") sells cloud-based enterprise-level information technology solutions that encompass

the patented invention.   Defendant Salesforce.com, Inc. ("Salesforce") likewise is a provider of

enterprise cloud computing solutions, whose products are used by the other Defendants in this

case.

VirtualAgility filed suit on January 4, 2013 against Salesforce and the other Defendants for

allegedly infringing U.S. Patent No. 8,095,413 (the "'413 Patent").   On May 24, 2013, Salesforce

1

filed a petition for Covered Business Method ("CBM") review of the '413 Patent under the AIA. On May 29, 2013, all Defendants jointly filed the instant motion seeking a stay of proceedings pending the PTO's final resolution of the CBM review. On November 19, 2013, the Patent Trial and Appeal Board ("PTAB") granted Defendants' petition and instituted a CBM review of all claims of the '413 Patent.

## II.    Applicable Law

Section 18 of the Leahy-Smith America Invents Act ("AIA") establishes the Transitional Program for Covered Business Method Patents ("CBM"). 157 Cong. Rec. S1360-02 (2011); AIA § 18. The program is regarded as a post-grant review, where a person sued for infringement of a "covered business method" patent may petition the PTAB to review the validity of that patent. AIA § 18(a). For purposes of the statute, a "covered business method" patent is defined as "a patent that claims a method or corresponding apparatus for performing data processing operations utilized in the practice, administration, or management of a financial product or service." AIA § 18(d).

The transitional program provides a statutory stay provision under which a party may seek stay of a civil action alleging infringement of the CBM patent. AIA § 18(b)(1). The courts are directed to base their decision as to whether or not to grant such a stay on four factors: "(A) whether a stay, or the denial thereof, will simplify the issues in question and streamline the trial; (B) whether discovery is complete and whether a trial date has been set; (C) whether a stay, or the denial thereof, would unduly prejudice the nonmoving party or present a clear tactical advantage for the moving party; and (D) whether a stay, or the denial thereof, will reduce the burden of litigation on the parties and on the court." *Id.*

## III.    Analysis

2

The Court will discuss each of the statutory stay factors outlined in § 18(b) below, addressing the parties' specific arguments where applicable.

### a. Statutory Background

The CBM transitional program is designed to "provide a cheaper, faster alternative to district court litigation over the validity of business-method patents." 157 Cong. Rec. S1360-02. The proceeding is limited to certain business method patents, which "are generally of dubious quality because unlike other types of patents, they have not been thoroughly reviewed at the PTO due to a lack of the best prior art." *Id.*

The four-factor test, adopted directly from a 2006 district court opinion in *Broad. Innovation, L.L.C. v. Charter Commc'n, Inc.*, No. 03-cv-2223-ABJ-BNB, 2006 WL 1897165 at *3 (D. Colo. July 11, 2006), "closely resembles the stay analysis courts have applied in assessing a motion to stay pending *inter partes* or *ex parte* reexamination by the [patent office]. 157 Cong. Rec. S1360-02; *Market-Alerts Pty. Ltd. v. Bloomberg Fin. L.P.*, 922 F. Supp. 2d 486, 489 (D. Del. Feb. 5, 2013); *see, e.g.*, *Soverain Software LLC v. Amazon, Inc.*, 356 F. Supp. 2d 660, 662 (E.D. Tex. 2005) (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)) (applying a three-factor test that asks "(1) whether a stay will unduly prejudice or present a clear tactical disadvantage to the nonmoving party, (2) whether a stay will simplify the issues in question and trial of the case, and (3) whether discovery is complete and whether a trial date has been set."). Indeed, the only difference between the CBM test and the court's traditional test is the addition of the fourth factor, which requires courts to consider "whether a stay, or the denial thereof, will reduce the burden of litigation on the parties and on the court." AIA § 18(b)(1). Some courts interpret this additional consideration as "[having] ease[d] the movant's task of demonstrating the need for a stay." *Market-Alerts*, 922 F. Supp. 2d at 489-490; *see also Versata Software, Inc. v. Volusion, Inc.*, No.

