# In The
# United States Court of Appeals
## For The Federal Circuit

## VIRTUALAGILITY, INC.,

*Plaintiff – Appellee*,

**v.**

## SALESFORCE.COM, INC., DELL, INC., DR. PEPPER SNAPPLE GROUP, INC., KIMBERLY-CLARK CORPORATION, NBCUNIVERSAL, INC., LIVINGSOCIAL, INC., FEDEX CORPORATION, BMC SOFTWARE, INC., BANK OF AMERICA CORPORATION, BANK OF AMERICA NATIONAL ASSOCIATION, MERRILL LYNCH & CO., INC., MERRILL LYNCH, PIERCE, FENNER & SMITH INCORPORATED, FEDEX CORPORATE SERVICES, INC.,

*Defendants – Appellants.*

**APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TEXAS IN IN NO. 2:13-CV-00011-JRG, JUDGE J. RODNEY GILSTRAP.**

_____

## REPLY BRIEF OF APPELLANTS

_____

Larry L. Shatzer, III
WILSON, SONSINI,
  GOODRICH & ROSATI, PC
1700 K Street, N.W., 5th Floor
Washington, DC 20006
(202) 937-8800

*Counsel for Appellants*
  *salesforce.com, inc., et al.*

Darryl J. Adams
BAKER BOTTS LLP - AUSTIN
98 San Jacinto Boulevard, Suite 1500
Austin, Texas 78701
(512) 322-2500

*Counsel for Appellant*
  *Kimberly-Clark Corporation*

Jose C. Villarreal
WILSON, SONSINI,
  GOODRICH & ROSATI, PC
900 South Capital of Texas Highway
Las Cimas IV, Fifth Floor
Austin, Texas 78746
(512) 338-5400

*Counsel for Appellants*
  *salesforce.com, inc., et al.*

## <u>CERTIFICATE OF INTEREST</u>

Counsel for the Appellants certifies the following:

1.      The full name of every party represented by the undersigned counsel in this case is:  salesforce.com, inc., Dell, Inc., Dr Pepper Snapple Group, Inc., NBCUniversal, Inc., LivingSocial, Inc., FedEx Corporation, FedEx Corporate Services, Inc., BMC Software, Inc., Bank of America Corporation, Bank of America, National Association, Merrill Lynch & Co., Inc., Merrill Lynch, Pierce, Fenner & Smith Incorporated, and Kimberly-Clark Corporation (collectively referred to as "Defendants" or "Appellants").

2.      There are no other real parties in interest represented by the undersigned.

3.      Other than the following exceptions, the Appellants have no parent company, and no publicly held corporation owns 10% or more of any Appellant's stock.  The exceptions are as follows:

- BMC Software, Inc. is a wholly-owned subsidiary of BMC Software Finance, Inc.  BMC Software Finance, Inc. is a wholly-owned subsidiary of Boxer Parent Company Inc. Boxer Parent Company Inc. is a closely-held, non-publicly traded corporation which is owned by affiliates of Bain Capital Partners, LLC, Golden Gate Capital Private

Equity, Inc., Insight Venture Partners, L.P., Westhorpe Investment Pte, Ltd and Elliot Associates, L.P.

- Dell, Inc. is a privately held corporation and its direct parent company is Denali Intermediate Inc. There is no publicly held corporation owning 10% or more of Denali Intermediate Inc.'s stock.

- Bank of America, National Association is a wholly-owned subsidiary of BANA Holding Corporation, which is a wholly-owned subsidiary of BAC North America Holding Company, which is a wholly-owned subsidiary of NB Holdings Corporation, which is a wholly-owned subsidiary of the publicly-held Bank of America Corporation ("BAC"). BAC is publicly held and traded on the New York Stock Exchange (symbol "BAC"). BAC has no parent company, and no publicly held corporation owns 10% or more of BAC stock.

- Merrill Lynch, Pierce, Fenner & Smith Incorporated is a wholly-owned subsidiary of NB Holdings Corporation. Merrill Lynch & Co., Inc. was previously a wholly-owned direct subsidiary of Bank of America Corporation. On October 1, 2013, Merrill Lynch & Co., Inc. merged into and was survived by Bank of America Corporation.

- FedEx Corporation is a publicly held corporation (NYSE: FDX), and no parent corporation or publicly held corporation owns 10% or more of FedEx Corporation's stock.  FedEx Corporate Services, Inc. is a wholly owned subsidiary of FedEx Corporation.

- Through its directly or indirectly wholly owned subsidiary Amazon.com NV Investment Holdings LLC, Amazon.com, Inc. owns over 10% of LivingSocial, Inc.'s stock on a voting basis and over 10% of LivingSocial, Inc.'s stock on a fully-diluted basis.  Amazon.com, Inc. is a publicly traded corporation (NASDAQ: AMZN).

- Comcast Corporation (NASDAQ: CMCSA) is a parent corporation to NBCUniversal, Inc. and owns 10% or more of NBCUniversal, Inc.'s stock.

4.    The names of the law firms and the partners and associates that have appeared for the Appellants in the District Court or are expected to appear for Defendants/Appellants in this Court are:

Jose C. Villarreal
Brian D. Range
Joel C. Boehm
Wilson Sonsini Goodrich & Rosati, P.C.
900 South Capital of Texas Highway
Las Cimas IV, Fifth Floor
Austin, TX 78746

Larry L. Shatzer
Wilson Sonsini Goodrich & Rosati, P.C.
1700 K Street, NW
Fifth Floor
Washington, DC 20006

appearing on behalf of salesforce.com, inc., Dell, Inc. Dr Pepper Snapple Group,

Inc., NBCUniversal, Inc., LivingSocial, Inc., FedEx Corporation, FedEx Corporate

Services, Inc., BMC Software, Inc., Bank of America Corporation, Bank of

America, National Association, Merrill Lynch & Co., Inc., and Merrill Lynch,

Pierce, Fenner & Smith Incorporated

Darryl J. Adams
Kevin Meek
Baker Botts LLP
98 San Jacinto Blvd., Suite 1500
Austin, TX 78701

appearing on behalf of Kimberly-Clark Corporation

Melissa R. Smith
Harry Lee Gillam, Jr.
GILLAM & SMITH LLP
303 S. Washington Ave.
Marshall, TX 75670
Telephone: (903) 934-8450
Facsimile: (903) 934-9257

appearing on behalf of all Appellants in the District Court.

February 28, 2014

/s/ Jose C. Villarreal

Jose C. Villarreal
Brian D. Range
Joel C. Boehm
WILSON SONSINI GOODRICH & ROSATI, P.C.
*Counsel for Defendants-Appellants*
*salesforce.com, inc.; Dell, Inc.; Dr Pepper*
*Snapple Group, Inc.; NBCUniversal, Inc.;*
*LivingSocial, Inc.; FedEx Corp.; FedEx*
*Corporate Services, Inc.; BMC Software, Inc.;*
*Bank of America Corporation; Bank of*
*America, National Association; Merrill Lynch*
*& Co., Inc.; and Merrill Lynch, Pierce, Fenner*
*& Smith Incorporated.*

/s/ Darryl J. Adams

Darryl J. Adams
BAKER BOTTS LLP
*Counsel for Defendant-Appellant*
*Kimberly-Clark Corporation*

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTEREST ...................................................................i

TABLE OF CONTENTS.......................................................................vi

TABLE OF AUTHORITIES ............................................................. viii

TABLE OF ABBREVIATIONS ........................................................... xii

INTRODUCTION ................................................................................1

ARGUMENT ......................................................................................3

    I.    *DE NOVO* REVIEW IS APPROPRIATE..............................................3

    II.    CONSIDERATION OF LEGISLATIVE HISTORY IS APPROPRIATE .............................................................................7

