**2014-1232**

# United States Court of Appeals
# for the Federal Circuit

VIRTUALAGILITY INC.,

*Plaintiff-Appellee,*

*v.*

SALESFORCE.COM, INC., DELL, INC., DR. PEPPER SNAPPLE GROUP, INC., KIMBERLY-CLARK CORPORATION, NBCUNIVERSAL, INC., LIVINGSOCIAL, INC., FEDEX CORPORATION, BMC SOFTWARE, INC., BANK OF AMERICA CORPORATION, BANK OF AMERICA NATIONAL ASSOCIATION, MERRILL LYNCH & CO., INC., MERRILL LYNCH, PIERCE, FENNER & SMITH INCORPORATED, and FEDEX CORPORATE SERVICES, INC.,

*Defendants-Appellants.*

*Appeal from the United States District Court for the Eastern District of Texas in No. 2:13-cv-00011-JRG, Judge J. Rodney Gilstrap*

## PETITION FOR REHEARING *EN BANC* FOR APPELLEE

Thomas C. Goldstein
GOLDSTEIN & RUSSELL, P.C.
7475 Wisconsin Avenue
Suite 850
Bethesda, MD  20814
(202) 362-0636 (telephone)

D. Neil Smith
Edward Chin
Andrew J. Wright
Christian Hurt
Nix Patterson & Roach, L.L.P.
5215 N. O'Connor Boulevard
Suite 1900
Irving, Texas 75039
(972) 831-1188 (telephone)
(972) 444-0716 (facsimile)

*Counsel for Plaintiff-Appellee VirtualAgility, Inc.*

AUGUST 25, 2014

## CERTIFICATE OF INTEREST

Counsel for Plaintiff-Appellee, Thomas C. Goldstein, certifies the following:

1. The full name of every party or amicus represented by me is: VirtualAgility Inc.

2. The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is: None.

3. All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are: None

4. The names of all law firms and partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are: Nix Patterson & Roach, LLP; Andrew Joseph Wright; Christian J. Hurt; Derek Tod Gilliland; Edward K. Chin; Kirk Austin Voss; Nelson James Roach; Robert Winn Cutler; David Neil Smith; Thomas C. Goldstein; Goldstein & Russell, P.C.


DATED: August 25, 2014.          Respectfully submitted,

/s/ Thomas C. Goldstein
THOMAS C GOLDSTEIN
*Attorney for Plaintiff-Appellee*

i

# TABLE OF CONTENTS

CERTIFICATE OF INTEREST ................................................................. i

TABLE OF AUTHORITIES ................................................................ iii

STATEMENT OF COUNSEL ................................................................ 1

INTRODUCTION ................................................................................ 1

BACKGROUND ................................................................................. 3

ARGRUMENT ................................................................................... 6

    I.    The Majority's Decision Impacts Hundreds of Patent Cases ............. 6

    II.   The Majority's Approach To Section 18(b) Stay
         Determinations Is Logically Unsound And Contrary to
         The Statute ............................................................................. 8

CONCLUSION ................................................................................. 15

ADDENDUM: Opinion of the Panel

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

## FEDERAL CASES

*DataTreasury Corp. v. Fiserv, Inc.*,
    Order (Docket No. 616), Case No. 2:13-CV-431
    (E.D. Tex. Aug. 14, 2014) ...........................................................................15

*Freeny v. Apple Inc.*,
    Order (Dkt. 109), at 2, No. 2:13-CV-361-WCB
    (E.D. Tex. July 22, 2014) ........................................................................6, 10

*Highmark Inc. v. Allcare Health Mgmt. Sys.*,
    134 S. Ct. 1744 (2014) ............................................................................1, 10

*In re TLI Commc'ns LLC Patent Litig.*
    (Docket No. 56), Case No. 1:14-CV-00136 (E.D. Va. Aug. 11, 2014) .......15

*Intellectual Ventures I LLC v. JP Morgan Chase & Co.*,
    Order (Dkt. 154), at 3-6, No. 1:13-CV-03777
    (S.D.N.Y. Aug. 11, 2014) .............................................................................7

*Intellectual Ventures I LLC v. PNC Fin. Servs. Grp., Inc.*,
    Order (Dkt. 37), No. 2:14-CV-832 (W.D. Pa. Aug. 12, 2014) ......................7

*Landis v. N. Am. Co.*,
    299 U.S. 248 (1936) ................................................................................1, 10

*Personal Audio, LLC v. Togi Ent'mt, Inc.*,
    Order (Dkt. 235), at 2, No. 2:13-CV-13 (E.D. Tex. Aug. 1, 2014) ..............13

*Surfcast, Inc. v. Microsoft Corp.*,
    Order (Dkt. 158), at 8, No. 2:12-CV-333 (D. Me. Mar. 14, 2014) ..........1, 10

*Unifi Scientific Batteries, LLC v. Sony Mobile Commc'ns*,
    Order (Dkt. 81), at 5–6, No. 6:12-CV-2240 (E.D. Tex. Jan. 14, 2014) .......13

*Walker Digital, LLC v. Google, Inc.*,
    Order (Dkt. 305), at 2, No. 1:11-CV-318 (D. Del. June 24, 2014) ..............13

## FEDERAL STATUTES AND RULES

11 U.S.C. §362(a), (b) ........................................................................11

28 U.S.C. §1659(a) ............................................................................11

35 U.S.C. §§315(a)(2) .........................................................................2

35 U.S.C. §321 ....................................................................................2

35 U.S.C. §324 ....................................................................................8

35 U.S.C. §324 ....................................................................................8

35 U.S.C. §324(a) ..............................................................................12

37 C.F.R. §42.302 (2014) ....................................................................7

AIA §18(b) ...........................................................................................2

AIA §18(b)(1)........................................................................ 1, 2, 3, 12

AIA §18(b)(2).......................................................................................7

## STATEMENT OF COUNSEL

Based on my professional judgment, I believe this case poses the following precedent-setting questions of exceptional importance:

1. Whether a district court deciding whether to grant a stay under Section 18(b) of the America Invents Act (AIA) must conclusively presume that the Patent Trial and Appeal Board (PTAB) will invalidate every claim on which it grants review.

2. Whether, in so holding, the panel erred by creating a system that essentially requires an automatic stay in all cases where the PTAB grants review.

Moreover, based on my professional judgment, the decision in these respects is contrary to *Landis v. N. Am. Co.*, 299 U.S. 248 (1936) and *Highmark Inc. v. Allcare Health Mgmt. Sys.*, 134 S. Ct. 1744 (2014).

/s/ Thomas C. Goldstein
THOMAS C GOLDSTEIN
*Attorney for Plaintiff-Appellee*

## INTRODUCTION

The panel opinion in this case concerns an essential procedural question of first impression under the America Invents Act (AIA).  Section 18(b) states that district courts may stay litigation pending the new PTAB review proceedings created by the AIA and provides factors for those courts to consider in making that stay determination.  Among them are the likelihood that a stay will

"simplify the issues" and "reduce the burden of litigation on the parties and the court." AIA §18(b)(1). In assessing these factors below, the district court determined that a stay was unwarranted because—having considered the patent at length, including its unusually extended and rigorous prosecution history—it believed it was unlikely that all the claims in suit would be invalidated after PTAB review and a subsequent Federal Circuit appeal. A divided panel of this Court reversed, holding that the district court legally erred when it applied its own judgment to the question whether the claims were likely to be invalidated. Henceforth, it held, district courts must always presume that, once the PTAB grants review, the claims at issue will ultimately be cancelled.

As Judge Newman's dissent illustrates, the resulting structure yields an all but automatic stay whenever the PTAB grants review. Indeed, the many facts in this case disfavoring a stay demonstrate how dramatically the panel majority has circumscribed the longstanding discretion of district courts to manage their own dockets. This issue is vitally important because stay motions governed by the standard of AIA Section 18(b) are becoming a ubiquitous element of patent litigation. Absent en banc review, the panel opinion will multiply the time it takes for patent holders to assert their rights, even in cases where—as here—the patent holder is a practicing entity halfway to trial losing valuable market share to a competitor, and the district court reasonably believes that no stay is due. And

at a minimum, this Court's review is vital to secure regularity and uniformity with respect to a procedural issue that now arises in nearly every patent case.

## BACKGROUND

Petitioner VirtualAgility (VA) and defendant Salesforce.com compete in the market for cloud-based, enterprise-level data services. Op. 21. After approximately twelve years of rigorous and intensely scrutinized patent prosecution, the PTO granted petitioner U.S. Patent No. 8,095,413. VA then sued Salesforce for infringing the '413 patent. *Id.* 2. Five months later, Salesforce filed a petition with the PTAB to initiate Covered Business Method Review (CBM) proceedings and a corresponding motion to stay under AIA Section 18(b), 35 U.S.C. §321. The district court did not rule on the stay motion while the PTAB considered the CBM petition, and the litigation progressed towards trial. The PTAB eventually granted the petition six months later, and the district court denied the stay motion shortly thereafter.

In determining whether to grant a stay pending resolution of a CBM review, AIA Section 18(b) instructs courts to consider four factors:

1. Whether a stay, or the denial thereof, will simplify the issues in question and streamline the trial;

2. Whether discovery is complete and whether a trial date has been set;

3. Whether a stay, or the denial thereof, would unduly prejudice the non-moving party or present a clear tactical advantage for the moving party; and

4. Whether a stay, or the denial thereof, will reduce the burden of litigation on the parties and on the court.

AIA §18(b)(1).  The district court denied the stay on two main grounds.  First, the defendants failed to convince the court that a stay was likely to simplify the litigation.  *See* Op. 6–7.  As part of that analysis, the court reviewed the '413 patent, its twelve year prosecution history, and the PTAB's decision to initiate CBM proceedings.  *Id.*  It concluded that, notwithstanding the PTAB's preliminary decision to grant review, it was reasonably likely that at least some claims would survive the PTAB's final decision and/or the judicial appeals process.  *Id.* Second, the Court found that a stay would unduly prejudice VA because it competes directly with Salesforce and its market share would be eroded during the stay period.  *Id.* 19–20.  Considering several other issues, the district court balanced the factors outlined in the statute and determined that a stay was unwarranted.  *Id.* 6–7, 15.

The defendants appealed under Section 18(b)'s interlocutory review provision, and a divided panel of this Court reversed.  The majority held that the district court "erred as a matter of law" because it "decided to 'review'" the PTAB's decision instituting the CBM proceedings, which the majority viewed as an "improper collateral attack" on the PTAB's initial determination to grant

4

review. *Id.* at 11–12. Because the PTAB's decision to institute CBM review demonstrated its own judgment that the claims would more likely than not be cancelled, the majority concluded that the first and fourth factors weighed "heavily in favor of a stay" without regard to any of the case-specific factors identified by the district court. *Id.* 13, 15.

The majority also concluded that, in assessing the second factor, "district courts should generally consider 'whether discovery is complete and whether a trial date has been set' as of the date of the stay motion" rather than the date on which the motion is decided. *Id.* 18 & n.6. Thus, if (as here) a stay motion is filed near the outset of litigation and the court waits to evaluate that motion until the PTAB grants review, three of the four factors will—under the majority's system—always weigh "heavily" towards a stay.