3

A-12-CA-893-SS (W.D. Tex. June 20, 2013) (slip opinion); *Progressive Casualty Ins. Co. v. Safeco Ins. Co, et al.*, Nos. 1:10-cv-01370, 1:11-cv-00082, 1:12-cv-01068, 1:12-cv-01070, 2013 WL 1662952 (N.D. Ohio April 17, 2013); *Zillow v. Trulia*, No. C-12-1549-JLR, 2013 WL 5530573 (W.D. Wash. Oct. 7, 2013).

This Court is mindful that Congress did not provide an automatic stay provision for the transitional program. Rather, the statute instructs the court to consider all four factors in deciding whether or not to grant a stay. Further, there has been little dispute among district courts that Congress did not intend to alter the way in which district courts assess the first three factors. *See, e.g.*, *Market-Alerts*, 922 F. Supp. at 490 n.6; *Zillow*, 2013 WL 5530573 at *3. Thus, under the statutory stay provision of the transitional program, staying patent cases pending CBM review remains squarely within the court's discretion, and "such determinations must rest on the facts of each particular case." *See Sightsound Techs., LLC v. Apple*, No. 11-1292, 2013 WL 2457284 at *1 (W.D. Penn. June 6, 2013). Whether to ultimately grant or deny such a stay flows from the court's inherent authority to manage its own trial docket. *See Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936) ("[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.").

### b. Simplification of Issues

The first statutory factor requires the Court to consider whether a stay will simply the issues in question and streamline the trial. Defendants argue that the CBM review will simplify the issues in this case because the review may result in some or all of the claims being cancelled. The Court, however, is not convinced that such a result is probable.

The Court notes from the outset that the '413 Patent has gone through a lengthy

prosecution process, indeed one spanning over twelve years, during which time the PTO considered more than sixty patent and non-patent prior art references before eventually granting the patent. The application was filed on May 14, 1999. After the initial examination and continued examination, the examiner rejected the patent application under 35 U.S.C. § 102 and §103, which decision was appealed to the Board of Patent Interference and Appeal ("BPIA"). In a written opinion published on June 16, 2011, the BPIA reversed the examiner's rejection under § 102 and § 103, but raised a new ground of rejection finding the claims directed at un-patentable subject matter under 35 U.S.C. § 101. Thereafter, the applicant reopened prosecution and authorized an examiner's amendment. In light of the BPIA's rejection under § 101, the examiner amended then-pending claims 197, 210 and 211, bringing those claims to, in the examiner's view, the proper scope of the statutory subject matter. With those amendments deemed acceptable by the applicant, the amended claims were subsequently allowed on September 25, 2011, which then became the claims of the '413 patent.[1] Thus, unlike the more common business method patents which Congress contemplated to "have not been thoroughly reviewed at the PTO due to a lack of the best prior art," there can be little dispute here about the thoroughness of the PTO's prior examination of the '413 patent, given the various grounds of invalidity and the breadth of prior art references considered by the PTO before issuing this patent.

Defendants argue that the CBM review will simplify issues in this case because the PTAB will determine whether the asserted claims are invalid in view of "several important prior art references." Defendants presented a total of two prior art references to the PTAB (the Ito patent and the Lowery book), one of which, the Lowery book, was previously considered by the PTO

---

[1] To the extent the Court refers to any prosecution history record not specifically set forth by either party, the Court hereby, *sua sponte*, takes judicial notice of such record. *See* Federal Rule of Evidence 201 (b)-(c) (stating that courts may unilaterally take judicial notice of a fact not subject to reasonable dispute because "it can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.").