    III.    VIRTUALAGILITY'S HIGHLY RELEVANT MOTION TO AMEND IS APPOPRIATE TO CONSIDER ..................................11

    IV.    ALL STATUTORY FACTORS FAVOR A STAY ..........................12

        A.    Factor One: Simplification And Streamlining Favor A Stay........................................................................................12

            1.    CBM Review will more likely than not result in cancellation of the '413 Patent .......................................13

            2.    CBM Review will prevent litigating moot or improperly interpreted patent claims..............................15

            3.    VirtualAgility cannot dispute CBM Review will provide at least some simplification ...............................16

        B.    Factor Two: Timing Favors A Stay ...........................................18

C.   Factor Three: Lack Of Undue Prejudice Favors A Stay ...........19

    1.   VirtualAgility Cannot Establish Undue Prejudice Due to Competition ........................................................19

        a.   The record does not establish competition ...........20

        b.   The record does not establish competition connected to the '413 Patent ................................22

        c.   The record does not establish a stay will harm VirtualAgility's alleged ability to compete ..............................................................23

        d.   The record does not establish any undue prejudice ..............................................................25

    2.   Risk of evidence loss does not present Appellants with any tactical advantage.............................................26

    3.   VirtualAgility's actions suggest absence of undue prejudice ........................................................................26

    4.   VirtualAgility overstates the potential length of stay ...................................................................................27

    5.   The third factor is not dispositive ...................................28

D.   Factor Four: Reduction In Litigation Burden Favors A Stay.....................................................................................29

V.   OTHER DISTRICT COURT OPINIONS ARE HIGHLY RELEVANT TO THIS COURT'S ANALYSIS ................................30

CONCLUSION .......................................................................................31

CERTIFICATE OF FILING AND SERVICE

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Ameranth, Inc. v. Pizza Hut, Inc.*,
    No. 3:11-cv-01810-DMS-WVG,
    Dkt. No. 549, slip op. (S.D. Cal. Nov. 26, 2013) ............................................7

*Apple, Inc. v. Samsung Elecs. Co., Ltd.*,
    678 F.3d 1314 (Fed. Cir. 2012) ....................................................................22

*Bard Peripheral Vascular, Inc. v. W.L. Gore & Assocs., Inc.*,
    682 F.3d 1003 (Fed. Cir. 2012) .......................................................................5

*CheckFree Corp. v. Metavante Corp.*,
    No. 3:12-cv-15-J-34JBT,
    2014 WL 466023 (M.D. Fla. Jan. 17, 2014) ..........................................29, 31

*Chicago Board Options Exch., Inc. v. Int'l Sec. Exch., LLC*,
    No. 2:13-cv-1339-JMF, Dkt. No. 89 (S.D.N.Y. Nov. 1, 2013) ....................31

*Credit Acceptance Corp. v. Westlake Services, LLC*,
    No. 2:13-cv-01523-SJO-MRW,
    2013 WL 7144391 (C.D. Cal. Dec. 30, 2013).............................................31

*Floyd v. United States Postal Serv.*,
    105 F.3d 274 (6th Cir. 1997) ..........................................................................3

*Fresenius USA, Inc. v. Baxter Int'l, Inc.*,
    721 F.3d 1330 (Fed. Cir. 2013) ....................................................................16

*Harris v. Garner*,
    216 F.3d 970 (11th Cir. 2000) ........................................................................3

*Jackson v. Stinnett*,
    102 F.3d 132 (5th Cir. 1996) ..........................................................................3

*Lighting Ballast Control LLC v. Philips Elecs. North Am. Corp.*,
    No. 2012-1014, slip op. (Fed. Cir. Feb. 21, 2014) .........................................5

*Miller v. Fenton*,
    474 U.S. 104 (1985)...............................................................................4, 5

*Moody v. Amoco Oil Co.*,
    734 F.2d 1200 (7th Cir. 1984) ........................................................6

*Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*,
    458 U.S. 50 (1982)...........................................................................6

*Ornelas v. United States*,
    517 U.S. 690 (1996).........................................................................5

*Padgett v. Nicholson*,
    473 F.3d 1364 (Fed. Cir. 2007) .....................................................8

*Phillips v. AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005) ...................................................16

*Progressive Cas. Ins. Co. v. Safeco Ins. Co. of Illinois*,
    Nos. 1:10CV01370, 1:11CV00082,
    1:12CV01068, 1:12CV01070,
    2013 WL 1662952 (N.D. Ohio Apr. 17, 2013) ...........................25

*PSI Energy, Inc. v. United States*,
    411 F.3d 1347 (Fed. Cir. 2005) .....................................................8

*Sch. Comm. of the Town of Burlington, Mass. v. Dep't of Educ. of Mass.*,
    471 U.S. 359 (1985).........................................................................8

*St. Clair Intellectual Prop. Consultants, Inc. v. Canon Inc.*,
    Nos. 2009-1052, 2010-1137, 2010-1140,
    2011 WL 66166 (Fed. Cir. Jan. 10, 2011)...................................11

*Standard Havens Prods., Inc. v. Gencor Indus., Inc.*,
    897 F.2d 511 (Fed. Cir. 1990) .....................................................11

*Superior Indus., Inc. v. Masaba, Inc.*,
     No. 2013-1302, 2014 WL 163046 (Fed. Cir. Jan. 16, 2014) .......................13

*White Motor Corp. v. Citibank, N.A.*,
     704 F.2d 254 (6th Cir. 1983) .........................................................................6

*Zillow, Inc. v. Trulia, Inc.*,
     No. C12-1549-JLR, 2013 WL 5530573 (W.D. Wash. Oct. 7, 2013)......27, 31

## STATUTES

AIA § 18.................................................................................................*passim*

35 U.S.C. § 101 ......................................................................................*passim*

35 U.S.C. § 315(a)(2)......................................................................................2

35 U.S.C. § 324(a) .....................................................................................1, 14

35 U.S.C. § 325(a)(2)......................................................................................2

## RULES

E.D. Tex. L.R. 7(f) .......................................................................................18

Fed. R. Civ. P. 52(a)(6)...................................................................................4

Fed. R. Evid. 201 .........................................................................................11

## OTHER AUTHORITIES

157 Cong. Rec. S1053......................................................................................7

157 Cong. Rec. S1363......................................................................................7

157 Cong. Rec. S1364.................................................................................5, 30

157 Cong. Rec. S1367......................................................................................7

157 Cong. Rec. S1379...............................................................................*passim*

157 Cong. Rec. S1380 ...........................................................................................3, 30

77 Fed. Reg. 48763–764 ...................................................................................17

## <u>TABLE OF ABBREVIATIONS</u>

| | |
|---|---|
| '413 Patent[*] | U.S. Patent No. 8,095,413 |
| AIA § 18 | Leahy-Smith America Invents Act Section 18, Pub. L. No. 112-29, 125 Stat. 284, 331 (2011) |
| Appellants | Defendants-Appellants salesforce.com, inc., Dell, Inc., Dr Pepper Snapple Group, Inc., NBCUniversal, Inc., LivingSocial, Inc., FedEx Corporation, FedEx Corporate Services, Inc., BMC Software, Inc., Bank of America Corporation, Bank of America, National Association, Merrill Lynch & Co., Inc., Merrill Lynch, Pierce, Fenner & Smith Incorporated, and Kimberly-Clark Corporation |
| CBM Review | Covered Business Method Review |
| District Court | United States District Court for the Eastern District of Texas |
| Opening Brief | Appellants' Opening Brief on the Merits (Dkt. No. 29) |
| Petition | Salesforce's Petition for CBM Review before the PTAB |
| PTAB | Patent Trial and Appeal Board |
| Response or Resp. | VirtualAgility's Response Brief on the Merits (Dkt. No. 38) |
| Salesforce | Appellant salesforce.com, inc. |
| VirtualAgility | Plaintiff-Appellee VirtualAgility, Inc. |

---

[*] In Appellants' Opening Brief, final processing inadvertently resulted in the patent-in-suit being abbreviated as the '413 patent, rather than the '413 patent. Appellants have corrected this mistake herein, but did not submit corrected briefs for reasons of economy.