Finally, the majority concluded that the district court clearly erred in finding that VA would be unduly prejudiced and placed at a tactical disadvantage during a multi-year stay. *Id.* 19–25. It did so even while acknowledging the district court's finding that VA actively seeks to practice its patent in the "same business space" as defendant Salesforce and would suffer competitive harms. *Id.* 21–22. The majority likewise acknowledged that defendants have not asserted all known prior art in the CBM proceeding—a tactic that would allow them to preserve separate arguments for the litigation notwithstanding the estoppel

provision in AIA Section 18 for defendants who choose the CBM review path. In the majority's view, these factors only "slightly" disfavored a stay, and could not counterbalance the heavy weight it placed on the PTAB's decision to institute review under the other three factors. It thus reversed the district court and entered a stay.[1]

Judge Newman dissented, noting that the majority opinion stripped the district court of its discretion to consider and deny a stay, contrary to the plain language of the statute and historic practice. Dis. Op. 2-3. The dissent argued that the decision "effectively create[d] a rule that stays of district court litigation pending CBM review must always be granted," that this "near automatic grant of litigation stays … tilts the legislative balance" that Congress chose in the AIA, and that district courts would be deprived of the power to manage their own dockets as a result. *Id.* 3, 4, 6–7.

## ARGUMENT

### I. The Majority's Decision Impacts Hundreds of Patent Cases

The proper interpretation of Section 18(b) is exceptionally important because a motion to stay pending CBM or inter partes review is now filed in virtually every patent case. Since the AIA's enactment, "district courts have encountered a flood of stay requests pending either CBM review or inter partes

---

[1]    For purposes of this petition, VA stipulates that this stay will remain in effect during the pendency of any *en banc* review.

review." *Freeny v. Apple Inc.*, Order (Dkt. 109), at 2, No. 2:13-CV-361-WCB (E.D. Tex. July 22, 2014) (Bryson, J.).  A search of district court dockets yields over two hundred stay motions in this context since just 2012.

This flood of stay requests is only likely to increase.  Nearly 1,800 petitions for review under the new AIA procedures have been filed in the last two years,[2] and that rate is accelerating.  *See* *http://tinyurl.com/njvn4x6* (PTO statistics showing growth from about 30 petitions to over 140 petitions per month). The vast majority will cover patents involved in litigation; indeed, for CBM petitions, the petitioner must be "charged with infringement under th[e] patent" before seeking PTAB review.  37 C.F.R. §42.302 (2014).

It is important that this Court as a whole consider the appropriate mechanism for district courts to deal with this development.  As explained below, the majority opinion blesses a system in which the merits of a stay decision are essentially outsourced to the PTAB.  At the same time, the majority's decision leaves important procedural questions about when and how to process stay motions up in the air, in a way that can only befuddle lower courts.  The result will

---

[2]    Courts apply the Section 18(b) standard to stay motions in both the CBM and inter partes review context.  *See* Op. 4 (CBM review); *Intellectual Ventures I LLC v. PNC Fin. Servs. Grp., Inc.*, Order (Dkt. 37), No. 2:14-CV-832 (W.D. Pa. Aug. 12, 2014) (citing *this case* in context of motion to stay pending inter partes proceedings); *Intellectual Ventures II L.L.C. v. JP Morgan Chase & Co.*, Order (Dkt. 154), at 3-6, No. 1:13-CV-03777 (S.D.N.Y. Aug. 11, 2014) (applying first three factors of Section 18(b) in analyzing motion to stay pending inter partes review).

either be confused precedents or automatic stays, both of which are contrary to the express direction of the statute. *See* AIA §18(b)(2) (directing this Court to "ensure consistent application of established precedent" with respect to stay motions). The relationship between the new PTO review processes and ongoing federal litigation implicates important questions about the consistency and regularity of nearly every post-AIA patent case. It behooves this Court as a whole to adopt sound rules that the district courts throughout the country can follow.

## II.   The Majority's Approach To Section 18(b) Stay Determinations Is Logically Unsound And Contrary To The Statute

The essence of the majority's holding is that district courts lack the power to consider the likely outcome of PTAB proceedings in making a stay determination. Instead, if the PTAB has granted review, it has determined that the claims are more likely than not to be cancelled, *see* 35 U.S.C. §324, and the district court must not question that result—even though it is preliminary and the PTAB itself will question it during its actual review proceeding. This means that, once the PTAB grants review, stay factors 1 and 4 weigh "heavily in favor of a stay" as a matter of law. Op. 13, 15.

Indeed, the majority's opinion goes further than that. It expressly blesses an approach where the defendant files for CBM or inter partes review and seeks a stay at the beginning of litigation, the district court waits—perhaps until the eve of trial—for the PTAB to decide whether or not to grant review, and the dis-

8

trict court then evaluates the state of the litigation proceedings "*as of the date of the stay motion*" rather than the time of the decision in assessing the impact of the stay on the litigation. *Id.* at 18 & n.6. In fact, while the opinion does not require this procedural approach, it says that this is the way "district courts should generally" proceed. *Id.* This case demonstrates the inevitable result: If the PTAB grants review, three of the four factors will be held to "heavily" favor a stay as a matter of law, and a stay will have to be granted.

As Judge Newman's dissent explains, this approach is at least analytically unsound. If the district court is to wait until the PTAB makes its initial decision whether to institute CBM or inter partes review, "[i]t cannot be correct to hold that all interim activity must be ignored, and the stay decided as if nothing had occurred" between the filing of the stay motion and the PTAB's decision. Dis. Op. 11. That would potentially ignore huge expenditures of judicial resources, and force courts to pretend that cases approaching trial had only just begun. *Id.* 11 & n.2.

In fact, the majority's partial ruling on the critical procedural issue of when and how to process the stay motion will lead to confusion and irregularity in the lower courts. Judges who follow the majority's approach will hold stay motions in abeyance and then be more or less bound by the PTAB's decision. Judges (like Judge Bryson) who believe "the better practice" is "acting on the

motion" and generally denying it with leave to renew will rule on such motions in a very different posture. *See Freeny*, supra, at 5–6. Other judges could deny *without* leave to renew. The result will be an inconsistent approach with judges processing identical motions under inconsistent standards, and with little guidance as to how to proceed.

When it comes to the merits of the stay decision, however, the majority's system will—as a rule—deprive district courts of the discretion that is granted by the statute and has long applied to the determination whether to stay their own proceedings. The district court bears the consequence of the stay decision, not the PTAB. For that reason, the question whether to stay a case has long been committed to the discretion of the district court. *Landis v. N. Am. Co.*, 299 U.S. 248, 254–55 (1936). As the dissent noted, recent Supreme Court precedent affirms that the district court—not the PTAB, and not this Court—is best suited to conduct the stay analysis because it "lives with the case." *Highmark Inc. v. Allcare Health Mgmt. Sys.*, 134 S. Ct. 1744, 1748–49 (2014). Conversely, the PTAB has no interest or role in that decision, and this counsels strongly against a system where district courts *must* defer to the PTAB's decision about its own proceedings in determining whether or not a stay should be granted in federal litigation.

In fact, the statute itself confirms that the PTAB's decision to grant review should not result in an all but automatic stay. Section 18(b) provides neither an automatic stay nor even any presumptions in the stay's favor, though it easily could have. Indeed, the two other stay provisions in the AIA expressly provide that litigation "shall be automatically stayed" pending inter partes or post-grant review in certain cases. *See* 35 U.S.C. §§315(a)(2), 325(a)(2). Numerous other federal statutes likewise provide for mandatory or presumptive stays. *See, e.g.*, 11 U.S.C. §362(a), (b) ("[a]utomatic stay" pending bankruptcy proceedings); 28 U.S.C. §1659(a) ("the district court shall stay" civil actions involving claims at issue in ITC proceedings). Congress declined to adopt such a rigid approach in Section 18(b), instead providing four broad categories for the district court to balance in its discretion. As the dissent correctly argues, "a near automatic grant of litigation stays" flouts this legislative design. Dis. Op. 4.

The majority defends its approach by suggesting that any district court analysis of the likely outcome of the PTAB proceeding would be an "improper collateral attack" on the PTAB's decision to institute review. *See* Op. 11–12. On this view, Congress's decision to provide only for Federal Circuit review of final PTAB decisions demonstrate that Congress did not intend district courts to "review" the PTAB institution decision. *Id.*

This line of reasoning is plainly mistaken, however, because it confuses the nature of the decisions being made by both the PTAB and the district court at this early stage. The PTAB's decision to institute review does require it to find that "it is more likely than not that at least 1 of the claims challenged in the petition is unpatentable." 35 U.S.C. §324(a). But that is a *preliminary* decision: The PTAB is merely determining whether it will decide the ultimate question of patentability or not, and so there is no final determination that might be subject to a "collateral attack." Conversely, a district court determination that (as here) at least one claim is likely to survive the final PTAB decision—as reviewed by the Federal Circuit—is not a collateral attack on the PTAB's decision to institute review because it has no collateral consequences at all: Stay or no stay, the PTAB proceedings will continue apace, and a decision by the district court or this Court on the stay issue will have no effect on the legal issues the PTAB must determine. The only thing affected by the stay decision is the management of the district court's docket, which is exactly why the district court is an appropriate body to assess—for itself—the statutory factors that Section 18(b) tells *it* to consider. *See* AIA §18(b)(1) ("*[T]he court shall decide* whether to enter a stay based on … whether a stay, or the denial thereof, will simplify the issues in question and streamline the trial." (emphasis added)).

In truth, district courts—like the court in this case—often conduct their own analysis of PTAB proceedings and, on a case-by-case basis, weigh the potential for those proceedings to simplify the litigation.[3] Such analysis is familiar to district courts and highly case-specific. By interposing a bright-line, patent-law-specific rule that cuts off the district courts' ability to consider such case-specific factors, the majority decision departs dramatically from the established rule that applies throughout the rest of the law for case-management decisions. It also replaces a proven, flexible approach with one well adapted to tossing the baby with the bath water.

Ultimately, the majority's error is in conceiving of the district court's analysis as "review" of the PTAB's decision to institute proceedings. *See* Op. 12. The court below did no such thing; it neither reversed the PTAB's institution decision nor made any legal determination of consequence outside its own

---

[3]     *See, e.g.*, *Surfcast, Inc. v. Microsoft Corp.*, Order (Dkt. 158), at 8, No. 2:12-CV-333 (D. Me. Mar. 14, 2014) (denying stay because, while PTAB had granted inter partes petition, "[t]he outcome of the IPR process is too uncertain to predict with confidence that it will result in a different patent underlying the suit"); *Walker Digital, LLC v. Google, Inc.*, Order (Dkt. 305), at 2, No. 1:11-CV-318 (D. Del. June 24, 2014) (denying stay and finding that, despite PTAB's decision to initiate CBM proceedings, the simplification factor only slightly favored a stay); *Personal Audio, LLC v. Togi Ent'mt, Inc.*, Order (Dkt. 235), at 2, No. 2:13-CV-13 (E.D. Tex. Aug. 1, 2014) (holding that, despite grant of IPR petition, potential for simplification was "at best, speculative"); *Unifi Scientific Batteries, LLC v. Sony Mobile Commc'ns*, Order (Dkt. 81), at 5–6, No. 6:12-CV-2240 (E.D. Tex. Jan. 14, 2014) (finding that potential for simplification of the issues "weigh[ed] against a stay" even though the PTAB had instituted IPR proceedings).

walls.  Instead, it made a predictive judgment about whether this was a case in which it was truly more likely than not that *every* claim would be cancelled, and it concluded for case-specific reasons that this inquiry was "essentially neutral" when it came to analyzing the stay factors.  *See* Dis. Op. 7-8 (explaining the district court's finding).  Preventing the district court from doing *that* "require[s] elimination of judicial discretion to proceed with pending litigation" even though "the America Invents Act contemplates such discretion."  Dis. Op. 14.