5

during the '413 patent prosecution.   Indeed, in its Decision Instituting Covered Business Method Review of the '413 patent, the PTAB again found that "[Salesforce] has failed to show that claims 1-21 are, more likely than not, anticipated by Lowery," and that "[Salesforce] has not shown that claims 1-21 are, more likely than not, unpatentable as would have been obvious[] over Ito and Lowery," essentially leaving the Ito patent as the single prior art reference currently before the PTAB.   Dkt. No. 105-1 at 43-44.   Given the thoroughness of the PTO's prior examination of the '413 patent, during which time more than sixty prior art references were considered, the Court is not persuaded that the Ito patent, by itself, would invalidate all or a substantial number of asserted claims of the '413 Patent.

Moreover, during the course of this litigation, Defendants have indicated to the Court that they would rely on at least two other non-patent prior art references (the "Oracle project" and the "Tecskor product"), both of which are allegedly "of particular importance."   *See* Dkt. No. 49 at 18-19 (Defendants relying on the prior art "Oracle project" in seeking to transfer venue to the Northern District of California); Dkt. No. 103 at 3 (Defendants requesting the Court to issue a letter of request for international judicial assistance from Canada with respect to the prior art Tecskor software product).   Neither the Oracle project nor the Tecskor product is before the PTAB.   Thus, even though the CBM review obviates the need for this Court to consider the Ito patent, should any of the asserted claims emerge from the CBM review, the Court would almost certainly need to consider either the Oracle project or the Tecskor product, if not both, as invalidating prior art.   In this regard, the benefit derived from the PTAB's consideration of the Ito patent, as the only prior art reference now before the patent office, is therefore marginal.   *Cf. Broad. Innovation*, 2006 WL 1897165 at *3 (recognizing the advantage of PTO reexamination when "[a]ll prior art presented to the Court will have been first considered by the PTO, with its

6

particular expertise.")

Defendants further argue that a stay will "clearly simplify" the issues in this case because a § 101 determination will likely cancel all asserted claims of the '413 patent in light of the PTAB's recent decision holding unpatentable under 35 U.S.C. § 101 certain method and computer apparatus claims in *SAP Am., Inc. v. Versata Development Group, Inc.*, No. CBM2012-00001 (PTAB June 11, 2013) (final written decision for CBM review of U.S. Patent 6,553,350 (the "*SAP patent*")). The Court, however, sees even greater uncertainty with respect to the PTAB's § 101 determination. Defendants have correctly noted that patentable subject matter is a complex and unsettled area of law. *See Bilski v. Kappos*, 130 S. Ct. 3218, 3232 (2010) (Stevens, J., concurring) (noting the "uncertainty that currently pervades this field" as to what constitutes a patentable "process" under 35 U.S.C. § 101.); *CLS Bank Int'l v. Alice Corp. Pty. Ltd.*, 717 F.3d 1269, 1277 (Fed. Cir. 2013), *cert. granted*, 13-298, 2013 WL 4776518 (U.S. Dec. 6, 2013) ("While simple enough to state, the patent-eligibility test has proven quite difficult to apply."). The patentability of claims directed at computer-implemented inventions as in this case is a particularly divided issue at the Federal Circuit.[2] While the Court has the benefit of the PTAB's prior § 101 determination in *SAP v. Versata* in deciding whether the CBM review will likely cancel any claims of the '413 Patent, it finds considerable differences between the claims in *SAP* and the claims at issue. The *SAP* patent went through a three-year prosecution, during which time the only ground of invalidity considered by the PTO was obviousness under § 103. *See Versata Software, Inc. et al v. SAP America, Inc. et al*, No. 2:07-cv-00153-RSP, Dkt. No. 352 Exs. 3.4-3.8 (prosecution history of the *SAP* patent). The CBM review then cancelled all *SAP* claims under § 101 and *Gottschalk v. Benson*, 409 U.S. 63 (1972), as simply reciting a generic general purpose computer

---

[2] *See* Donald S. Chisum, *Patents on Computer-Implemented Methods and Systems: The Supreme Court Grants Review (CLS Bank) Background Developments and Comments*, Chisum Patent Academy (2013).