## INTRODUCTION

Salesforce sought CBM review and Appellants moved to stay early in this case. The PTAB granted review on *every* claim of the sole patent-in-suit. Every other district court presented with this issue has granted a stay once CBM Review was instituted. No special circumstances warrant a divergent result here. A stay is appropriate under AIA § 18(b).

VirtualAgility's arguments fail on each statutory factor:

<u>Factor One</u>: 35 U.S.C. § 324(a) sets a high threshold for CBM Review. Once the threshold is met, an AIA § 18(b) stay motion is not the proper time or place to take up the CBM Review's merits (issues VirtualAgility admits are not ripe (Resp. at 31)). In addition, VirtualAgility's motion to amend patent claims magnifies how issues will be simplified regardless of the CBM Review's ultimate outcome.

<u>Factor Two</u>: If neutral here, this factor could never favor a stay. Salesforce filed its CBM Petition months before the initial Case Management Conference was even set. VirtualAgility's only answer (besides mischaracterizing the timeline) is what Congress knew when it enacted AIA § 18(b): every CBM Review petition allows time for preliminary response and PTAB determination.

<u>Factor Three</u>: VirtualAgility's allegations of undue prejudice due to allegedly infringing competition are unfounded. The record does not show competition between VirtualAgility and Salesforce, competition related to the '413 Patent,

market-related harm, or "undue prejudice" (as Defendants have always maintained in every regard, *see* J.A. 0134, 0460).[1]

Factor Four:  Litigation burden will be reduced, at a minimum, by the effort transferred to CBM Review, which VirtualAgility admits is great (*see* Resp. at 49). VirtualAgility's only answer is to ask this Court to conflate this factor with issue simplification.  But Congress accorded it separate weight, and the presence of non-petitioner Defendants (*i.e.*, customers) and defense efforts involving third parties require due consideration (as Defendants have always maintained, *see* J.A. 0459, 0460).

Moreover, no one factor is dispositive.  Even if one factor weighs against stay, the balance of the four factors favors a stay.

Finally, VirtualAgility argues against a straw-man by emphasizing a stay is not automatic.  Resp. at 10.  Appellants agree.[2]  But the exceptions are narrow. Denial of a stay might be appropriate, for example, if only some asserted patents are the subject of CBM Review, if trial has begun, or if a CBM Review does not challenge the same patent claims asserted in litigation.  Those circumstances are

---

[1]  Here and throughout, VirtualAgility wrongly alleges Appellants failed to raise issues below.

[2]  AIA provisions providing automatic stays when petitioners subsequently file invalidity lawsuits are equally consistent with Congress's goals.  *See* 35 U.S.C. §§ 315(a)(2), 325(a)(2).

not present here.  As such, Appellants urge this Court to direct the District Court to issue a stay pending CBM Review.

## ARGUMENT

### I.  *DE NOVO* REVIEW IS APPROPRIATE

VirtualAgility agrees this Court may review the District Court's decision *de novo*.  Resp. at 14.  VirtualAgility fails to demonstrate, however, why *de novo* review is nonetheless inappropriate.

First, VirtualAgility cites law stating trial courts have broad discretion on motions to stay.  Resp. at 16.  Here Congress legislated to the contrary, and a later-enacted statute trumps prior procedure.  *See Jackson v. Stinnett*, 102 F.3d 132, 134 (5th Cir. 1996) ("Congress at all times maintains the power to repeal, amend, or supersede . . . the rules of procedure themselves."); *see also Harris v. Garner*, 216 F.3d 970, 982 (11th Cir. 2000); *Floyd v. United States Postal Serv.*, 105 F.3d 274, 278 (6th Cir. 1997).  In particular, AIA § 18(b)(2) provides *de novo* review of "the district court's **decision**."  Preliminary fact findings are part of the decision.  Moreover, AIA § 18(b)(2) provides review "to ensure consistent application of established precedent."  Generally, only *de novo* review can accomplish this because discretion could lead to inconsistent results across district courts.  *Accord* J.A. 0270, 157 Cong. Rec. S1380 (explaining need for appellate review reconciling district courts' divergent reasoning).

Second, VirtualAgility argues deference is appropriate "in this case" by analogizing to Fed. R. Civ. P. 52(a)(6) because the District Court's decision "heavily depended on findings of historical fact." Resp. at 15–16. Again, the more recently-enacted AIA provision controls, and the *de novo* standard is consistent with AIA § 18(b)(2)'s encouragement of stays prior to creating a significant factual record in district court.

VirtualAgility agrees there is a "limited record." Resp. at 48. When District Court stay briefing was complete, fact discovery had not begun. J.A. 0088–0089. Thus, no deference to a developed factual record is necessary because no such record exists. Any findings of fact are preliminary, at best, and are properly reviewed afresh. Nor are credibility determinations at issue. *See*, *e.g.*, *Miller v. Fenton*, 474 U.S. 104, 114 (1985) (distinguishing situations where "the issue involves the credibility of witnesses and therefore turns largely on an evaluation of demeanor"); *compare* Fed. R. Civ. P. 52(a)(6) (providing "due regard to the trial court's opportunity to judge the witnesses' credibility").

Third, the AIA stay factors present mixed questions of fact and law. For example, whether harm constitutes undue prejudice is a mixed question. *Cf.*, *e.g.*, *Miller*, 474 U.S. at 114 (observing where the "relevant legal principle can be given meaning only through its application to the particular circumstances of a case, the Court has been reluctant to give the trier of fact's conclusions presumptive force

4

and, in so doing, strip a federal appellate court of its primary function as an expositor of law"). Appellate courts already review some mixed questions of law and fact *de novo*. *See*, *e.g.*, *id.*; *Bard Peripheral Vascular, Inc. v. W.L. Gore & Assocs., Inc.*, 682 F.3d 1003, 1008 (Fed. Cir. 2012) (observing in probable cause context, "the Supreme Court elaborated on the importance of treating such questions as involving both law and fact and subjecting them to *de novo* review, which 'tends to unify precedent'") (quoting *Ornelas v. United States*, 517 U.S. 690, 697–98 (1996)).

Fourth, policy dictates full *de novo* review. Otherwise, there could be "one particular court with a favorable bench becoming the preferred venue of business method patent plaintiffs." J.A. 0254, 157 Cong. Rec. S1364 (statement of Sen. Schumer); *see also* J.A. 0269, *id.* at S1379 (statement of Sen. Kyl) (observing the stay decision should not depend "on the predilections of different trial judges"). As this Court observed regarding claim construction, lack of *de novo* review leads to "heightened forum-shopping and the inability of the judicial system to arrive at a uniform, settled meaning for a patent's scope." *Lighting Ballast Control LLC v. Philips Elecs. North Am. Corp.*, No. 2012-1014, slip op. at 32 (Fed. Cir. Feb. 21, 2014) (*en banc*).

Fifth, VirtualAgility argues AIA § 18(b) should be construed narrowly. Resp. at 14–15, 17. A narrow statutory reading, however, supports *de novo* review

as this is the *only* review standard expressly endorsed. Moreover, none of the legislative history cited by VirtualAgility, Resp. at 17, refers to the AIA § 18(b) stay provision.