In fact, the majority's rule comes close to ignoring that the PTAB's institution decision is followed by an actual trial proceeding, as well as review by this Court, and the outcome of those procedures is not by any means a foregone conclusion.  *See, e.g.,* Final Decision (Paper No. 78), CBM2012-00003 (P.T.A.B. Feb. 11, 2014) (upholding validity of three claims despite finding in initial decision that its was more likely than not that those claims would be cancelled).  Put otherwise, it inappropriately treats the PTAB's decision to merely *institute* review as dispositive proof of what that review will yield.  That ups the ante on the PTAB's preliminary institution decision in a way that is bad for both the district courts (which lose the power to manage their own cases) *and* the PTAB (which henceforth knows that merely instituting review will almost necessarily derail pending litigation).

That result has, indeed, been the practical effect of the majority opinion. In the brief window since its publication, it has already compelled district courts to grant stays even when the court found that: (1) the defendants did not stipulate to the results of the CBM proceedings; (2) the patents-in-suit had withstood prior invalidity challenges; (3) the case was halfway to trial; (4) a stay would unduly prejudice the plaintiff by consuming a significant portion of the remaining life of the patents-in-suit and the plaintiff's resources; and (5) the defendants deliberately staggered their submissions to the PTAB to obtain a clear tactical advantage in the litigation. *DataTreasury Corp. v. Fiserv, Inc.*, Order (Docket No. 616), Case No. 2:13-CV-431 (E.D. Tex. Aug. 14, 2014); *see also In re TLI Commc'ns LLC Patent Litig.* (Docket No. 56), Case No. 1:14-CV-00136 (E.D. Va. Aug. 11, 2014) (staying litigation pending Inter Partes Review in view of this case). Unless reconsidered en banc, the majority opinion will continue to deprive the district courts of their discretion to deny motions to stay under Section 18(b). Neither the AIA nor any sound rule of judicial management counsels replacing that long-tested discretion with such a novel and inflexible approach.

## CONCLUSION

For the foregoing reasons, VA respectfully requests that the Court rehear this case en banc.

DATED: August 25, 2014.                 Respectfully submitted,

                                        /s/ Thomas C. Goldstein

                                        Thomas C. Goldstein
                                        GOLDSTEIN & RUSSELL, P.C.
                                        7475 Wisconsin Avenue
                                        Suite 850
                                        Bethesda, MD  20814
                                        (202) 362-0636

                                        **D. NEIL SMITH**
                                        TEXAS STATE BAR NO. 00797450
                                        **EDWARD CHIN**
                                        TEXAS STATE BAR NO. 50511688
                                        **ANDREW J. WRIGHT**
                                        TEXAS STATE BAR NO. 24063927
                                        **CHRISTIAN HURT**
                                        TEXAS STATE BAR NO. 24059987
                                        **NIX PATTERSON & ROACH, L.L.P.**
                                        5215 N. O'Connor Blvd., Suite 1900
                                        Irving, Texas 75039
                                        972.831.1188 (telephone)
                                        972.444.0716 (facsimile)
                                        dneilsmith@mac.com
                                        edchin@me.com
                                        andrewjwright@me.com
                                        christianhurt@nixlawfirm.com

                                        **DEREK GILLILAND**
                                        TEXAS STATE BAR NO. 24007239
                                        **NIX PATTERSON & ROACH, L.L.P.**
                                        205 Linda Drive
                                        Daingerfield, Texas 75638
                                        903.645.7333 (telephone)
                                        903.645.5389 (facsimile)
                                        dgilliland@nixlawfirm.com

**ATTORNEYS FOR PLAINTIFF-APPELLEE VIRTUALAGILITY, INC.**

# ADDENDUM

# United States Court of Appeals
# for the Federal Circuit

_____

**VIRTUALAGILITY INC,**
*Plaintiff-Appellee,*

**v.**

**SALESFORCE.COM, INC., DELL, INC., DR. PEPPER SNAPPLE GROUP, INC., KIMBERLY-CLARK CORPORATION, NBCUNIVERSAL, INC., LIVINGSOCIAL, INC., FEDEX CORPORATION, BMC SOFTWARE, INC., BANK OF AMERICA CORPORATION, BANK OF AMERICA NATIONAL ASSOCIATION, MERRILL LYNCH & CO., INC., MERRILL LYNCH, PIERCE, FENNER & SMITH INCORPORATED,** AND **FEDEX CORPORATE SERVICES, INC.,**
*Defendants-Appellants.*

_____

2014-1232

_____

Appeal from the United States District Court for the Eastern District of Texas in No. 2:13-cv-00011-JRG, Judge J. Rodney Gilstrap.

_____

Decided:  July 10, 2014

_____

CHRISTIAN JOHN HURT, Nix Patterson & Roach LLP, of Irving, Texas, argued for plaintiff-appellee.  With him on the brief were EDWARD K. CHIN and ANDREW JOSEPH

WRIGHT; and DEREK T. GILLILAND, of Daingerfield, Texas. Of counsel was D. NEIL SMITH, of Irving, Texas.

JOSE C. VILLARREAL, Wilson, Sonsini, Goodrich & Rosati, PC, of Austin, Texas, argued for defendants-appellants. With him on the brief was DARRYL J. ADAMS, Baker Botts, LLP, of Austin, Texas, for Kimberly–Clark Corporation. Of counsel were JOEL CHRISTIAN BOEHM and BRIAN DAVID RANGE, Wilson, Sonsini, Goodrich & Rosati, PC, of Austin, Texas; and KEVIN J. MEEK, Baker Botts, LLP, of Austin, Texas.

───────────────

Before NEWMAN, MOORE, and CHEN, *Circuit Judges.*

Opinion for the court filed by *Circuit Judge* MOORE.

Dissenting opinion filed by *Circuit Judge* NEWMAN.

MOORE, *Circuit Judge.*

Salesforce.com, Inc. and other defendants (collectively, Defendants)[1] appeal from the district court's order denying their joint motion to stay VirtualAgility Inc.'s (VA) patent infringement lawsuit against Defendants pending post-grant review of the validity of VA's asserted claims under the Transitional Program for Covered Business Method Patents (CBM program). We *reverse.*

## BACKGROUND

In January 2013, VA sued Defendants alleging infringement of U.S. Patent No. 8,095,413 ('413 patent). On May 24, 2013, Salesforce filed a petition with the Patent Trial and Appeal Board (PTAB) for post-grant review of all claims of the '413 patent under the CBM program. In

───────────────

[1]    When we refer to "Defendants," we mean all defendants-appellants. When we refer to "Salesforce," however, we mean only "Salesforce.com, Inc."

the petition, Salesforce argued that all claims of the '413 patent were eligible for this form of post-grant review because they are directed to a "covered business method patent" within the meaning of § 18(a)(1) of the America Invents Act (AIA), Pub L. No. 112-29, 125 Stat. 284, 329–31 (2011), and that Salesforce had standing to bring the petition because it was sued for patent infringement, AIA § 18(a)(1)(B). Salesforce further argued the PTAB should institute CBM review because all the claims of the '413 patent were more likely than not patent-ineligible under 35 U.S.C. § 101 and invalid under 35 U.S.C. §§ 102, 103 in view of several prior art references.

On May 29, 2013, Defendants filed a motion to stay district court proceedings pursuant to AIA § 18(b)(1). *See* Defendants' Joint Motion To Stay Proceedings, *VirtualAgility Inc. v. Salesforce.com, Inc.*, 13-cv-00111 (E.D. Tex. May 29, 2013), ECF No. 67. In August 2013, while this motion was pending, the district court issued a discovery order and held a scheduling conference, setting an April 2014 date for a claim construction hearing and a November 2014 date for jury selection. Also in August 2013, VA filed a Preliminary Response in opposition to Salesforce's petition at the PTAB pursuant to 37 C.F.R. § 42.207(a). In November 2013, the PTAB granted-in-part Salesforce's petition based on its conclusion that all claims of the '413 patent are directed to a covered business method, and are more likely than not patent-ineligible under 35 U.S.C. § 101 and invalid under § 102 as anticipated by U.S. Patent No. 5,761,674 (Ito). The PTAB also issued its own scheduling order, setting a July 2014 date for a trial on the validity of the '413 patent claims.

In early January 2014, the district court denied Defendants' motion to stay the case pending CBM review. *VirtualAgility Inc. v. Salesforce.com, Inc.*, 13-cv-00111, 2014 WL 94371 (E.D. Tex. Jan. 9, 2014). Defendants timely filed an interlocutory appeal to this court, and also filed motions to stay district court proceedings pending

the disposition of this appeal with the district court and this court. While these motions were pending, VA filed a Motion to Amend the '413 patent claims with the PTAB contingent on the claims' invalidation. PTAB No. CBM2013-00024, Paper 26 (Jan. 28, 2014). In February, we issued an order staying proceedings in the district court pending our disposition of Defendants' motion to stay pending appeal. *VirtualAgility Inc. v. Salesforce.com, Inc.*, 14-1232 (Fed. Cir. Feb. 12, 2014), ECF No. 34. Pursuant to our order, the district court entered the stay pending appeal.

## DISCUSSION

We have jurisdiction over this appeal under AIA § 18(b)(2), which provides that "[a] party may take an immediate interlocutory appeal from a district court's decision" granting or denying a motion to stay litigation pending CBM review. The statute instructs the district court to consider the following four factors when deciding whether to grant a stay:

(A) whether a stay, or the denial thereof, will simplify the issues in question and streamline the trial;

(B) whether discovery is complete and whether a trial date has been set;

(C) whether a stay, or the denial thereof, would unduly prejudice the nonmoving party or present a clear tactical advantage for the moving party; and

(D) whether a stay, or the denial thereof, will reduce the burden of litigation on the parties and on the court.

AIA § 18(b)(1). The statute further provides that we "shall review the district court's decision to ensure con-

sistent application of established precedent, and such review *may be de novo.*" *Id.* § 18(b)(2) (emphasis added).

## I. Standard of Review

The parties dispute the standard of review that we should apply to this case. Defendants contend that the statute "encourages full *de novo* review where factual evidence and conclusions of law are reviewed fully and independently." Appellant's Br. 15. VA responds that we should review the order denying a stay with deference because such decisions implicate district courts' management of their own dockets, which is a matter traditionally left to their discretion. We note that prior to the AIA, district court decisions on motions to stay pending U.S. Patent and Trademark Office (PTO) proceedings were generally not appealable and, when they were, we reviewed them under the abuse of discretion standard. *Procter & Gamble Co. v. Kraft Foods Global, Inc.*, 549 F.3d 842, 845, 848–49 (Fed. Cir. 2008); *see also Landis v. N. Am. Co.*, 299 U.S. 248, 254–55 (1936); *Gould v. Control Laser Corp.*, 705 F.2d 1340, 1341 (Fed. Cir. 1983). We also note that the AIA expressly created an immediate right of appeal of stay decisions pending CBM review, gave us jurisdiction over the interlocutory appeals, and that the only standard mentioned in the statute is *de novo* review. Nevertheless, we need not resolve this dispute because we hold that, even under the abuse of discretion standard argued for by VA, the district court's decision to deny a stay pending the PTAB's review of the '413 patent claims under the CBM program must be reversed. Nothing in this opinion should be read as deciding the standard of review applicable to the ultimate stay decision or the individual factors. We leave it to a future case to resolve what Congress meant when it indicated that our "review may be de novo."