element that failed to constitute a "meaningful limitation" of the claim. *See SAP*, No. CBM2012-00001 at 29-30. This ground of invalidity, however, has been considered by the BPAI during the course of the '413 Patent prosecution. *See* Decision on Appeal, Application No. 09/312,740 at 10 (BPAI June 20, 2011) (rejecting the then-pending claims of the '413 patent application as encompassing software *per se*); MPEP Ch. 2100, § 2106 (listing "computer program *per se*" as an example of unpatentable claims under *Benson*, 409 U.S. at 72). Indeed, the amendments that eventually led to the issuance of the '413 patent were recommended by the examiner to specifically address the Board's § 101 rejection. Thus, unlike the *SAP* claims the subject-matter patentability of which had never been considered by the patent office prior to its CBM review, here § 101 issues concerning the '413 patent had been scrutinized by both the patent examiner and the appeal Board, and this occurred less than two years prior to Defendant's petition for CBM review. As a result, the '413 patent carries with it a stronger presumption of validity than the *SAP* patent with respect to at least the § 101 challenge. *See Bowser, Inc. v. U. S.*, 388 F.2d 346, 349 (Ct. Cl. 1967) ("The strength of the presumption [of patent validity] varies with the substance of the assertion, e.g., if the asserting party relies on prior art that previously has been considered either by the Patent Office or by another court then the presumption of validity is strong, or if the asserting party cites prior art that is more pertinent than that considered by the Patent Office or another court then the presumption of validity is considerably weakened."); *cf. Microsoft Corp. v. i4i Ltd. P'ship*, 131 S. Ct. 2238, 2250 (2011) ("[B]ecause the heightened standard of proof [for invalidating a patent] applied where the evidence before the court was 'different' from that considered by the PTO, it applied even more clearly where the evidence was identical.") (citation omitted).

Further, beyond the underlying abstract idea, the *SAP* claims include but a broad limitation

8

of using "a data source," which incurred nothing more than "conventional, routine steps that are a consequence of implementing the abstract idea." *See SAP*, No. CBM2012-00001 at 21-32. Whereas in this case, the asserted claims of the '413 patent involve "an extensive computer interface," particularly, a specific application of a method implemented on a comprehensive graphical user interface. *See Ultramercial, Inc. v. Hulu, LLC*, 722 F.3d 1335, 1352 (Fed. Cir. 2013). Not only do multiple claims of the '413 patent call for "a graphical user interface" capable of displaying and linking different categories of information and supporting a variety of user operations, the specification also makes it clear that such a user interface is essential for achieving the intended benefit of the claimed intention. *See, e.g.*, Claims 1-3; Col. 11:24-27 ("Because these different views are a click away, the Agile Manager supports a dynamic decision making process where discussion can move quickly from strategic to tactical consideration."); Figs. 3, 6-10, 12-33. Here, unlike the "data source" element of the *SAP* claims which was mere "token pre- or post-solution steps" of the underlying idea, the graphical user interface which links different groups of an organization is an integral part of the claimed invention, and is more likely to provide a "meaningful limitation" to the general idea. *Ultramercial*, 722 F.3d at 1352; *Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Canada (U.S.)*, 687 F.3d 1266, 1278 (Fed. Cir. 2012) ("In order for the addition of a machine to impose a meaningful limit on the scope of a claim, it must play a significant part in permitting the claimed method to be performed[.]"). Accordingly, given the clear differences between the *SAP* claims and the asserted claims of the '413 Patent, the Court is not persuaded that the PTAB will likely cancel all claims of the '413 patent under § 101, as it did in *SAP*. Defendants' assertion that a § 101 determination will "clearly simplify issues" is nothing more than an educated guess in this case.