Indeed, reviewing courts have engaged in *de novo* review in light of similar controlling language, such as when considering the rule pertaining to bankruptcy proceedings in the wake of *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50 (1982) (invalidating delegation of constitutionally-reserved power from district courts to bankruptcy courts). There, the rule provided: "In conducting review . . . the district judge *may* . . . accept, reject, or modify, in whole or in part, the order or judgment of the bankruptcy judge, and *need give no deference* to the findings of the bankruptcy judge." *Moody v. Amoco Oil Co.*, 734 F.2d 1200, 1209 (7th Cir. 1984) (emphases added). Considering this rule, the Seventh Circuit stated: "The court . . . examined the entire record . . . and gave no deference to the bankruptcy court's findings and conclusions. The court did all that the rule requires." *Id.* at 1210. This is exactly what this Court should do under AIA § 18(b)(2). *See also White Motor Corp. v. Citibank, N.A.*, 704 F.2d 254, 257 (6th Cir. 1983) (stating "all orders entered by the bankruptcy judges are subject to *de novo* review in the district courts").

*De novo* review is thus appropriate. To the extent the Court holds otherwise, Appellants' arguments apply equally because the District Court's decision erroneously applies law and relies on clearly erroneous findings of fact.

## II. CONSIDERATION OF LEGISLATIVE HISTORY IS APPROPRIATE

Congress explained AIA § 18 was intended to address the assertion of invalid business method patents in burdensome litigation. *See* J.A. 0257, 157 Cong. Rec. S1367. AIA § 18 attacks the problem by "provid[ing] a cost-effective alternative to litigation." J.A. 0253, 157 Cong. Rec. S1363 (statement of Sen. Leahy). The AIA § 18(b) stay provision is a huge part of the solution: "Since the entire purpose of the transitional [CBM] program at the PTO is to **reduce the burden of litigation**, it is nearly impossible to imagine a scenario in which a district court would not issue a stay." J.A. 0227, 157 Cong. Rec. S1053 (statement of Sen. Schumer) (emphasis added).

VirtualAgility would have this Court ignore legislative history and apply AIA § 18(b) in a vacuum. *See*, *e.g.*, Resp. at 17–18, 21. Numerous district courts, however, have looked to the legislative history of AIA § 18(b) for guidance. *See, e.g.*, *Ameranth, Inc. v. Pizza Hut, Inc.*, No. 3:11-cv-01810-DMS-WVG, Dkt. No. 549, slip op. at 2, 4 (S.D. Cal. Nov. 26, 2013) (identifying numerous courts considering legislative history pertinent to interpreting AIA § 18(b)).

Consideration of the legislative history is proper for several reasons. First, a statute should be construed "in light of the purpose behind" it. *See, e.g.*, *Padgett v. Nicholson*, 473 F.3d 1364, 1368 (Fed. Cir. 2007) (construing Veterans' Judicial Review Act of 1988 "in view of the purpose of the veterans' benefits scheme and the Veterans Court's role within it"); *PSI Energy, Inc. v. United States*, 411 F.3d 1347, 1352 (Fed. Cir. 2005) (construing Energy Policy Act given its purpose); *see also Sch. Comm. of the Town of Burlington, Mass. v. Dep't of Educ. of Mass.*, 471 U.S. 359, 369 (1985) (interpreting Education of the Handicapped Act in light of its purpose).

Second, as explained in Section I, *supra*, legislative history explains why the Court should review *de novo*.

Third, the legislative history illuminates the fourth statutory factor's meaning (reducing litigation burdens) and distinguishes it from the first factor. The District Court largely conflated its analysis on the fourth AIA factor with the first AIA factor, and VirtualAgility asks this Court to do the same. Resp. at 20. The ambiguity regarding the interplay between the first and fourth factors alone justifies consideration of the legislative history, which confirms the statutory test "includes, and ***gives separate weight to***, a fourth factor that has often been ignored by other courts." J.A. 0269, 157 Cong. Rec. S1379 (statement of Sen. Kyl) (emphasis added).

The fourth factor's importance goes beyond issue simplification because even a modest simplification can greatly reduce litigation burden. This is true here. Although only one prior art patent is at issue in the CBM Review,[3] the reduction of litigation burden is vast. In the CBM Review, both sides presented voluminous arguments and expert testimony, and VirtualAgility notes this effort in explaining why it took so long to respond to the Petition. Resp. at 49. Salesforce's expert was deposed, and VirtualAgility's proffered expert will be deposed soon. Absent a stay, all this effort—and all the CBM Review effort going forward—will be duplicated in litigation.

This is even clearer with respect to the 35 U.S.C. § 101 issues raised in CBM Review. As the District Court observed, § 101 is a complex area of law. J.A. 0007, District Court Op. at 7. Thus, shifting this issue from the litigation to CBM Review significantly reduces the burden on the parties and the Court in litigation. The shift means one less summary judgment motion and, if summary judgment fails, less evidence for a jury to consider. Indeed, Congress spoke about § 101 in enacting AIA § 18: "The case for a stay is particularly pronounced in a section 18 proceeding, given the expectation that most if not all true business-

---

[3]     VirtualAgility's Contingent Motion to Amend raises additional prior art. PTAB No. CBM2013-00024, Paper 26 (previously provided to the Court at Docket No. 22, Ex. 1). Salesforce may do likewise in response.

method patents are abstract and therefore invalid in light of the *Bilski* decision." J.A. 0269, 157 Cong. Rec. S1379 (statement of Sen. Kyl).

Moreover, neither VirtualAgility nor the District Court addresses the reduction of litigation burden from which the dozen non-Salesforce Appellants (*i.e.*, customers) will benefit. If a stay is granted, these Appellants will bear no burden at all while CBM Review eliminates issues or, more likely than not, eliminates VirtualAgility's patent. Absent a stay, the CBM Review will duplicate efforts,[4] and these dozen Appellants will be burdened with extensive discovery. For these parties, the reduction in burden is especially acute.

Finally, absent stay, all parties and the Court will be burdened with collection, presentation, and consideration of third party discovery. This is another fourth-factor point, requiring separate weight, and VirtualAgility's only answer is inapposite: some—far from all—of this discovery already occurred while the stay motion was awaiting decision below. Resp. at 56.

Thus, while a stay pending CBM Review is appropriate even in a vacuum, this Court should not ignore statutory intent.

---

[4]     Absent a stay, these Appellants will raise the CBM Review issues in the District Court. These Appellants are not parties to the CBM Review, have not had an opportunity to present these arguments during CBM Review, and only offered <u>not</u> to raise these issues if a District Court stay was granted.

## III. VIRTUALAGILITY'S HIGHLY RELEVANT MOTION TO AMEND IS APPOPRIATE TO CONSIDER

VirtualAgility argues this Court should ignore its motion to amend its patent claims because (1) the District Court did not have the amendment available and (2) the motion to amend "only affects one claim term" and "simply clarifies." Response at 33. Both arguments fail.

As to the first argument, this Court has long taken judicial notice of patent office filings.[5] *See, e.g.*, *St. Clair Intellectual Prop. Consultants, Inc. v. Canon Inc.*, Nos. 2009-1052, 2010-1137, 2010-1140, 2011 WL 66166, at \*5 n.1 (Fed. Cir. Jan. 10, 2011) ("[T]his court can take judicial notice of the reexamination record."); *see also Standard Havens Prods., Inc. v. Gencor Indus., Inc.*, 897 F.2d 511, 514 & n.3 (Fed. Cir. 1990); Fed. R. Evid. 201. Thus, the Court can and should take notice of VirtualAgility's motion to amend.

VirtualAgility also argues it told Salesforce "it *might* seek to amend the [patent] claims" and Defendants "declined to notify the District Court." Resp. at 24 (emphasis added). This is inaccurate. Appellants' original motion to the District Court did explain that VirtualAgility might seek to amend its claims. *See* J.A. 0131–0132. The District Court did not give due weight to this prospect.