## II. Factors (A) and (D): Simplification of Issues and Reduced Burden of Litigation

The district court concluded that the first factor—simplification of the issues—was "essentially neutral, if not slightly against" granting a stay because it was "not convinced" by the PTAB's assessment that cancellation of some or all of the claims during CBM review was "probable." *VirtualAgility*, 2014 WL 94371, at *2, *5. The district court reviewed the lengthy prosecution history that the '413 patent underwent before issuance. The court was persuaded that "there can be little dispute here about the thoroughness of the PTO's prior examination of the '413 patent, given the various grounds of invalidity and the breadth of prior art references considered by the PTO before issuing this patent." *Id.* at 3. The court then performed its own evaluation of the bases upon which the PTAB granted the CBM petition. The court stated that, even though the Ito patent had never been before the PTO, it was not persuaded that Ito anticipates all of the claims given the PTO's extensive review of other prior art during "a lengthy prosecution process." *Id.* The court also concluded that the value of the PTAB's consideration of Ito was "marginal" because Defendants introduced two other pieces of prior art in the district court proceedings—which, they represented, were "of particular importance"—that Salesforce did not include in its CBM petition. *Id.* With regard to the PTAB's decision to review whether the '413 patent claims are patent-ineligible, the court observed that the claims were amended during prosecution to overcome an earlier § 101 rejection. Based on its assessment of the claims and the law of § 101, the court "was not persuaded that the PTAB will likely cancel all claims of the '413 patent" as patent-ineligible. *Id.* at 4. In spite of the PTAB's grant of the CBM petition, finding that all the claims of the '413 patent were more likely than not invalid on two different grounds, the district court concluded that it was not

convinced that the PTAB would cancel some or all of the
'413 patent claims. The court further concluded that it
was not convinced that the CBM review would simplify
the issues in this case and that, therefore, this factor was
"neutral, if not slightly against, granting a stay." *Id.* at 5.

The court determined that the parties' arguments re-
garding the fourth factor—burden of litigation—
"substantially overlap" with those presented under the
first factor. It found that "the specific circumstances in
the instant case present only a limited possibility" of a
reduced burden on the court and the parties. *Id.* at 8.
The court therefore concluded that the fourth factor
"weighs only slightly in favor of a stay." *Id.*

After the court denied the motion for a stay, VA filed
proposed claim amendments in the CBM review. Defend-
ants filed a motion to, at least, stay district court proceed-
ings pending appeal of the denial of the motion to stay.
Defendants argued that the fact that VA has already filed
a motion to amend claims in the CBM proceeding in-
creased the likelihood that the CBM proceeding will
simplify issues. In its decision denying the motion to stay
pending appeal, the court observed that VA's proposed
amendments to the '413 patent claims in the CBM pro-
ceeding were not a part of the record at the time of its
decision on the motion now on appeal. *See VirtualAgility
Inc. v. Salesforce.com, Inc.*, 13-cv-00111, 2014 WL 807588
(E.D. Tex. Feb. 27, 2014). On the merits, the court con-
cluded that Defendants "made no attempt at showing how
. . . conditions triggering the amendments would likely
arise" and have not "challenged [its] previous finding that
cancellation of some or all the claims was unlikely." *Id.* at
2. The court also noted that, "[t]o the extent any further
statements [by VA] or amendments to claims may affect
[its] claim construction, such is fully remediable with
supplemental claim constructions." *Id.* at 3. Thus, the
court concluded that the fact that VA moved to amend the

claims in the CBM proceeding did not affect its determination regarding the first and fourth factors.

On appeal, Defendants contend that the district court made "critical errors" in finding the first factor neutral or slightly against the stay. Defendants argue that CBM review will simplify and streamline issues for trial because the district court would not need to address any claims that are cancelled and because Defendants will be estopped from challenging the validity of the '413 patent in view of § 101 and the Ito patent after the review is concluded.[2] Defendants further argue that claim amendments during CBM review may eliminate infringement arguments and give rise to intervening rights. They contend that the district court should not have second-guessed the PTAB's conclusion that all '413 patent claims are "more likely than not" anticipated by Ito and invalid under § 101.

Defendants also argue that the fourth factor likewise strongly favors a stay because CBM review may spare Salesforce's customers, who have also been sued by VA, from discovery, while "the true parties in interest" focus on the validity of the '413 patent at the PTAB. They argue that a stay will further reduce discovery burdens on third parties. Finally, they contend that the district court erred by conflating the fourth factor with the first factor and by giving it too little weight.

---

[2] As the petitioner in the CBM proceeding, Salesforce is estopped from asserting at the district court that the '413 patent claims are "invalid on any ground that [it] raised during the . . . proceeding." AIA § 18(a)(1)(D). Although this provision does not apply to the other, non-petitioner defendants in this case, "all other defendants will agree to this same scope of statutory estoppel" if a stay pending CBM review is granted. Defendants' Joint Motion To Stay Proceedings at 8.

VA counters that a stay will not significantly simplify this case or reduce the burden on the court and the parties. As an initial matter, VA contends that we should not take into account its Motion to Amend because it was not a part of the record below. VA asserts that, while the motion to stay litigation pending CBM review was pending, it told Defendants that it might move to amend the claims. It contends that, because Defendants did not notify the district court about VA's possible amendments, they waived any argument about the Motion to Amend. On the merits, VA points out that the motion seeks to amend only seven of the twenty-one asserted claims and that the amendments may not necessarily be entered for any of the claims. It contends that the proposed amendments merely clarify the claim language and are not related to claim construction disputes currently before the district court, and thus would not significantly impact the litigation.

VA also argues that a stay is unlikely to meaningfully simplify the case because invalidity issues not before the PTAB, as well as infringement and damages issues, will remain as long as a single claim survives CBM review. It contends the PTAB's § 101 review is also unlikely to simplify the case because patent-eligibility analysis is generally not resource-intensive. VA contends that the district court's conclusion that the claims would likely survive the PTAB's scrutiny was reasonable based on its assessment of § 101 law. Further, VA argues that there is a "palpable risk" that we would vacate the PTAB's decision to initiate CBM review of the '413 patent under the Administrative Procedure Act (APA) because it is not a "covered business method patent" within the meaning of § 18(d)(1) of the AIA. It argues that Defendants' assertion that PTAB review would simplify litigation is contrary to trial court experience, and that the district court therefore properly rejected Defendants' "generic" arguments that a stay pending CBM review would promote efficient adjudi-

cation in this case. VA contends that Salesforce's arguments about its customer defendants and third parties were not properly preserved for appeal. It argues that, in any event, the customers are the true parties in interest because they partner with Salesforce, and that a stay would not reduce a burden on third parties because most third-party discovery has already taken place.

We conclude that it is proper for us to consider the fact that VA filed a Motion to Amend in our review of the district court's decision. Defendants did not waive the arguments regarding claim amendments. They argued to the district court that claim amendments during PTAB review are a distinct possibility and, in doing so, gave VA an opportunity to respond to this argument below. Defendants' Joint Motion To Stay Proceedings at 7–8.

We also conclude that we are not improperly expanding the record on appeal if we consider the Motion to Amend. *See Moore U.S.A., Inc. v. Standard Register Co.*, 229 F.3d 1091, 1116 (Fed. Cir. 2000) (citing Fed. R. App. P. 10(a)). We are mindful that "[a]n appellate court may consider only the record as it was made before the district court." *Ballard Med. Prods. v. Wright*, 821 F.2d 642, 643 (Fed. Cir. 1987); *see also Sage Prods., Inc. v. Devon Indus., Inc.*, 126 F.3d 1420, 1426 (Fed. Cir. 1997) ("No matter how independent an appellate court's review of an issue may be, it is still no more than that—a review."). Nevertheless, pursuant to Rule 201(b)(2) of the Federal Rules of Evidence, we may take judicial notice of the fact that a filing was made before the PTAB. *See, e.g., Genentech, Inc. v. Chiron Corp.*, 112 F.3d 495, 497 n.1 (Fed. Cir. 1997) (noting that, because the "record before the Board is a public record . . . and thus capable of accurate and ready determination by resort to unquestionable sources," judicial notice was appropriate). Cognizant of the limits imposed by Rule 201(b)(2), however, we reiterate that we consider only *the fact* that a Motion to Amend was filed—not the impact of the proposed amendments on the par-

ties' claim construction and infringement arguments. The latter cannot be "accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). Moreover, the district court's ability to address the Motion to Amend in its ruling denying a stay of its proceedings pending appeal supports our consideration of the fact that VA filed proposed claim amendments because we are not faced with the uncomfortable task of doing so for the first time on appeal. *Cf. Singleton v. Wulff*, 428 U.S. 106, 121 (1976).

Another preliminary issue concerns the relationship between the first and fourth factors. We agree with the district court that there is a great deal of overlap between the parties' arguments with regard to these two factors. We note, however, that the simplification of the issues factor and the burden of litigation factor are listed separately in the statute. Thus, even when both factors point in the same direction—in favor of or against the stay—they continue to be separate, individual factors which must be weighed in the stay determination. We cannot, as VA requests, collapse the four-factor test expressly adopted by Congress into a three-factor test.

We conclude that the district court clearly erred in finding that the first factor was neutral or slightly against a stay, and that the fourth factor weighed only slightly in favor of a stay. We hold that these factors strongly favor a stay in this case. The district court erred as a matter of law to the extent that it decided to "review" the PTAB's determination that the claims of the '413 patent are more likely than not invalid in the posture of a ruling on a motion to stay. Under the statutory scheme, district courts have no role in reviewing the PTAB's determinations regarding the patentability of claims that are subject to CBM proceedings.

Indeed, a challenge to the PTAB's "more likely than not" determination at this stage amounts to an improper

collateral attack on the PTAB's decision to institute CBM review, and allowing it would create serious practical problems. As a preliminary matter, Congress made post-grant review more difficult to obtain than reexamination by raising the standard from "a substantial new question of patentability," 35 U.S.C. § 303(a) (2012), to "more likely than not . . . unpatentable," *id.* § 324(a). Congress clearly did not intend district courts to hold mini-trials reviewing the PTAB's decision on the merits of the CBM review. To do so would overwhelm and dramatically expand the nature of the stay determination. If the district court were required to "review" the merits of the PTAB's decision to institute a CBM proceeding as part of its stay determination, it would undermine the purpose of the stay. When the stay decision is then appealed to this court, we would be required to likewise review the PTAB's decision to institute a CBM proceeding. This is clearly not how or when Congress intended review of the PTAB's CBM determinations to take place. *See id.* § 141(c) ("A party to . . . a post-grant review who is dissatisfied with the final written decision of the [PTAB] . . . may appeal the Board's decision only to the United States Court of Appeals for the Federal Circuit."). The stay determination is not the time or the place to review the PTAB's decisions to institute a CBM proceeding.[3]

---

[3]    It would also be inappropriate for the district court to evaluate the potential success of an APA challenge to the PTAB's determination that the '413 patent is a "covered business method patent" when analyzing whether CBM review will simplify the issues and reduce the burdens on the parties and the court. Like the district court's validity analysis, this inquiry would amount to an improper collateral attack on the PTAB's decision to institute CBM review.