In sum, weighing the limited benefit derived from the PTAB's prior consideration of the

single prior art reference (the Ito patent) against the substantial uncertainty involved in all other aspects of the CBM review, including the § 101 determination and further in view of the two additional prior art references not before the PTAB, this Court is not convinced that granting a stay will simplify the issues in this case. This factor is essentially neutral, if not slightly against, granting a stay in this case.

### c. Status of This Case

The second factor, whether discovery is complete and whether a trial date has been set, weighs in favor of granting a stay. While jury selection in the instant case has been set to take place on November 3, 2014, the deadline to complete fact discovery is more than six months away. *See* Dkt. No. 91. Some discovery has been undertaken, but the parties have not filed their joint claim construction statement or proposed claim terms to be construed. Ultimately, however, the Court finds that the benefits of a stay at this relatively early stage of the proceedings are outweighed by various other considerations as discussed elsewhere herein. *See Broad. Innovation*, 2006 WL 1897165 at *11 ("[T]he ultimate determination is within the Court's discretion based on a weighing of the benefits of issuing a stay versus any added expenses resulting from the stay.").

### d. Prejudice or Disadvantage to Plaintiff

Regarding the third statutory factor, Plaintiff VirtualAgility argues that a stay will unduly prejudice it because its direct competitor Salesforce will be given up to two additional years to compete against VirtualAgility using VirtualAgility's patented technology without permission, which may lead to VirtualAgility's loss of market share and erosion of good will. Defendants dispute that Salesforce is VirtualAgility's direct competitor and further argue that any prejudicial effect would be minimal because the CBM review occurs in an expedited 12-month time-frame.

10

Further, Defendants state that VirtualAgility's failure to have sought any form of preliminary injunction in this case demonstrates that a stay will not result in undue prejudice.

Staying a case pending reexamination and "waiting for the administrative process to run its course risks prolonging the final resolution of the dispute and thus may result in some inherent prejudice to the plaintiff." *Market-Alerts*, 922 F. Supp. 2d at 494. While "the potential for delay does not, by itself, establish undue prejudice,…courts are generally reluctant to stay proceedings where the parties are direct competitors," because in such cases, "there is a reasonable chance that delay in adjudicating the alleged infringement will have outsized consequences to the party asserting infringement[], including the potential for loss of market share and an erosion of goodwill." *Id.* at 494-95; *Tesco Corp. v. Weatherford Int'l, Inc.*, 599 F. Supp. 2d 848, 851 (S.D. Tex. 2009) ("Where the parties are direct competitors, a stay would likely prejudice the non-movant."). Given that the patentee "could lose market share – potentially permanently – during the stay,…while the alleged infringer continues to sell the competing products," such loss constitutes an irreparable injury not compensable by money damages. *A.R. Arena Products, Inc. v. Grayling Indus., Inc.*, 5:11-CV-1911, 2012 WL 2953190 (N.D. Ohio June 25, 2012) (citing *Sunbeam Products, Inc. v. Hamilton Beach Brands, Inc.*, 2010 WL 1946262 (E.D.Va. May 10, 2010)); *see also Avago Technologies Fiber IP (Singapore) Pte. Ltd. v. IPtronics Inc.*, 2011 WL 3267768 at *5 (N.D. Cal. July 28, 2011) ("infringement among competitors can cause harm in the marketplace that is not compensable by readily calculable money damages…Staying a case while such harm is ongoing usually prejudices the patentee that seeks timely enforcement of its right to exclude."); *Heraeus Electro–Nite Co., LLC v. Vesuvius USA Corp.*, 2010 WL 181375 at *1 (E.D.Pa. Jan. 11, 2010) ("[C]ourts have been reluctant to grant stays where, as here, the parties are direct competitors…In such situations, stays are denied where there is concern that the patent

11

owner will be irreparably harmed because the accused product will continue to gain market share during the pendency of the stay.").