---

[5] VirtualAgility suggests its claim amendments should be ignored because they "are not a decision from the PTAB." Response at 24. Appellants cited to a PTAB order. Opening Brief at 3.

Moreover, only VirtualAgility knew exactly when and if it would file an amendment. Because of the impact here, VirtualAgility should have informed the District Court once it knew it would seek (rather than "might seek") amendment but declined to do so. Instead, VirtualAgility waited to file its amendments *after* the District Court's denial of stay and Appellants' appeal.

As to the second argument, VirtualAgility again mischaracterizes its motion to amend. *See* Resp. at 33–34; VirtualAgility's Letter, Dkt. No. 22. As Appellants explained previously, the amendments' scope **directly** implicates claim construction disputes the parties will present the District Court absent a stay. *See* Appellants' Response Letter, Dkt. No. 25. For example, VirtualAgility's amendments introducing "one or more servers comprising" and altering the original "storage device," "processor," and "interface" elements all implicate issues raised by the parties' Joint Claim Construction Statement to the District Court. *See* Dkt. No. 22-3. VirtualAgility's amendments should be considered and strongly favor a stay.

## IV.   ALL STATUTORY FACTORS FAVOR A STAY

### A.   <u>Factor One: Simplification And Streamlining Favor A Stay</u>

A stay will "simplify the issues in question and streamline the trial" (AIA § 18(b)(1)(A)) because CBM Review will "more likely than not" eliminate the need for trial, will allow further litigation to move forward with final claims and a

complete prosecution history, and will necessarily eliminate "issues in question" before the District Court.

### 1.   CBM Review will more likely than not result in cancellation of the '413 Patent

The District Court erroneously supplanted the PTAB's considered opinion—regarding the PTAB's future action—with its own.   At present, the PTAB has determined "the challenged claims [all claims, 1-21] are, more likely than not, directed to patent-ineligible subject matter under § 101" and "claims 1-21 are, more likely than not, anticipated by Ito [U.S. patent No. 5,761,674]."   J.A. 0580, 0589; *see also* J.A. 0594.[6]   Invalidation of all, or even some, of the '413 Patent claims will certainly simplify, if not eliminate, the litigation's issues.

VirtualAgility urges this Court to also second-guess the PTAB—arguing the '413 Patent is likely to survive CBM Review (Resp. at, *e.g.*, 26–30).   This Court should decline to provide an advisory opinion as to what the PTAB will decide. *Cf.*, *e.g.*, *Superior Indus., Inc. v. Masaba, Inc.*, No. 2013-1302, 2014 WL 163046 (Fed. Cir. Jan. 16, 2014) (declining to consider issues implicating claim construction that might result in advisory opinion).   VirtualAgility agrees such issues are not ripe.   Resp. at 31.   Instead, in considering whether a stay "will simplify the issues in question and streamline the trial" under AIA § 18(b)(1)(A),

---

[6]   VirtualAgility incorrectly states the PTAB never considered some claims. Resp. at 26 n.1.

the PTAB's ruling under 35 U.S.C. § 324(a) should be taken at face value—the PTAB is likely to invalidate all claims on two independent grounds.

To the extent this Court is inclined to reconsider the PTAB's analysis, the PTAB's conclusions are correct. Salesforce explained in its Petition how the patentee failed to cure the Board's § 101 rejection during original prosecution, and the PTAB provided a thorough assessment of why the '413 Patent claims are likely ineligible under § 101. J.A. 0166–0167; 0574-0580. Moreover, the prior art assessment is *qualitative*, not quantitative, and the Ito patent is not "cumulative" (*see* Resp. at 26). The PTAB thoroughly explained why the Ito patent likely anticipates every '413 Patent claim. J.A. 0585–0589. The PTAB judges' determinations will likely withstand scrutiny, and there is no reason to question them now, particularly when the PTAB will again consider the merits later this year.[7]

VirtualAgility also speculates this Court could reverse a PTAB decision. Resp. at 30-32. In particular, VirtualAgility argues the '413 Patent is not a covered business method under AIA § 18. While the PTAB correctly found the '413 Patent is a covered business method patent (J.A. 0153–0157; J.A. 0560–0569), this CBM

---

[7] VirtualAgility's argument that the '413 Patent's twelve years of original prosecution weighs against a stay lacks merit. If Patent Office decision-making is given any deference, the deference should apply to the PTAB's most recent decision concluding the original prosecution resulted in claims the PTAB will "more likely than not" cancel.

Review "standing" issue is also not ripe for review. VirtualAgility provides no reason why this Court should prematurely disturb that decision.[8]

### 2. CBM Review will prevent litigating moot or improperly interpreted patent claims

VirtualAgility wants to run from its pending motion to amend its patent claims. Every CBM Review statement VirtualAgility makes about its amendments is crucial to interpreting the existing claims by differentiation. Thus, *even if* the '413 Patent survives CBM Review, the litigation will be simplified by (1) knowing what patent claims are at issue, and (2) having a complete prosecution history that allows a proper claim construction. Denial of a stay will complicate issues as Appellants will be forced to litigate based on incomplete intrinsic evidence and potentially changing claims. Indeed, such a course would prejudice Appellants.

---

[8]     If the Court considers this issue, it should consider all arguments Salesforce presented to the PTAB on this point. *See* J.A. 0153–0157. For example, AIA § 18(d)(1) invokes any "patent that claims a method or corresponding apparatus for performing data processing or other operations used in the practice, administration, or management of a financial product or service [excluding] technological inventions." Here, as the PTAB found, "the claimed method has particular application involving financial activities." J.A. 0562. VirtualAgility sued financial entities Bank of America and Merrill Lynch for using allegedly infringing "systems for supporting management of collaborative activities." J.A. 0109–0111. Thus, VirtualAgility's own pleadings admit its patent claims management of financial services.

VirtualAgility cites one example of a patent surviving reexamination where a court later said reexamination "complicated the claim construction work."[9]  Resp. at 35.  However, even where expansion of a patent's intrinsic record complicates "claim construction work" (not always the case—further prosecution history could clarify otherwise difficult to construe terms, *see* Opening Brief at 21), this is still a simplification compared to the alternative: conducting trial centered upon erroneous claim construction due to incomplete prosecution history resulting in appeal, reversal, remand, and, ultimately, retrial.  *Cf. Phillips v. AWH Corp.*, 415 F.3d 1303, 1317 (Fed. Cir. 2005) (*en banc*) (holding prosecution history should be considered in claim construction); *see also Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 721 F.3d 1330 (Fed. Cir. 2013) (vacating court determination upon patent claim cancellation).

### 3. VirtualAgility cannot dispute CBM Review will provide at least some simplification

VirtualAgility argues lack of simplification because only some litigation issues are raised in the CBM Review.  Resp. at 25–30.  However, CBM Review's purpose is to provide an efficient, alternative proceeding for addressing dispositive

---

[9]     Despite VirtualAgility's counsel also being of record in the *DataTreasury* cases, VirtualAgility fails to mention any complication was likely attributable to **new** claims issuing alongside original claims.  *See* Patent Nos. 5,910,988 (Oct. 23, 2007 certificate) and 6,032,137 (Dec. 25, 2007 certificate), *available at* No. 2:05-cv-291-DF-CMC, Dkt Nos. 110-1, 110-2 (filed Jan. 15, 2008) (E.D. Tex.).  New claims are not permitted in CBM Review.

invalidity issues. Petitions for CBM Review have limited page numbers and strict requirements. J.A. 0238–0239, 77 Fed. Reg. 48763–764. Thus, Salesforce could not include *every* prior art reference in its Petition (especially when so many references invalidate the '413 Patent). Moreover, certain litigation defenses require third party involvement, leaving them better-suited for litigation where Appellants can utilize the District Court's subpoena power. *See* J.A. 0458–0459. Salesforce provided the PTAB with a reference rendering the '413 Patent invalid, and this is enough to satisfy CBM Review's purpose. Because CBM Review is not a substitute for total litigation defense, failure to include *every* defense is irrelevant.