The district court's decision regarding the first and fourth factors was based predominantly on its improper review of whether the PTAB was correct in its determination that the claims of the '413 patent were more likely than not invalid.  After this review is removed from the calculus, the remaining evidence of record weighs heavily in favor of a stay.  We find it significant that the PTAB granted CBM review on *all* asserted claims of the *sole* asserted patent.  And it determined that all of these claims were more likely than not unpatentable on two separate, alternative grounds.  The statute allows for institution of post-grant review if "it is more likely than not that at least 1 of the claims challenged in the petition is unpatentable."  35 U.S.C. § 324(a).  In this case, the PTAB expressly determined that *all* of the claims are more likely than not unpatentable.  This CBM review could dispose of the entire litigation: the ultimate simplification of issues.  *See Broad. Innovation, L.L.C. v. Charter Commc'ns Inc.*, No. 03-cv-2233, 2006 WL 1897165, at *8 (D. Colo. July 11, 2006)  (noting that "a stay would further the interests of judicial economy and the conservation of the parties' resources, as well as that of the court" if a reexamination would "dispose of . . . litigation entirely"); *cf. Procter & Gamble Co. v. Team Techs., Inc.*, 12-cv-552, 2014 WL 533494, at *4 (S.D. Ohio Feb. 11, 2014) (denying a motion to stay and noting that "in addition to the 11 claims that Plaintiff has asserted in this case that are also at issue in the [*inter partes* review proceedings], the remaining 16 asserted claims are *not* at issue in any [*inter partes* review]"); *Cognex Corp. v. Nat'l Instruments Corp.,* No. 00-442, 2001 WL 34368283, at *2 (D. Del. June 29, 2001) (denying a stay pending reexamination in part because the complaint alleged "a variety of claims which are not linked to the patent infringement claim, including claims of copyright and trademark infringement and unfair competition, all of which require a trial").  This weighs heavily in favor of granting the stay.  We reach this conclusion without needing to consider the

fact that VA moved in the CBM proceeding to amend claims of the '413 patent. This fact, if considered, could only weigh further in favor of granting the stay so as to avoid unnecessary claim construction of what could potentially be a moving target in terms of claim language.

VA's position that Salesforce's decision to save two pieces of its important prior art for district court proceedings instead of placing it before the PTAB has reduced efficiencies is not without support. The simplification argument would be stronger if all of the prior art or relevant invalidity issues were in the CBM review, as this would entirely eliminate the trial court's need to consider validity in the event that some claims survive CBM review. In this case, however, where CBM review has been granted on all claims of the only patent at issue, the simplification factor weighs heavily in favor of the stay. If Salesforce is successful, and the PTAB has concluded that it "more likely than not" will be, then there would be no need for the district court to consider the other two prior art references. This would not just reduce the burden of litigation on the parties and the court—it would entirely eliminate it.[4]

Failure to include other known prior art in the CBM petition could, as we will discuss below, create a potential

---

[4]   We note that, while the same pieces of evidence can often relate to both the first and the fourth factors as they do here, this may not always be the case. While simplifying issues would as a general matter always reduce the burdens of litigation on the parties and the court, the reduced burden of litigation factor may implicate other considerations, such as the number of plaintiffs and defendants, the parties' and witnesses' places of residence, issues of convenience, the court's docket, and in particular its potential familiarity with the patents at issue.

tactical advantage for Defendants that would weigh against a stay under the third factor. *Cf. Gladish v. Tyco Toys, Inc.*, 29 U.S.P.Q.2d (BNA) 1718, 1720, 1993 WL 625509, at *2 (E.D. Cal. 1993) (observing that the district court "is the only forum for a complete consideration of [the defendant's] evidence of invalidity" and noting that this fact disfavors a stay pending reexamination); *see also Enprotech Corp. v. Autotech Corp.*, 15 U.S.P.Q.2d (BNA) 1319, 1320, 1990 WL 37217, at *1 (N.D. Ill. 1990). We also agree with VA that Defendants' arguments regarding customers and third parties were not raised before the district court and are therefore waived. Nevertheless, on balance of the evidence in the record, we conclude that the first and fourth factors heavily favor a stay.

### III. Factor (B): Whether Discovery Is Complete and Whether a Trial Date Has Been Set

The court found that the timing factor favored granting a stay because the parties had not yet filed their joint claim construction statement, the deadline to complete fact discovery was more than six months away, and jury selection was not until November 2014. *VirtualAgility*, 2014 WL 94371, at *5; *see* Docket Control Order, *VirtualAgility Inc. v. Salesforce.com, Inc.*, 13-cv-00111 (E.D. Tex. Aug. 30, 2013), ECF No. 91. But it concluded that "the benefits of a stay at this relatively early stage of the proceedings are outweighed by various other considerations as discussed elsewhere herein." *VirtualAgility*, 2014 WL 94371, at *5.

Defendants argue that the district court correctly concluded that the early stage of the litigation favors a stay. Defendants contend, however, that the district court did not weigh this factor heavily enough in favor of the stay because it erroneously considered the case's status at the time it ruled on the motion rather than at the time when the motion was filed—seven months earlier. They argue that, when considering a motion to stay, it does not make

sense for a district court to take into account its added familiarity with the case developed during the pendency of the motion. Defendants note that, at the time of the filing, there was no date for jury selection and no discovery had taken place.

VA counters that the district court correctly evaluated the status of the case on the date when it ruled on the motion rather than when the motion was filed because there was no indication that the PTAB would initiate CBM review when Defendants moved for a stay. VA notes that, at the time the district court ruled on the motion to stay, the parties were involved in fact discovery and were preparing for a claim construction hearing, which, it contends, indicates that the case was at an advanced stage. VA thus argues that the timing factor is neutral.

We hold that the timing factor heavily favors a stay. We note at the outset that it was not error for the district court to wait until the PTAB made its decision to institute CBM review before it ruled on the motion. Indeed, while some district courts ruled on motions to stay before the PTAB granted the petition for post-grant review, *see, e.g.*, *Intertainer, Inc. v. Hulu, LLC*, No. 13-cv-5499, 2014 WL 466034, at *1 (C.D. Cal. Jan. 24, 2014), others have waited until post-grant review was instituted, and still others denied as premature the motion to stay without prejudice to refiling after institution of post-grant review, *see, e.g.*, *Checkfree Corp. v. Metavante Corp.*, No. 12-cv-15, 2014 WL 466023, at *1 (M.D. Fla. Jan. 17, 2014). We express no opinion on which is the better practice. While a motion to stay could be granted even before the PTAB rules on a post-grant review petition, no doubt the case for a stay is stronger after post-grant review has been instituted.

In this case, the stay motion was filed in May 2013, almost immediately after Salesforce had filed its CBM petition with the PTAB. The PTAB granted the petition

in November 2013. The district court denied the motion to stay in January 2014. As noted above, we see no error in the district court's decision to rule on the stay motion after the PTAB rendered its decision on the CBM petition. Furthermore, a district court is not obligated to "freeze" its proceedings between the date that the motion to stay is filed and the date that the PTAB decides on the CBM petition. Of course, the court should make every effort to expeditiously resolve the stay motion after the PTAB has made its CBM review determination. To do otherwise would undermine the intent of Congress to allow for stays to prevent unnecessary duplication of proceedings.

As for the proper time to measure the stage of litigation, district courts have adopted the date of the filing of the motion to stay. *See, e.g., Norred v. Medtronic, Inc.*, No. 13-2061, 2014 WL 554685, at *2 (D. Kan. Feb. 12, 2014) ("The Court finds that this case is still in its early stages, with the Scheduling Order entered only a few months before this motion was filed."); *Cynosure, Inc. v. Cooltouch Inc.*, No. 08-10026, 2009 WL 2462565, at *2 (D. Mass. Aug. 10, 2009) ("The most compelling justification for denying defendant's motion to stay is the stage of the litigation *at which it was filed*.") (emphasis added); *Agar Corp Inc. v. Multi-Fluid, Inc.*, 983 F. Supp. 1126, 1127 (S.D. Tex. 1997) (articulating the timing factor as "the stage of the litigation at which the motion was filed"). The cases cited by the dissent are not to the contrary and do not hold that the stage of litigation is measured as of any date other than the date of the motion.[5] In two of the

---

[5] The dissent is correct that some cases discuss the time of the motion in conjunction with the prejudice factor because those cases were considering whether defendants' delays in seeking a stay would unduly prejudice the plaintiff—an entirely different issue. None of those cases suggests, however, that the stage of the litigation should

cases cited by the dissent, the motion was decided within weeks of its filing, and thus the stage of litigation discussed was effectively the stage of the filing of the motion. *Rensselaer Polytech. Inst. v. Apple Inc.*, No. 13-cv-0633, 2014 WL 201965, at *5 (N.D.N.Y. Jan. 15, 2014) (motion to stay filed in December 2013); *TPK Touch Solutions, Inc. v. Witek Electro-Optics Corp.*, No. 13-cv-2218, 2013 WL 6021324, at *4–5 (N.D. Cal. Nov. 13, 2013) (motion to stay filed in late September 2013). In the third case, it is clear that the district court used the time of the filing of the motion for a stay to evaluate the stage of litigation. *Boston Scientific Corp. v. Cordis Corp.*, 777 F. Supp. 2d 783 (D. Del. 2011). The court explained that the stage of litigation cuts against a stay because discovery is complete and the trial is scheduled to commence in May 2011. *Id.* at 788. Although it is not apparent from this portion of the opinion at what time the stage of litigation was measured, the district court later made clear that it looked at the time of the filing of the motion: "Cordis' motion for stay was filed on September 23, 2010, nearly one year after the untimely request for reexamination was made. As noted above [in the 'Status of litigation' section], a trial date had been set and fact discovery was complete at the time Cordis filed its motion for stay." *Id.* at 789.

Generally, the time of the motion is the relevant time to measure the stage of litigation.[6] In this case, we see no

---

be anything other than the time of the filing of the motion.

[6] While district courts should generally consider "whether discovery is complete and whether a trial date has been set" as of the date of the stay motion, there was no error in also taking into account the stage of litigation as of the date that CBM review was granted. Similarly, the district court may consider evidence that develops

error in the district court's having waited until the PTAB granted the CBM review to rule upon the motion. Whether we consider the May 2013 date, when the motion to stay was filed, or the November 2013 date, when the PTAB granted CBM review, this factor heavily favors Defendants. At the time Defendants filed their motion in May 2013, the case was less than four months old. Discovery had not yet begun and no trial date had been set. As of the date the PTAB granted CBM review, there remained eight months of fact discovery, the joint claim construction statements had yet to be filed, and jury selection was a year away. The litigation at either time was still at its infancy, which favors granting the stay.