Here, Defendants dispute in the first instance that VirtualAgility and Salesforce are direct competitors, dismissing VirtualAgility's purported evidence as conclusory. The Court, however, finds that credible evidence does exist demonstrating that Salesforce and VirtualAgility compete in the same market, and for business from the same customer base. For example, Plaintiff VirtualAgility sells cloud-based "enterprise-level information technology solutions that allow users to build and configure user-defined computer and software applications for specific needs." Dkt. No. 72-2, Rudolph Decl. at ¶ 6. Salesforce, meanwhile, describes itself as "a provider of enterprise cloud computing solutions" and admits that it "may encounter competition from enterprise software vendors and online service providers who may develop toolsets and products that allow customers to build new apps that run on the customers' current infrastructure or as hosted services." Salesforce.com, Inc., Annual Report (Form 10-K), at 4, 9 (March 8, 2013).[3] Such competition fits the description of VirtualAgility's business model which Salesforce does not dispute. Moreover, VirtualAgility sells its products to, among others, public sector entities such as federal and state governmental agencies, and Salesforce's website publicizes its efforts to sell products to various federal governmental agencies. Rudolph Decl. at ¶ 8 (citing http://www.salesforce.com/company/news-press/press-releases/2012/04/120425.jsp). Tellingly, these two entities took part in the same government bid process at least once. *Id.* The Court finds that VirtualAgility and Salesforce directly compete in at least the enterprise cloud computing market targeting public sector entities, and that such relationship is demonstrated by more than

---

[3] The Court hereby takes judicial notice of Salesforce's annual report filed with the United States Securities and Exchange Commission. *See* Federal Rule of Evidence 201 (b)-(c) (stating that courts may unilaterally take judicial notice of a fact not subject to reasonable dispute because "it can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.").

mere conclusory statements.

Having decided that VirtualAgility and Salesforce compete in the same market, the Court necessarily finds that granting a stay pending the CBM review will unduly prejudice VirtualAgility.   Such a stay will leave VirtualAgility with no recourse during the intervening time against unauthorized use of its patented invention.   In fact, it will be "forced to compete against products that incorporate and infringe" its own invention.   *See Douglas Dynamics, LLC v. Buyers Products Co.*, 717 F.3d 1336, 1344 (Fed. Cir. 2013).   The loss of market share and consumer goodwill is particularly high in the growing market of enterprise cloud-computing, where contractors and governmental agencies are developing lists of preferred vendors.   *See ADA Solutions, Inc. v. Engineered Plastics, Inc.*, 826 F. Supp. 2d 348, 351 (D. Mass. 2011); *accord Polymer Techs., Inc. v. Bridwell*, 103 F.3d 970, 975–76 (Fed. Cir. 1996) ("Years after infringement has begun, it may be impossible to restore a patentee's (or an exclusive licensee's) exclusive position by an award of damages and a permanent injunction. Customers may have established relationships with infringers.").

While the Court is mindful that CBM review generally proceeds on an expedited twelve-month time-frame from the date the PTAB institutes review until it issues a final written decision, *see* Office Patent Trial Practice Guide, 77 Fed. Reg. 48756, as opposed to *inter-partes* reexamination that could take up to twenty-four months, the Court is not persuaded that potential loss of market share and consumer goodwill during the intervening one year would necessarily impose only minimal prejudice on VirtualAgility.[4]   It is undisputed that VirtualAgility is and has been a small company with private investors and limited resources.   Being left with no recourse

---

[4] By the instant motion Defendants seek to stay proceedings until "the CBM Review is *fully* resolved," however, without identifying at which specific step of the CBM review should such stay be lifted.   After the PTAB's final written opinion, parties can ask the Board to re-hear the case or appeal to the Federal Circuit.   The CBM review may well be "fully resolved" only after the Federal Circuit issues its opinion.   Thus, it is certainly possible that the stay sought by Defendants could exceed the initial twelve months.