Simplification will result from resolving proposed claim amendments, developing a complete prosecution history (thus permitting a complete claim construction), resolving the § 101 invalidity defense, and resolving invalidity based on the Ito reference. These simplifications are each irrefutable. *See* Resp. at 13 ("CBM proceedings, by their nature, do have the potential to eliminate issues from litigation."). Moreover, the PTAB will "more likely than not" cancel the entire '413 Patent—again, the sole patent-in-suit—such that even infringement and damages issues will be eliminated. *Compare with* Resp. at 25 (suggesting CBM Review "will not narrow the infringement or damages issues for trial"). Thus, the first factor strongly favors a stay.

## B.    Factor Two: Timing Favors A Stay

VirtualAgility argues "whether discovery is complete and whether a trial date has been set" (AIA § 18(b)(1)(B)) is "at best" a "neutral" factor.  Resp. at 37. Based on the facts at hand, however, if this factor were neutral or only modestly favored a stay, it would be *impossible* for this factor to strongly favor a stay.  *De facto* elimination of this factor from analysis is contrary to statute and cannot be correct.

Instead, this factor *strongly* favors a stay when—as here—a stay is sought at the earliest possible stage of litigation.  Less than two months after Appellants first responded to the operative complaint (4/5/2013), Salesforce filed its petition for CBM Review with an extensive supporting expert declaration (5/24/2013)[10] and then Appellants promptly filed their motion to stay (5/29/2013).  J.A. 0145, 0088– 0090.  The motion was ripe for decision (6/20/2013)[11] and briefed through surreply (7/11/2013) before any case management or scheduling conference was set (7/19/2013) or held (8/8/2013).  J.A. 0088–0090.  Discovery had not begun, and no trial date was set.

---

[10]    VirtualAgility admits Salesforce's materials were extensive in explaining why it took so long to respond.  Response at 49.

[11]    The District Court's local rules allow for decision without awaiting a reply or surreply.  E.D. Tex. L.R. 7(f).

VirtualAgility asks this Court to look at the status when the PTAB instituted proceedings (even though VirtualAgility delayed this as long as it could) and to hold courts should await the PTAB's initial determination before staying litigation. Neither argument has merit. Every petition for CBM Review will take time to prepare and reach an initial determination, and district courts have routinely granted stays prior to initial determination. *See* Opening Brief at 40 n.19, 47. Indeed, the PTAB's determination that every '413 Patent claim is "more likely than not" unpatentable confirms a stay would have been proper at the earliest possible moment. Even now, the litigation is at a relatively early stage: no party depositions, claim construction briefing, or expert discovery have occurred and no claim construction hearing has been held. But the analysis is simpler: timing heavily favors a stay because Appellants requested a stay which should have been granted before *any* discovery and before a trial date was set.

## C. Factor Three: Lack Of Undue Prejudice Favors A Stay

VirtualAgility fails to establish a stay "would unduly prejudice" it due to infringing competition or "present a clear tactical advantage" for Appellants. AIA § 18(b)(1)(C).

### 1. VirtualAgility Cannot Establish Undue Prejudice Due to Competition

Although VirtualAgility alleges competition-related prejudice, VirtualAgility cannot establish competition with Salesforce, a nexus between such

competition and the patent-in-suit, a prejudice to VirtualAgility's alleged ability to compete due to the stay, or that the prejudice is "undue." Appellants raised this failure below (*see* J.A. 0134, 0460[12]), and VirtualAgility's Response again falls short on each point.

### a. The record does not establish competition

On the "limited record" (Resp. at 48) before this Court, VirtualAgility has virtually no evidence of competition. For example:

- The record does not reflect any Salesforce or other entity's SEC or other public filings acknowledging competition between Salesforce and VirtualAgility.

- The record contains no evidence of third party market analyses, industry articles, or the popular press mentioning such competition.

- The record contains no Salesforce or VirtualAgility advertisements or publications comparing the parties' products.

- The record contains no proof of a customer choosing between purchase of a VirtualAgility or Salesforce product.

- The record contains no proof VirtualAgility offers products in the general market space occupied by the allegedly infringing Salesforce products, Sales Cloud

---

[12] VirtualAgility's suggestion that Salesforce was required to prove a negative, "that it does not" compete directly with VirtualAgility (Resp. at 45), makes no sense.

(customer relationship management) and Service Cloud (customer service and support).

• VirtualAgility has not identified any customer with which it and Salesforce competed for business. VirtualAgility notes the State of New Jersey is both a VirtualAgility *and* a Salesforce customer (Resp. at 4), but this suggests the parties' products are not competitive replacements for each other (or else why would New Jersey buy both?).[13]

Instead of providing facts proving competition, VirtualAgility provides a single declaration from its President and CEO where VirtualAgility styles itself a competitor to Salesforce in some unspecified sense. *See* J.A. 0315–0317. Additionally, VirtualAgility states it "received [a] Government Service Administration (GSA) bid[] for enterprise-level products and services that mention Salesforce's Sales Cloud and Service Cloud products." Resp. at 4. Contrary to the District Court's erroneous conclusion, however, this "evidence" does not show VirtualAgility and Salesforce "took part in the same government bid process at least once." J.A. 0012; *see* Opening Brief at 31–32. VirtualAgility admits as much. Resp. at 43-44. Thus, the record does not establish VirtualAgility competes with Salesforce.

---

[13] To the extent VirtualAgility insinuates Salesforce acquired the customer from VirtualAgility, *see* Response at 4, there is no record support.

### b. The record does not establish competition connected to the '413 Patent

VirtualAgility's brief (and the District Court's opinion) ***never*** establish a connection between (1) either VirtualAgility's alleged products or allegedly competitive Salesforce products and (2) the '413 Patent. Competition is irrelevant without a nexus to the patent-in-suit. *Cf. Apple, Inc. v. Samsung Elecs. Co., Ltd.*, 678 F.3d 1314, 1324 (Fed. Cir. 2012) ("Sales lost to an infringing product cannot irreparably harm a patentee if consumers buy that product for reasons other than the patented feature. If the patented feature does not drive the demand for the product, sales would be lost even if the offending feature were absent from the accused product.").

VirtualAgility's declaration refers to conversations with unspecified customers and potential customers where entities "compare[] the functionality of VirtualAgility's products with that of Salesforce's products that Salesforce markets and sells to such customers." J.A. 0317; *compare with* Resp. at 4 (alleging conversations about specific products). This invites the key questions: Which products? Do they relate to the '413 Patent? The record provides no evidence that ***any*** VirtualAgility product embodies any '413 Patent claim (or has ever actually been sold). *See* J.A. 0317. All VirtualAgility's statements to the contrary are unsupported attorney argument. For instance, VirtualAgility writes, "VirtualAgility WorkCenter[TM] [] embodies the '413 patent claims," Response at 44

22

(citing J.A. 0317); *see also id.* at 3, 4, 11, 12–13 (alleging embodiment). What its declarant actually said, however, is far less: "the VirtualAgility WorkCenter[TM] product is marked as being covered by VirtualAgility's patents, including the '413 Patent." J.A. 0317.

VirtualAgility also indicates Salesforce "sells and/or offers for sale various products, such as Sales Cloud, to those same [unspecified] customers and potential customers to be used for the same purposes as VirtualAgility's patented WorkCenter[TM] product." J.A. 0317. Yet the record does not suggest any patented feature creates customer demand or that the "same purpose" is covered by the '413 Patent. Indeed, nothing in the record compares '413 Patent claim elements to any VirtualAgility or Salesforce product. Rather, VirtualAgility acknowledges Salesforce delivers "customizable software" to clients (Resp. at 55), and Salesforce's ability to provide customer-specific customization is more critical to demand than any feature allegedly claimed by the '413 Patent. Because it lacks evidence of relevant competition relating to the patent-in-suit, VirtualAgility cannot establish relevant market impact or prejudice.