IV. Factor (C): Undue Prejudice or Tactical Advantage

The district court concluded that the undue prejudice factor weighed heavily against a stay. It found that, given "credible evidence" that VA and Salesforce were direct competitors, VA would suffer irreparable harm in the form of lost market share and consumer goodwill stemming from the delay in enforcing its patent rights. *VirtualAgility*, 2014 WL 94371, at *6. The court noted that, for example, VA and Salesforce "took part in the same government bid process at least once." *Id.* It determined that, even though CBM review must conclude by November 2014 (*i.e.*, one year from institution of the proceeding, *see* 35 U.S.C. § 326(a)(11)),[7] VA would still suffer undue prejudice because it is a small company with limited

---

after the date of the stay motion—for example, the fact that the PTAB granted the CBM petition, any claim amendments proposed or entered in the post-grant proceeding, further evidence of competition, and so on—as it pertains to the other three factors.

[7]    This period may be extended by no more than six months "for good cause shown." 35 U.S.C. § 326(a)(11) (2012).

resources and because a likely appeal would impose further delay. The court also found that VA would be unduly prejudiced "because certain identified witnesses are of an advanced age." *Id.* at 7. Finally, the court refused to weigh the fact that VA did not move for a preliminary injunction against VA, stating that it was not "in a role to judge the parties' litigation strategy." *Id.*

Defendants argue that the district court erred in concluding that a stay would unduly prejudice VA. They contend that VA will not suffer undue prejudice because the timeframe for CBM review is short. They argue that, in any event, mere delay in having one's claim adjudicated does not constitute undue prejudice. Defendants argue that VA has not identified any actual risk of fading memories or potentially unavailable evidence. Defendants further contend that VA could be adequately compensated by money damages. They argue that the district court clearly erred in finding that VA and Salesforce competed for the same bid, and that VA has not proven that it would lose market share or goodwill due to a delay in the resolution of its infringement case. Defendants contend that the fact that VA did not move for a preliminary injunction suggests that VA is not truly concerned about a delay.

VA counters that a delay will subject it to undue prejudice by significantly harming its business. It argues that the fate of the '413 patent claims would almost certainly not be known until after the statutory November 2014 deadline because of the likely appeal of the PTAB's decision and due to other potential delays. It contends that Defendants' argument that VA and Salesforce are not true competitors is meritless in view of record evidence that the two companies compete in the same market. VA argues that expeditious enforcement of its patent rights against larger competitors like Salesforce is critical to protecting its market share, and that a permanent injunction would thus be "very likely" if it succeeded in

proving infringement. Appellee's Br. 48. It further argues that the district court's fast schedule made it unnecessary to move for a preliminary injunction. Finally, VA contends that the district court did not err in concluding that loss of evidence during the pendency of CBM review is likely and that, regardless, Defendants waived the argument that loss of evidence was not a concern.

We conclude that the district court clearly erred in finding that the undue prejudice factor weighed heavily against a stay. At best, this factor weighs slightly against a stay. We agree with the district court that competition between parties can weigh in favor of finding undue prejudice. *See, e.g., Market-Alerts Pty. Ltd. v. Bloomberg Fin. L.P.*, 922 F. Supp. 2d 486, 494–95 (D. Del. 2013). There is evidence in this record that Salesforce and VA are in the same business space. The record indicates that Salesforce provides cloud-based enterprise-level information technology solutions, J.A. 339, 344, and so does VA, J.A. 315–16. In addition, both companies target public-sector customers. J.A. 316–17, 323–27. But as to evidence of direct competition, the record establishes only that Salesforce was mentioned in a Government Services Administration (GSA) bid, which VA received, identifying Salesforce's products as the brand name reference products. J.A. 316, 322–37. VA admitted during oral argument, however, that this GSA bid was a small business set-aside, for which Salesforce, a large business, could not compete. J.A. 322; Oral Argument at 24:19–25:32, *available at* http://oralarguments.cafc.uscourts.gov/default.aspx?fl=2014-1232.mp3. Thus, there is no evidence in this record that the two companies ever competed for the same customer or contract. We acknowledge, however, that direct evidence of such competition is not required to establish that VA and Salesforce are competitors, especially at such an early stage of the proceedings. *See Moleculon Research Corp. v. CBS, Inc.*, 793 F.2d 1261, 1271 (Fed. Cir. 1986), *abrogated on other grounds by*

*Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665 (Fed. Cir. 2008) (en banc) ("[D]irect evidence of a fact is not necessary."). We do credit the district court's finding that loss of market share and consumer goodwill is high in the growing market of cloud-computing. *See VirtualAgility*, 2014 WL 94371, at *6.

Of course, whether the patentee will be *unduly prejudiced* by a stay in the district court proceedings during the CBM review, like the irreparable harm-type inquiry, focuses on the patentee's need for an expeditious resolution of its claim. A stay will not diminish the monetary damages to which VA will be entitled if it succeeds in its infringement suit—it only delays realization of those damages and delays any potential injunctive remedy. VA argues that it needs injunctive relief as soon as possible to prevent irreparable harm to its business, indicating that even a one- to two-year delay in the adjudication of its infringement claims would subject it to undue prejudice because VA and Salesforce compete in the same market. *See* Appellee's Br. 49–50; VA's Response in Opposition to Defendants' Joint Motion To Stay Proceedings Pursuant to Section 18(b) of the America Invents Act at 10–11, *VirtualAgility Inc. v. Salesforce.com, Inc.*, 13-cv-00111 (E.D. Tex. June 20, 2013), ECF No. 72. Although this is not dispositive, we note that VA did not move for a preliminary injunction against Defendants. We acknowledge, as the district court did, that there could be a variety of reasons that a patentee does not move for a preliminary injunction. *See, e.g.*, *Nippon Steel & Sumito Metal Corp. v. POSCO*, No. 12-2429, 2013 WL 1867042, at *6 n.6 (D.N.J. May 2, 2013); *Nat'l Prods., Inc. v. Gamber-Johnson LLC*, 12-cv-00840, 2012 WL 3527938, at *3 n.5 (W.D. Wash. Aug. 14, 2012); *Cooper Notification, Inc. v. Twitter, Inc.*, No. 09-865, 2010 WL 5149351, at *4 (D. Del. Dec. 13, 2010); *see also* U.S. Magistrate Judge Morton Denlow, *The Motion for a Preliminary Injunction: Time for a Uniform Federal Standard*, 22 Rev. Lit. 495, 534

(2003). In this case, VA argues that it did not move for a preliminary injunction because it is a small company with limited resources and that the litigation process would move fast enough to make this unnecessary.

VA's arguments are rational reasons for not pursuing a preliminary injunction, but the fact that it was not worth the expense to ask for this remedy contradicts VA's assertion that it needs injunctive relief as soon as possible. We also note that VA, for some unexplained reason, waited nearly a year after the '413 patent issued before it filed suit against Defendants. These facts weigh against VA's claims that it will be unduly prejudiced by a stay.

To the extent that the district court found that "the added risk of witness loss" could unduly prejudice plaintiff, we do not agree that this record supports a conclusion of undue prejudice. VA asserts that one potentially relevant witness is "over 60" and three others are "over 70." Since when did 60 become so old? It is undoubtedly true, as many courts have observed, that with age and the passage of time, memories may fade and witnesses may become unavailable. Without more, however, these assertions here are not sufficient to justify a conclusion of undue prejudice. There is no evidence that any of these individuals are in ill health, and at least one of the older witnesses has already been deposed. In addition, Rule 27 of the Federal Rules of Civil Procedure allows for the perpetuation of testimony when facts suggest that such action may be necessary. This rule gives district courts the authority to grant a petition authorizing a deposition to perpetuate testimony even before a lawsuit has been brought, and also applies when a case is otherwise stayed. *See Texaco, Inc. v. Borda*, 383 F.2d 607, 609 (3d Cir. 1967) (concerns over advanced age of a witness could be alleviated by permitting a deposition to preserve testimony, and did not prevent a stay). The advanced age of witnesses is a factor relevant to potential prejudice, but the prejudice can be reduced, when necessary, by preserving

the testimony. We conclude that this record does not support the conclusion that VA would be unduly prejudiced by the stay.

Finally, the district court did not find that a stay would give Defendants a clear tactical advantage, and we agree. There is no evidence that Defendants possessed a "dilatory motive," which would have pointed against a stay. *See, e.g.*, *Market-Alerts*, 922 F. Supp. 2d at 495–96. In fact, Salesforce filed its CBM petition less than four months after VA instituted this infringement action and moved to stay the district court proceedings almost immediately after filing the petition. To the district court, VA argued that Salesforce "could have used but deliberately and tactically withheld from the post-grant proceeding" the so-called "Oracle Projects" prior art. VA's Response in Opposition to Defendants' Joint Motion To Stay Proceedings at 1. Defendants responded that Salesforce did not include Oracle Projects in the CBM petition because it is "a proprietary software system, not strictly a printed publication of the type typically considered by the PTO," and would require testimony from "live third party witnesses at trial." Defendants' Reply In Support of Motion To Stay at 4, *VirtualAgility Inc. v. Salesforce.com, Inc.*, 13-cv-00111 (E.D. Tex. July 1, 2013), ECF No. 74. Defendants also indicated that they had difficulties in obtaining evidence in connection with another piece of prior art "of particular importance" not used in CBM review, "Tecskor product," necessitating a letter of request for international judicial assistance from Canada from the district court. Oral Argument at 42:13–45:26, *available at* http://oralarguments.cafc.uscourts.gov/default.aspx?fl=2014-1232.mp3; *VirtualAgility Inc. v. Salesforce.com, Inc.*, 13-cv-00111 (E.D. Tex. Nov. 7, 2013), ECF No. 104; *see VirtualAgility*, 2014 WL 94371, at *3. In some circumstances, a defendant's decision to save key pieces of prior art for district court litigation in case its CBM challenge fails would weigh against a stay. Even

though the "splitting" of prior art is allowed by statute in the sense that litigation estoppel does not attach to art that could have been, but was not, raised in CBM review, such behavior can still give the movant a clear tactical advantage within the meaning of § 18.[8]  This record does not establish such a clear tactical advantage given the uncontradicted evidence that, at the time Salesforce filed its CBM petition, it did not have the evidence necessary to include the Oracle Projects and Tecskor prior art.  Given these unusual circumstances, we conclude that there is no clear tactical advantage to Defendants of granting the stay.

On this record, the evidence of competition is weak and the patentee's delays in pursuing suit and seeking preliminary injunctive relief belie its claims that it will be unduly prejudiced by a stay.  We conclude that the district court clearly erred in concluding that undue prejudice here weighs heavily against granting the stay.  At best, under the clear error standard, this factor weighs slightly against a stay on this record.

*  *  *  *  *

Three of the four factors weigh heavily in favor of a stay in this case: simplification of the issues and stream-lining of the trial, whether discovery is complete and a trial date has been set, and reduction of the burden of litigation on the parties and the court.  The undue preju-dice factor, at best, weighs slightly in favor of denying a

---

[8]    We note, however, that it may not be necessary, or even prudent, in some situations for the petitioner to provide all known prior art, no matter how irrelevant or redundant, to the PTAB during CBM review.  Failure to advance irrelevant or redundant prior art would not demonstrate a clear tactical advantage.

stay.  On this record, we conclude that the district court abused its discretion when it denied the stay.

## CONCLUSION

We *reverse* the district court's order denying Defendants' motion for a stay of the district court proceedings pending CBM review and remand with instructions to grant the motion.  This decision moots Defendants' motion to stay district court proceedings pending appeal.

**REVERSED**

## COSTS

No costs.