13

against the infringing acts of much larger companies such as Defendants, even only for a year, may substantially injure VirtualAgility's business such that it becomes "impossible to restore [its] exclusive position by an award of damages and a permanent injunction." *Polymer*, 103 F.3d at 975–76.

Furthermore, "when a case is stayed, witnesses may become unavailable, their memories may fade, and evidence may be lost while the PTO proceedings take place." *Ambato Media, LLC v. Clarion Co., Ltd.*, 2:09-CV-242-JRG, 2012 WL 194172, at *5 (E.D. Tex. Jan. 23, 2012). The possibility of witness loss is heightened in this case because certain identified witnesses are of an advanced age. For example, Gordon E. Nelson, the attorney who prosecuted the '413 Patent over the entire course of the twelve-year examination, is now beyond age seventy. Granting a stay and prolonging this litigation will subject VirtualAgility to the added risk of witness loss, thereby unduly prejudicing it in the legal proceeding.

Lastly, Defendants argue that VirtualAgility will not be unduly prejudiced by a stay given that it has not sought any form of preliminary injunctive relief. The Court disagrees. A party's decision to seek or not to seek a preliminary injunction often rests upon a variety of factors, including that party's resources, the uncertainty of the outcome, or as part of an overall strategy to streamline the process and focus on other procedural steps of the litigation. Not being in a role to judge the parties' litigation strategy, the Court deems it unfair to hold VirtualAgility to a position based upon what is no more than a dubious implication.

In sum, granting a stay in this case may cause negative "outsized consequences" to VirtualAgility, including irreparable loss of market share, erosion of goodwill and potential loss of key witnesses. *Market-Alerts*, 922 F. Supp. 2d at 494-95. This Court believes that a stay would unduly prejudice VirtualAgility both in the market place and in this litigation. This factor weighs

14

heavily against granting a stay.

### e. Burden on the Court and parties

The fourth statutory factor directs the court to consider "whether a stay, or the denial thereof, will reduce the burden of litigation on the parties and on the court." Defendants argue that a stay will spare the parties the burden of litigating the validity of the '413 Patent in this Court and before the PTAB at the same time. Defendants further argue that a stay will reduce the Court's burden by allowing the PTAB to first determine the validity of the '413 Patent in light of the prior art, and spare the Court's burden of conducting claim construction for claims that may be cancelled or amended during the CBM review process.

Aside from the plain language of § 18(b), the statute provides no further guidance on how courts should assess the fourth statutory factor. The *Broad. Innovation* decision from which Congress directly adopted the four-factor statutory test, however, sheds some light on the proper application of this factor. The *Broad. Innovation* court noted that the fourth "burden of litigation" factor is related to the first "simplification of issues" factor. *See Broad. Innovation*, 2006 WL 1897165 at *4 (describing the fourth factor as "the orderly course of justice measured in terms of the simplifying or complicating of issues, proof and questions of law which could be expected to result from a stay") (citation omitted). The Court agrees that these two factors are not entirely independent of each other. If granting a stay is unlikely to simplify the issues in litigation, then it will not likely reduce the overall burden on the court and the parties.

Here, Defendants' arguments under the fourth statutory factor substantially overlap with those already presented under the first factor. As discussed above, given the thoroughness of the PTO's prior examination of the '413 patent, the single new prior art currently before the PTAB, and the uncertainty of the PTAB's § 101 determination, the Court is not convinced that the CBM

review will cancel all or even a substantial number of the asserted claims. Thus, the burden on this Court and the parties, when measured in context of the overall course of this litigation, will not be substantially lessened by a stay. *See Broad. Innovation*, 2006 WL 1897165 at *12 (finding that judicial economy weighed in favor of granting a stay when "the Court is influenced by the breadth of the reexamination and the number of prior art references under active review."). Further, the CBM review will not substantially alleviate the existing demands upon the Court and the parties with respect to the Oracle project and the Tecskor product, as neither reference is before the PTAB.