### c. The record does not establish a stay will harm VirtualAgility's alleged ability to compete

VirtualAgility alludes to what it might accomplish if Salesforce were subtracted from the market. Resp. at 46-48. This assumes too much. VirtualAgility fails to show why it could be entitled to injunctive relief, including

why the balance of hardships would favor injunction. *See* Opening Brief at 30–31. VirtualAgility also fails to show why actual Salesforce competitors would not acquire any available market share.[14]

There is no evidence of an instance where VirtualAgility lost a sale due to competition from Salesforce. For VirtualAgility to "lose market share" (Resp. at 42, 48), it must *have* market share already.[15] VirtualAgility has not established it has market share and has not shown what share it might lose. VirtualAgility also fails to show why it cannot compete for market share on its products' merits absent an injunction.

VirtualAgility also suggests it risks loss of goodwill (*e.g.*, Resp. at 47), but VirtualAgility does not explain why Salesforce affects VirtualAgility's reputation. Indeed, VirtualAgility's analysis fails to go beyond conclusory statements arguing any competitive act accused of infringing is *per se* prejudicial. This cannot substitute for actual evidence of prejudice to VirtualAgility resulting from a stay pending CBM Review.

---

[14]   VirtualAgility points to a State Department Case Study where Salesforce was selected over Oracle and SAP, not VirtualAgility. J.A. 0316 (Declaration ¶ 8, citing study at http://www.sfdcstatic.com/assets/pdf/casestudies/State_Department_Case_Study_Final_Nucleus_Research.pdf?=d70130000000t6qU).

[15]   VirtualAgility points to the time before the patent issued, Response at 47, but infringement before the '413 Patent issued is impossible.

### d. The record does not establish any **undue** prejudice

Even if VirtualAgility could establish actual competition, connect it to its patent, and establish harm due to a stay, VirtualAgility cannot explain what the statute requires: why the harm amounts to **undue** prejudice. This is because, if VirtualAgility succeeds in all respects with unamended claims, it can obtain monetary damages reflecting any Salesforce success during the CBM Review period. *Cf. Progressive Cas. Ins. Co. v. Safeco Ins. Co. of Illinois*, Nos. 1:10CV01370, 1:11CV00082, 1:12CV01068, 1:12CV01070, 2013 WL 1662952, at *8 (N.D. Ohio Apr. 17, 2013) (concluding damages are adequate absent plausible explanation otherwise). This is the only plausible outcome when numerous other major corporations (none of which are alleged to infringe) identify themselves as Salesforce competitors. *See* Opening Brief at 33–34. VirtualAgility never argues monetary damages will not be adequate. Instead, it assumes "a permanent injunction is very likely." Resp. at 48. Because any harm during CBM Review is compensable by damages, there is no undue prejudice.

### 2. Risk of evidence loss does not present Appellants with any tactical advantage

VirtualAgility argues the "advanced age" of Mr. Nelson [16] and other witnesses suggests a stay would tactically advantage Appellants due to risk of "evidence loss." But VirtualAgility never explains why evidence loss favors Appellants; evidence loss could favor VirtualAgility. Only "tactical advantage *for the moving party*" weighs against a stay (AIA § 18(b)(1)(C)) (emphasis added), and the record does not suggest any speculative evidence loss will create such an advantage in favor of Appellants. In addition, patentees in virtually any case could name witnesses of "advanced age." There is nothing unique about the witnesses' health or age here that provides Appellants a tactical advantage.

### 3. VirtualAgility's actions suggest absence of undue prejudice

VirtualAgility's actions show it does not perceive any risk of undue prejudice from a stay pending CBM Review. VirtualAgility waited nearly a year after the '413 Patent issued to file suit and did not seek a preliminary injunction.

---

[16] VirtualAgility fails to acknowledge Mr. Nelson was already examined in deposition by both sides and further mischaracterizes that "Defendants . . . repeatedly pressed for Mr. Nelson's deposition, despite knowing that he was tending to his wife of forty-seven years while she was fighting the final stages of a terminal illness." Resp. at 51. Defendants worked with VirtualAgility for months to schedule Mr. Nelson's deposition at a time and location minimizing inconvenience to him despite the District Court's pending deadlines.

All inconvenience to Mr. Nelson could have been avoided if the District Court had promptly granted Defendants' motion to stay.

*See Zillow, Inc. v. Trulia, Inc.*, No. C12-1549-JLR, 2013 WL 5530573, at *6 (W.D. Wash. Oct. 7, 2013) (citing cases finding failure to pursue preliminary injunction undermines prejudice allegations).  It has filed every paper with the PTAB on the last possible day (including seeking extension) even though filing sooner would result in speedier CBM Review resolution.  It has filed an alternative motion to amend patent claims which, if successful, will impact the application of those claims to allegedly infringing products.  In its Response, VirtualAgility fails to explain why it has not done more to try to reach a prompt resolution of its patent rights on the merits.  Resp. at 48–50.  Given that a stay pending CBM Review will be short in comparison to the delays VirtualAgility has created, there is no undue prejudice.  Rather than explain itself, VirtualAgility accuses *Appellants* of delay. *See, e.g.*, Response at 48–49 (mischaracterizing transfer motion and 12(b)(6) partial motion to dismiss as "delay tactics").  Appellants have done nothing improper.  Indeed, Appellants requested expedited appeal while VirtualAgility opposed.

### 4.    VirtualAgility overstates the potential length of stay

VirtualAgility argues any stay will necessarily last years due to appeal of the CBM Review to this Court.  Resp. at 38–40.  This argument fails for two reasons.  First, it is speculation.  The PTAB's final decision may provide no party with a reasonable basis for appeal, or a party may determine appeal is not worthwhile.

Second, VirtualAgility's arguments illustrate the need for a stay. As VirtualAgility would have it, the District Court should proceed to a jury trial *even if the PTAB reaches a final decision holding all claims should be cancelled* because delay due to appeal is prejudicial. This makes no sense. Patent "rights" based on a cancelled patent are not rights at all, and a patentee is not prejudiced when precluded from burdening a District Court and a jury with trial on invalid claims. As such, VirtualAgility's extended delay argument should be rejected.

### 5. The third factor is not dispositive

VirtualAgility's arguments again go too far. VirtualAgility would have this Court declare that any alleged competition between litigants, no matter how flimsily supported by the record, prevents a stay pending CBM Review. But this is only one aspect of one factor.

Even where a duopoly exists in a market squarely implicated by a patent in litigation, a stay could be appropriate because AIA § 18 was intended to address a species of patent, not a species of plaintiff. Direct competitors and courts presiding over them still benefit from CBM Proceedings' efficiencies. While VirtualAgility cites district court "reluctan[ce] to stay proceedings where the parties are direct competitors" (Resp. at 41), no district court decision (other than the decision on appeal) has held this reluctance must lead to denial of a stay where other AIA § 18(b) factors support a stay. In fact, one court recently held this aspect, by itself,

was outweighed by the other factors. *CheckFree Corp. v. Metavante Corp.*, No. 3:12-cv-15-J-34JBT, 2014 WL 466023, at *7 (M.D. Fla. Jan. 17, 2014) ("CheckFree may suffer some prejudice from a delay of this litigation, however, in view of the circumstances, including the weight of the other factors favoring the entry of a stay, the Court does not view the possibility of such prejudice to be undue."). Thus, even if this Court determines prejudice based on assumed competition weighs against a stay, this one factor is out-weighed by the other three AIA § 18(b) factors, and a stay is nonetheless appropriate.