# United States Court of Appeals for the Federal Circuit

———————————

**VIRTUALAGILITY INC,**
*Plaintiff-Appellee,*

**v.**

**SALESFORCE.COM, INC., DELL, INC., DR. PEPPER SNAPPLE GROUP, INC., KIMBERLY-CLARK CORPORATION, NBCUNIVERSAL, INC., LIVINGSOCIAL, INC., FEDEX CORPORATION, BMC SOFTWARE, INC., BANK OF AMERICA CORPORATION, BANK OF AMERICA NATIONAL ASSOCIATION, MERRILL LYNCH & CO., INC., MERRILL LYNCH, PIERCE, FENNER & SMITH INCORPORATED,** AND **FEDEX CORPORATE SERVICES, INC.,**
*Defendants-Appellants.*

———————————

2014-1232

———————————

Appeal from the United States District Court for the Eastern District of Texas in No. 2:13-cv-00011-JRG, Judge J. Rodney Gilstrap.

———————————

NEWMAN, *Circuit Judge,* dissenting.

The America Invents Act permits but does not require the district court to stay earlier-filed litigation during later-requested post-grant PTO proceedings. Such a stay

is not obligatory, but is consigned to the district court's discretion. During consideration of the proposed post-grant review legislation, there was extensive debate about the relation between concurrent infringement actions in the courts and post-grant patentability redeterminations in the PTO. After eight years of discussion, the America Invents Act adopted rules for concurrent proceedings in various circumstances. No statute or rule requires the district court to stay ongoing court proceedings after a petition for post-grant review is filed in the PTO. My colleagues' contrary ruling today is also contrary to the legislation and its purpose.

The decision of a trial judge not to stay an infringement action in litigation, when the defendant requests a stay but the plaintiff wishes to proceed, is consigned to the discretion of the judge. Here the plaintiff objected to the stay and the district court exercised its discretion and denied the stay. Nonetheless my colleagues reverse the district court and grant the stay, although it is not shown that the district court abused its discretion.

The district court may choose to stay its proceedings when the interest of justice warrants, and the AIA lists several factors for the court to consider in deciding how to exercise its discretion in a particular case. However, a stay of litigation is not available as a matter of right when a petition for post-grant review is filed in the PTO.[1] *See Commodity Futures Trading Comm'n v. Schor*, 478 U.S. 833, 850 (1986) ("Article III, §1 preserves to litigants their interest in an impartial and independent federal adjudi-

---

[1]    Compare 28 U.S.C. § 1669(a), giving a party in district court the absolute right to a stay when there is a concurrent action in the International Trade Commission, provided only that the stay request is made 30 days after the party is named as a respondent, or 30 days after the district court action is filed, whichever is later.

cation of claims within the judicial power of the United States. . . .").

In this case, the district court applied the traditional stay factors as recorded in AIA Section 18(b), and ruled that stay of the ongoing judicial proceeding was inappropriate. The district court exercised its discretion to continue with the trial, which was on a fast track to completion. This ruling is well within the district court's statutory and discretionary authority.

Although the Covered Business Method (CBM) statute provides that appellate review of a district court's decision to grant or deny a stay "may be de novo," when the district court's decision is within its range of discretion, it warrants appellate respect. My colleagues on this panel do not identify any abuse of the district court's discretion; nor do they acknowledge the deference owed to a trial judge in rulings on matters of equity and the balance of interests.

I respectfully dissent.

DISCUSSION

A stay is an "intrusion into the ordinary processes of administration and judicial review, and accordingly is not a matter of right, even if irreparable injury might otherwise result to the appellant." *Nken v. Holder*, 556 U.S. 418, 427 (2009). Section 18(b)(1) of the America Invents Act authorizes the district court to stay the litigation of a patent for which CBM review in the PTO has been requested. Such a stay is not automatic; the statute authorizes the district court in its discretion to stay its proceedings, on taking into account certain equitable factors as may exist in the particular case.

In today's ruling the panel majority overrides the district court's discretion, and effectively creates a rule that stays of district court litigation pending CBM review must always be granted. Here the district court carefully

considered the four factors set out in the statute, and concluded that VirtualAgility is likely to be harmed disproportionately in both the litigation and the marketplace if the defendants are allowed to draw out this case for an extended period, all the while continuing to infringe a presumptively valid patent. The district court considered the phase of the litigation, the completion of document production and much of discovery, and the early trial date, and exercised its discretion to proceed with the trial proceedings. Whether or not my colleagues' prolongation of the dispute by way of a potential multiplicity of administrative trials and appeals can be defended, the district court's evaluation of the equities is reasonable, is consistent with the analyses by other district courts, and warrants deference.

The near automatic grant of litigation stays today engrafted onto the statute tilts the legislated balance, for the statute recognized that a stay pending CBM review may, depending on the circumstances, lead to inequity and tactical abuse. *See Tuitionfund, LLC v. SunTrust Banks, Inc.*, 2012 WL 4758382, at *1 (M.D. Tenn. Oct. 5, 2012) ("Further, there may be tactical advantages to the Vesdia Defendants in seeking a stay, the most apparent being delay."); *Bausch & Lomb Inc. v. Rexall Sundown, Inc.*, 554 F. Supp. 2d 386, 389 (W.D.N.Y. 2008) ("Resort to the reexamination procedure should not be sanctioned through the issuance of a stay, however, where it is pursued for tactical advantage after substantial and costly discovery has been conducted or where trial is imminent.").

Successive proceedings can add extensive delay to final resolution, while the patent life continues to expiration. The district court emphasized the heavy impact of delay on this patentee. Deference is owed to the district court's assessment, for the trial court is in a better position than either the PTO, or this court, to attune a request for stay to the particular situation.

The district court has discretionary authority to manage its cases, as well as to consider equitable factors. The Supreme Court has recognized this authority, *see Landis v. North America Co.*, 299 U.S. 248, 254–55 (1936) (discussing power and circumstances of stay of proceedings, stating that: "Only in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both."), as has the Federal Circuit, *see Viskase Corp. v. American National Can Co.*, 261 F.3d 1316, 1328 (Fed. Cir. 2001) ("The court is not required to stay judicial resolution in view of the reexaminations."). Indeed, the party appealing denial of a stay historically faced a steeper burden because the appeal seeks "interference by an appellate court with management of proceedings entrusted to the district court." *Gould v. Control Laser Corp.*, 705 F.2d 1340, 1341 (Fed. Cir. 1983).

Congress did not change this precedent in the America Invents Act, when it directed the courts to apply the established precedent of litigation stays to the vast variety of possible situations in overlapping district court and PTO post-grant proceedings.

In *Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.*, 134 S. Ct. 1744 (2014), the Supreme Court discussed the rationale for abuse of discretion review in the context of the Patent Act's fee-shifting provisions. The Court stated that as a matter of the sound administration of justice, the district court is better positioned to decide whether a case is exceptional because it has lived with the case over a prolonged period. The Court observed that the fee shifting question is "multifarious and novel," and not susceptible to "useful generalization" of the sort that *de novo* review provides, but is more "likely to profit from the experience that an abuse-of-discretion rule will permit to develop." *Id*. at 1748–49.

The Court's reasoning in *Highmark* applies forcefully to a district court's exercise of discretion in deciding whether to stay pending litigation despite the patentee's objection. The inquiry created by the AIA's four factor test is highly fact specific, not susceptible to "useful generalization;" the district court is better positioned to decide whether a stay serves the best balance of interests of the parties and the court. My colleagues on this panel ignore this reality.

Depending on the stage of the litigation, as the AIA provides, a court may conclude, within its discretion, that "the principle of maximizing the use of judicial and litigant resources is best served by seeing the case through to its conclusion." *Mkt.-Alerts Pty. Ltd. v. Bloomberg Fin. L.P.*, 922 F. Supp. 2d 486, 494 (D. Del. 2013). Several courts have expressed concern that a stay will interfere with their ability to manage their dockets and fulfill their judicial responsibilities. For example, in response to a requested stay pending reexamination, a district court recently stated:

> The Court is concerned that allowing the progress of its docket to depend on the status of proceedings elsewhere can interfere with its obligation "to secure the just, speedy, and inexpensive determination of every action." Fed.R.Civ.P. 1. "If litigation were stayed every time a claim in suit undergoes reexamination, federal infringement actions would be dogged by fits and starts. Federal court calendars should not be hijacked in this manner." *Comcast Cable Commc'ns Corp., LLC v. Finisar Corp.,* No. C 06–04206 WHA, 2007 WL 1052883, at *1 (N.D.Cal. Apr. 5, 2007). This consideration weighs against a stay.

*Universal Elecs., Inc. v. Universal Remote Control, Inc.*, 943 F. Supp. 2d 1028, 1035 (C.D. Cal. 2013). The panel majority does not acknowledge these concerns.

AIA Section 18(b) lists four factors relevant to evaluation of a stay request.  In this case the district court conscientiously applied this framework, and on consideration of the nature of the patent, this case's trial schedule, and the competitive relationship between the parties, the court concluded that the potential benefits of a stay are outweighed by the harm that VirtualAgility is likely to experience, in both the litigation and the marketplace, if a stay were granted.

The district court's analysis of the four factors represents a consistent application of precedent, and neither the appellants nor the panel majority have shown that the balance reached by the court is an abuse of discretion. I briefly review the four statutory factors set forth in AIA section 18(b)(1):

### "(A) whether a stay, or the denial thereof, will simplify the issues in question and streamline the trial"

The district court found that "[t]his factor is essentially neutral, if not slightly against, granting a stay." *VirtualAgility, Inc. v. Salesforce.com, Inc.*, 2014 WL 94371, at *5 (E.D. Tex. Jan. 9, 2014) ("DCt. Op."). The court emphasized "the thoroughness of the PTO's prior examination of the '413 patent, during which time more than sixty prior art references were considered," contrasting it to "more common business method patents" which Congress explained "have not been thoroughly reviewed at the PTO due to a lack of the best prior art." *Id*. at *3. The court stated that it was not persuaded that the single prior art reference at issue in this CBM review would invalidate all or a substantial number of the asserted claims, and as a result the court would almost certainly need to consider other prior art references, including two which appellants have alleged are "of particular importance." *Id.*

The district court was also not persuaded that the PTAB would be likely to cancel all claims of the '413

patent under § 101, citing "even greater uncertainty with respect to the PTAB's § 101 determination." *Id*. at *4. The court concluded that it was "not convinced that granting a stay will simplify the issues in this case." *Id*. at *5.

The district court correctly recognized that if one claim were to survive CBM review, a stay would not simplify the litigation issues in this case. There would still be full litigation of invalidity issues; the elimination of one reference of the almost fifty references that the defendants placed at issue in the district court would not simplify this case. In addition, the defendants in the district court litigation raised invalidity defenses under sections 103, 112, and 256, whereas the CBM proceeding involves only sections 101 and 102. Unless each and every claim is invalidated in the CBM review, the district court was correct that a stay will simply increase the burden on the parties.

The majority states that it reached its decision on this factor without considering possible amendment to the claims. The PTO record states that VirtualAgility's proposed amendments "are strictly contingent on the Board finding each respective original independent claim unpatentable." Patent Owner's Contingent Motion to Amend, Dkt. No. 137-1. The district court undertook a detailed review of the proposed amendments, and concluded that in the unlikely event the amendments would affect the court's claim construction, supplemental claim construction could be considered. The court stated:

> Inconsistency would only arise under the narrow contingency that this Court sides with Defendants in construing 'processor' and 'storage device,' *and* the PTAB adopts Plaintiff's proposed substitute claim 28 after finding that the original claim 7 is unpatentable. If this does occur, the Court will consider holding a supplemental claim construc-

tion on these two terms to resolve the conflict. In any event, the proposed amendments would not alter the construction of the remaining seven disputed claim terms.