The Court acknowledges that a stay will relieve the parties' burden of litigating the validity of the '413 Patent in this Court and before the PTAB at the same time. Such is true, however, in all cases involving CBM reviews. Had Congress deemed this burden so overwhelming as to justify a stay in and of itself, the statute would have been written differently. Absent such a different statutory provision, relief from a burden inherent to all CBM reviews cannot reasonably serve as the sole basis for tipping the fourth factor in favor of granting a stay.

To be clear, beyond general relief from dual-track litigation which is inherent to all CBM reviews, the specific circumstances in the instant case present only a limited possibility of added reduction to the burden on the Court and the parties. The fourth factor therefore weighs only slightly in favor of a stay.

## IV. Conclusion

The Court, having considered thoroughly the four statutory factors outlined in § 18(b) of the AIA, finds as follows: the first factor weighs slightly and the third factor weighs heavily in favor of denying a stay, while the second factor weighs in favor of granting a stay and the fourth factor weighs only slightly so; the result being that the relevant factors favor denying the Motion

16

for Stay.   Accordingly, the Court hereby **DENIES** Defendants' Joint Motion to Stay Proceedings Pursuant to § 18(b) of the AIA (Dkt. No. 67).

**So Ordered and Signed on this**

**Jan 8, 2014**


_____
RODNEY  GILSTRAP
UNITED STATES DISTRICT JUDGE

17

## <u>CERTIFICATE OF FILING AND SERVICE</u>

I hereby certify that on this 31st day of January, 2014, I caused this Brief of

Appellants to be filed electronically with the Clerk of the Court using the CM/ECF

System, which will send notice of such filing to the following registered CM/ECF

users:

      Edward K. Chin
      Andrew Joseph Wright
      Christian J. Hurt
      Kirk Austin Voss
      Robert Winn Cutler
      David Neil Smith
      Nix Patterson & Roach - Irving
      5215 N O'Connor Blvd, Suite 1900
      Irving, TX 75039
      972-831-1188
      edchin@me.com
      andrewjwright@me.com
      christianhurt@nixlawfirm.com
      kirkvoss@nixlawfirm.com
      winncutler@nixlawfirm.com
      dneilsmith@me.com
      agility@nixlawfirm.com

      *Counsel for Plaintiff-Appellee VirtualAgility, Inc.*

Nelson James Roach
Derek Tod Gilliland
Nix Patterson & Roach LLP - Daingerfield
205 Linda Drive
Daingerfield, TX 75638
903-645-7333
Email: njroach@nixlawfirm.com
Email: dgilliland@nixlawfirm.com

*Counsel for Plaintiff-Appellee VirtualAgility, Inc.*

Darryl J. Adams
Kevin J. Meek
Baker Botts LLP
1500 San Jacinto Center
98 San Jacinto Blvd
Austin, TX 78701-4087
512-322-2583
darryl.adams@bakerbotts.com
kevin.meek@bakerbotts.com

*Counsel for Defendant-Appellant*
*   Kimberly-Clark Corporation*

Upon acceptance by the Clerk of the Court of the electronically filed document, the required number of copies of the Brief of Appellants will be hand filed at the Office of the Clerk, United States Court of Appeals for the Federal Circuit in accordance with the Federal Circuit Rules.

*/s/* Jose C. Villarreal
Jose C. Villarreal

*Counsel for Appellants*

## <u>CERTIFICATE OF COMPLIANCE</u>

1.    This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

[ X ] this brief contains [*11,508*] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

[    ] this brief uses a monospaced typeface and contains [*state the number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

[ X ] this brief has been prepared in a proportionally spaced typeface using [*Microsoft Word 2007*] in [*14pt Times New Roman*]; *or*

[    ] this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].

Dated: <u>January 31, 2014</u>                 <u>*/s/* Jose C. Villarreal</u>
                                                                   Jose C. Villarreal

                                                                   *Counsel for Appellants*