### D. Factor Four: Reduction In Litigation Burden Favors A Stay

As explained in Section II, *supra*, the fourth AIA § 18(b) factor is entitled to separate weight and separate consideration from the first factor. Also, the ***certain*** reduction of burden in the litigation can be measured by the effort expended in the CBM Review—effort effectively transferred from the litigation.

Of course, potential burden reduction is greater. More likely than not, the PTAB will cancel every '413 Patent claim and all litigation burden will be eliminated. Short of this, at least the parties will have certainty regarding which claims survive in original or amended form and will have the benefit of a full prosecution history to inform claim construction and claim scope. Additionally, a stay will eliminate significant Section 101 and prior art issues. As such, the fourth factor heavily favors a stay.

29

## V.    OTHER DISTRICT COURT OPINIONS ARE HIGHLY RELEVANT TO THIS COURT'S ANALYSIS

VirtualAgility wrongly argues other district court decisions have little relevance.  Resp. at 56.  AIA § 18(b)(2) provides interlocutory appeal so this Court can "ensure consistent application of established precedent. . . ."  Thus, this Court should look to other similar cases to ensure harmonious application of AIA § 18(b).  Indeed, this is precisely what Congress envisioned.  *See* J.A. 0254, 157 Cong. Rec. S1364 (statement of Sen. Schumer) (explaining AIA § 18(b)(2) directs "the Federal Circuit [to] closely review the application of this test in a manner that ensures adherence to these [district court] precedents and consistent results across cases"); J.A. 0269–270, *id.* at S1379–S1380 (statement of Sen. Kyl) (observing the statute requires "consistent application of established precedent"—*i.e.* cases "applying the four factors"—so discretion does not "allow different outcomes based on the predilections of different trial judges").

There is consistency in the courts applying the four-factor AIA test.  The decision on appeal is the sole outlier.  VirtualAgility has not identified (nor have Appellants) any case where a court has denied a stay requested by a Defendant after CBM Review was instituted.  To the contrary, numerous courts have granted stays in circumstances similar to those presented here.  *See* Opening Brief at 39–48.

VirtualAgility attempts to distinguish two cases involving actual competitors, Resp. at 57–59. But even where there is *actual evidence* of *relevant* competition (unlike here), courts have found the balance of factors still favored a stay. *See Zillow*, 2013WL 5530573; *see also CheckFree Corp.*, 2014 WL 466023; *Chicago Board Options Exch., Inc. v. Int'l Sec. Exch., LLC*, No. 2:13-cv-1339-JMF, Dkt. No. 89 (S.D.N.Y. Nov. 1, 2013); *Credit Acceptance Corp. v. Westlake Services, LLC*, No. 2:13-cv-01523-SJO-MRW, 2013 WL 7144391 (C.D. Cal. Dec. 30, 2013). Nothing unique about this case warrants a different conclusion. VirtualAgility points to its small size to distinguish *Zillow*, Resp. at 59, but VirtualAgility fails to explain why this matters. VirtualAgility's other purported distinctions—the chance claims survive CBM Review or potential evidence loss due to advancing age—always exist and do not distinguish anything. Thus, anything short of reversing the District Court's decision will introduce disharmony in the law and encourage forum shopping, contrary to AIA § 18(b)'s goal of "consistent application of established precedent."

## **CONCLUSION**

For all reasons presented by Appellants, Appellants ask this Court to direct a stay of litigation pending resolution of the CBM Review.

Dated:  February 28, 2014

WILSON SONSINI
GOODRICH & ROSATI
Professional Corporation

By: /s/: Jose C. Villarreal
Jose C. Villarreal
jvillarreal@wsgr.com
Brian D. Range
brange@wsgr.com
Joel C. Boehm
jboehm@wsgr.com
900 South Capital of Texas Highway
Las Cimas IV, Fifth Floor
Austin, TX 78746-5546
Telephone:  (512) 338-5400
Facsimile:   (512) 338-5499
Larry L. Shatzer
lshatzer@wsgr.com
1700 K Street, NW
Fifth Floor
Washington, DC 20006
Telephone:  (202) 973-8800
Facsimile:   (202) 973-8899

ATTORNEYS FOR DEFENDANTS-
APPELLANTS SALESFORCE.COM, INC.;
DELL, INC.; DR PEPPER SNAPPLE
GROUP, INC.; NBCUNIVERSAL, INC.;
LIVINGSOCIAL, INC.; FEDEX
CORPORATION; FEDEX CORPORATE
SERVICES, INC.; BMC SOFTWARE,
INC.; BANK OF AMERICA
CORPORATION; BANK OF AMERICA,
NATIONAL ASSOCIATION; MERRILL
LYNCH & CO., INC.; AND MERRILL
LYNCH, PIERCE, FENNER & SMITH
INCORPORATED

BAKER BOTTS L.L.P.


By: /s/: Darryl J. Adams
    Darryl J. Adams
    darryl.adams@bakerbotts.com Kevin J.
    Meek
    kevin.meek@bakerbotts.com
    98 San Jacinto Blvd., Suite 1500
    Austin, TX 78701
    Telephone:  (512) 322-2500
    Facsimile:   (512) 322-2501

    **ATTORNEYS FOR DEFENDANT-
    APPELLANT,
    KIMBERLY-CLARK CORPORATION**

## <u>CERTIFICATE OF FILING AND SERVICE</u>

I hereby certify that on this 28th day of February, 2014, I caused this Reply

Brief of Appellants to be filed electronically with the Clerk of the Court using the

CM/ECF System, which will send notice of such filing to the following registered

CM/ECF users:

Edward K. Chin
Andrew Joseph Wright
Christian J. Hurt
Kirk Austin Voss
Robert Winn Cutler
David Neil Smith
Nix Patterson & Roach - Irving
5215 N O'Connor Blvd, Suite 1900
Irving, TX 75039
972-831-1188
edchin@me.com
andrewjwright@me.com
christianhurt@nixlawfirm.com
kirkvoss@nixlawfirm.com
winncutler@nixlawfirm.com
dneilsmith@me.com
agility@nixlawfirm.com

*Counsel for Plaintiff-Appellee VirtualAgility, Inc.*

Nelson James Roach
Derek Tod Gilliland
Nix Patterson & Roach LLP - Daingerfield
205 Linda Drive
Daingerfield, TX 75638
903-645-7333
Email: njroach@nixlawfirm.com
Email: dgilliland@nixlawfirm.com

*Counsel for Plaintiff-Appellee VirtualAgility, Inc.*

Darryl J. Adams
Kevin J. Meek
Baker Botts LLP
1500 San Jacinto Center
98 San Jacinto Blvd
Austin, TX 78701-4087
512-322-2583
darryl.adams@bakerbotts.com
kevin.meek@bakerbotts.com

*Counsel for Defendant-Appellant
    Kimberly-Clark Corporation*

Upon acceptance by the Clerk of the Court of the electronically filed

document, the required number of copies of the Reply Brief of Appellants will be

hand filed at the Office of the Clerk, United States Court of Appeals for the

Federal Circuit in accordance with the Federal Circuit Rules.

*/s/* Jose C. Villarreal
Jose C. Villarreal

*Counsel for Appellants*

## <u>CERTIFICATE OF COMPLIANCE</u>

1.  This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

    [ X ] this brief contains [*6,924*] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

    [    ] this brief uses a monospaced typeface and contains [*state the number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

    [ X ] this brief has been prepared in a proportionally spaced typeface using [*Microsoft Word 2007*] in [*14pt Times New Roman*]; *or*

    [    ] this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].

Dated: <u>February 28, 2014</u>          /s/  Jose C. Villarreal

Jose C. Villarreal

*Counsel for Appellants*