*VirtualAgility, Inc. v. Salesforce.com, Inc.*, 2014 WL 807588, at *6 n.1 (E.D. Tex. Feb. 27, 2014).

In sum, the district court fully and fairly considered whether the stay would simplify the issues and streamline the trial, and concluded that it was not likely to do so.

### "(B) whether discovery is complete and whether a trial date has been set"

The district court discussed the stage of document production and depositions, which were proceeding toward a trial date of November 2014, but were not yet complete. Precedent illustrates the reluctance of district courts to stay litigation that is well advanced. *See Verinata Health, Inc. v. Ariosa Diagnostics, Inc.*, 2014 WL 121640, at *2 (N.D. Cal. Jan. 13, 2014) (timing factor weighs against stay when trial date is thirteen months away and "discovery is well underway with the parties having exchanged initial disclosures, infringement and invalidity contentions, and some document productions"); *ImageVision.Net, Inc. v. Internet Payment Exch., Inc.*, 2013 WL 663535, at *3–4 (D. Del. Feb. 25, 2013) (timing factor weighs against stay when claim construction hearing and close of fact discovery are four and five months away respectively, even though no trial date set); *Universal Elecs., Inc.*, 943 F. Supp. 2d at 1031 (timing factor weighs against stay when, although little discovery had occurred, trial date was twelve months away and court had expended substantial effort construing the claims).

The panel majority states that generally the time of filing the motion to stay is the relevant time to measure the stage of litigation. Maj. op. at 21. The majority cites three district court cases in which the timing of filing the

motion was mentioned, but in those cases there is no apparent difference in the state of discovery etc. between when the motion was filed and when it was decided. *See, e.g.*, *Norred v. Medtronic, Inc.*, No. 13-2061, 2014 WL 554685, at *2 (D. Kan. Feb. 12, 2014) (granting stay when "[l]ittle discovery other than initial disclosures and some preliminary document discovery has been exchanged. No depositions have been taken, no interrogatories have been served, and no expert reports have been exchanged"). In *Boston Scientific Corp. v. Cordis Corp.*, 777 F. Supp. 2d 783, 789 (D. Del. 2011), the timing of the motion was discussed only with respect to the prejudice factor.

In general, district courts consider the current stage of litigation in analyzing this factor. *See, e.g.*, *Hansen Mfg. Corp. v. Enduro Sys.*, Inc., 2012 WL 381238, at *1 (D.S.D. Feb. 6, 2012) ("The parties are currently in the discovery phase of litigation. They have provided their infringement contentions and invalidity contentions to one another."); *Forgent Networks, Inc. v. Echostar Techs. Corp.*, 2006 WL 6922224, at *2 (E.D. Tex. Nov. 20, 2006) ("The parties have already produced over five million pages of documents in this case and the discovery deadline is less than four months away. In addition, the parties have also fully briefed and argued the claim construction issues, and the Court is currently working on its claim construction order."); *Soverain Software LLC v. Amazon.com, Inc.*, 356 F. Supp. 2d 660, 663 (E.D. Tex. 2005) ("The parties have already produced hundreds of thousands of pages of documents and millions of lines of source code and should complete discovery next month. As previously mentioned, the parties have also fully briefed and argued the claim construction issues, and the Court is currently working on its order construing the claims at issue.").

The panel majority has acknowledged that the district court need not rule on a stay motion before the PTAB has actually instituted the CBM proceedings, and that the

district court is not obligated to "freeze" the litigation
proceedings while the PTAB is considering whether to
proceed.  Maj. op. at 19.  It cannot be correct to hold that
all interim activity must be ignored, and the stay decided
as if nothing had occurred.[2]  Such a rule contravenes the
principle that when "the Court and the parties have
already expended significant resources on the litigation,
the principle of maximizing the use of judicial and litigant
resources is best served by seeing the case through to its
conclusion." *Mkt.-Alerts Pty. Ltd.*, 922 F. Supp. 2d at 494;
*see also Rensselaer Polytech. Inst. v. Apple Inc.*, No. 13-cv-
0633, 2014 WL 201965, at *5, 8 (N.D.N.Y. Jan. 15, 2014)
(denying stay, without prejudice to renewal of request
after PTO action on petition for inter partes review); *TPK
Touch Solutions, Inc. v. Witek Electro-Optics Corp.*, No.
13-cv-2218, 2013 WL 6021324, at *4–5 (N.D. Cal. Nov. 13,
2013) (denying stay pending inter partes review, observ-
ing that stay is never obligatory, but may be justified
"where the outcome of the reexamination would be likely
to assist the court"); *Boston Scientific,* 777 F. Supp. 2d at
789 (denying stay, explaining that the stage of litigation
clearly cuts against a stay because discovery was com-
plete, and stating that the reexamination is "fraught with
the potential for multiple appeals").

## **"(C) whether a stay, or the denial thereof, would unduly prejudice the nonmoving par-**

---

[2]    In some jurisdictions, the district court case may
have received major effort in the interim.  It is reported
that for patent litigation cases filed in the fast track
Eastern District of Virginia between 2000 and 2010 the
average trial was completed less than a year after the
case was filed.  Mark Lemley, *Where to File Your Patent
Case*, 38 AIPLA Q.J. No. 4, at 1 (Fall 2010).  Compare this
to the six months allocated for the PTO's initial decision
of whether to institute CBM proceedings at all.

ty or present a clear tactical advantage for the moving party"

The district court held that the prejudice factor "weighs heavily against granting a stay." DCt. op. at *7. The district court explained that courts are reluctant to stay proceedings where the parties are direct competitors, and observed that the "loss of market share and consumer goodwill is particularly high in the growing market of enterprise cloud-computing, where contractors and governmental agencies are developing lists of preferred vendors." *Id.* at *6 (citing *Polymer Techs., Inc. v. Bridwell*, 103 F.3d 970, 975–76 (Fed. Cir. 1996) ("Years after infringement has begun, it may be impossible to restore a patentee's . . . exclusive position by an award of damages and a permanent injunction. Customers may have established relationships with infringers.")).

The district court found that Salesforce and VirtualAgility compete in the same market and the same customer base, and stated that VirtualAgility, a small company with limited resources, "will be 'forced to compete against products that incorporate and infringe' its own invention." DCt. op. at *6 (quoting *Douglas Dynamics, LLC v. Buyers Prods. Co.*, 717 F.3d 1336, 1344 (Fed. Cir. 2013)). The court concluded that granting a stay would unduly prejudice VirtualAgility both in the marketplace and in this litigation.

The district court found that Salesforce and VirtualAgility "directly compete in at least the enterprise cloud computing market targeting public sector entities." DCt. op. at *6. The panel majority states that there was no evidence of direct competition. That is contrary to the record.

VirtualAgility's President and Chief Executive Officer stated that he has "personally had conversations with VirtualAgility customers and potential customers in which the customer or potential customer compares the

functionality of VirtualAgility's products with that of Salesforce's products." Declaration of Stuart E. Rudolph (June 19, 2013) at J.A. 317. He stated that those customers include federal and state agencies, which he identified. *Id*. The district court did not clearly err in finding that the parties directly compete in the enterprise cloud computing market targeting public sector entities.

The panel majority acknowledges the district court's undue prejudice findings, but gives them scant weight. Instead, my colleagues fault VirtualAgility for not moving for a preliminary injunction. Maj. op. at 25. The district court presented a perceptive analysis of this position:

> A party's decision to seek or not seek a preliminary injunction often rests upon a variety of factors, including that party's resources, the uncertainty of the outcome, or as part of an overall strategy to streamline the process and focus on other procedural steps in the litigation. Not being in a role to judge the parties' litigation strategy, the Court deems it unfair to hold VirtualAgility to a position based upon what is no more than a dubious implication.

DCt. op. at *7.

A preliminary injunction proceeding often delays the litigation, and it is a truism that interim relief is not easy to obtain. The district court did not abuse its discretion in declining to hold VirtualAgility's reasonable choice against it. *See Zillow, Inc. v. Trulia, Inc.*, 2013 WL 5530573, at *6–7 (W.D. Wash. Oct. 7, 2013) (collecting cases on the significance of failure to seek a preliminary injunction).

The district court here gave weight to VirtualAgility's small size and limited resources, the competitive relationship between the parties, and the high potential for loss of market share and consumer goodwill in the market in

which they compete.  The court concluded that a stay may cause "outsized consequences" to VirtualAgility.  DCt. op. at *5.  The district court reasonably weighed the undue prejudice factor heavily against granting a stay.

### "(D) whether a stay, or the denial thereof, will reduce the burden of litigation on the parties and on the court"

With the stay now imposed by my colleagues, VirtualAgility will undergo an *inter partes* trial in the PTAB on some, but not all, of the invalidity issues that the defendants raised in the district court.  Whichever side loses in the PTO then has the right first to request reconsideration by the PTAB, and then the right of judicial review of the PTO decision.  Unless all of VirtualAgility's patent claims are finally eliminated in the PTO and that ruling sustained on appeal, the procedure could be repeated in the district court.  The district court has discretion to consider this tactical reality, in exercising its discretion to weigh the burden of litigation on the parties and the court.

It is apparent that the district court did not abuse its discretion in weighing and balancing the statutory factors and declining to stay its proceedings.

### Conclusion

The panel majority has imposed greater rigor on "stay" considerations than the statute warrants.  Post-grant review in the PTO is a useful tool, but the principle of post-grant review does not require elimination of judicial discretion to proceed with pending litigation.  Indeed, the America Invents Act contemplates such discretion.  I must, respectfully, dissent from my colleagues' distortion of the statutory plan.

## CERTIFICATE OF SERVICE

On this 25th day of August, 2014, I electronically filed the foregoing

Petition for Rehearing En Banc with the Court using the CM/ECF system.  The

following counsel are registered CM/ECF users and will be served by the appellate

CM/ECF system.

Jose C. Villarreal
Wilson Sonsini Goodrich & Rosati, P.C.
900 S. Capitol of Texas Hwy, Las Cimas IV, 5th Floor
Austin, Texas 78746
(512) 338-5400
(512) 338-5499 (Fax)
Email: jvillarreal@wgsr.com

Larry K. Shatzer
Wilson Sonsini Goodrich & Rosati, P.C.
1700 K Street, NW, Fifth Floor
Washington, D.C. 20006
(202) 973-8803
(202) 973-8899 (Fax)
Email: lshatzer@wsgr.com

Kevin J. Meek
Baker Botts
98 San Jacinto Blvd
Suite 1500
Austin, Texas 78701-4078
Email: kevin.meek@bakerbotts.com

Darryl J. Adams
Kimberly-Clark Corporation
Baker Botts
98 San Jacinto Blvd
Suite 1500
Austin, Texas 78701-4078
Email: darryl.adams@bakerbotts.com

Sixteen paper copies will be filed with the Court, via overnight delivery, within the time provided in the Court's rules.

/s/ Thomas C. Goldstein

_____

THOMAS C GOLDSTEIN
*Attorney for Plaintiff-Appellee*